John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel: (415) 561-9600
Fax: (415) 561-9609

Attorneys for Plaintiff,
CLIFFORD COOK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD COOK,                                                    ) Case No.: C 07 2569 CRB
                                                                 )
            Plaintiff,                                           ) **PLAINTIFF'S OPPOSITION TO**
                                                                 ) **DEFENDANT'S MOTION TO DISMISS**
     v.                                                          )
                                                                 )
CITY AND COUNTY OF SAN FRANCISCO, )              **Date**:  October 26 , 2007
ANTONIO FLORES, DON SLOAN,                          )           **Time**:  8:30 a.m.
MARSHA ASHE, and DOES 1-50, inclusive            )             **Place**: Courtroom 8, 19th Fl.
                                                                 )
            Defendants.                                          )
                                                                 )

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

# TABLE OF CONTENTS

PAGE

I.    Introduction ................................................................................................1

II.   Argument....................................................................................................2

      A.  The Plaintiff States a Claim for Denial of Equal Protection....................................2

      B.  The Plaintiff Has Stated a Cause of Action For Denial of Due Process ................7

      C.  This Case is not Brought Under the Fourth Amendment .....................................11

      D.  The Individual Defendants are not Immune.........................................................11

      E.  The Plaintiff has Adequately Stated a *Monell* Claim ...........................................13

      F.  Punitive Damages are Available Against the Individual Defendants ..................13

      G.  There is no Need For a More Definite Statement .................................................13

      H.  The Pendent State Claim ......................................................................................14

V.    Conclusion ................................................................................................14

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

i

1

2

3

THE SCOTT LAW FIRM<br>1375 SUTTER STREET, SUITE 222<br>SAN FRANCISCO, CA 94109

# TABLE OF AUTHORITIES

PAGE

CASES

*Bell Atlantic Corp. v. Twombly*, __U.S.__, 127 S. Ct. 1955 (2007)................................2, 4

*Bernhardt v. County of Los Angeles*, 279 F3d 862 (9th Cir 2002) ..........................4

*Carrasca v. Pomeroy*, 313 F.3d 828 (3d Cir.2002) ..........................................1

*C.N. v. Wolf*, 410 F.Supp.2d 894 (C.D.Cal., 2005)..........................................12

*Gilbert v. Homar*, 520 U.S. 924 (1997) ..................................................8, 9

*Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997) ..................................12

*Loving v. Virginia*, 388 U.S. 1 (1967) ....................................................10

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ................................................9

*Pacific Lumber Co. v. State Water Resources Control Bd.*, (2006) 37 Cal. 4th 921 ...........7

*People v. Monroe*, (1993) 12 Cal.App.4th 1174..............................................5

*Wayte v. United States*, 407 U.S. 598 (1985) ..............................................6

*Whren v. U.S.*, 517 U.S. 806 (1996) .......................................................1

STATUTE

42 U.S.C. § 1983...........................................................................2, 4

ii

# I. INTRODUCTION

This case is brought by an African American police officer who was arrested without a warrant on a domestic violence charge **after** the District Attorney declined to prosecute. He was then immediately subjected to a 60-day suspension without pay. The gravamen of the complaint is that the plaintiff was arrested because he is a black man married to a white woman. By established customs and practices of the SFPD, he should not have been arrested. That is, he was a victim of highly selective enforcement of the law, based on his race and his association, both of which are clear constitutional violations.

The defense argues repeatedly, throughout its motion, that the plaintiff has not stated a case under the Fourth Amendment. In fact, this case is not based on violation of the Fourth Amendment. Even if the police had probable cause to make an arrest, that does not justify selective enforcement of the law based on racial criteria. Other police officers in similar circumstances are not arrested by the SFPD. Thus, the defendants violated, at least, plaintiff's First Amendment right to association and Fourteenth Amendment right to equal protection.

The Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). In *Carrasca v. Pomeroy*, 313 F.3d 828, 836 (3d Cir.2002), the court found that **"[t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law.... [E]**qual protection claims under the Fourteenth Amendment require a wholly separate analysis from ... claims under the Fourth Amendment." (internal citations omitted) (emphasis added). Whereas a law enforcement officer's subjective intentions have no place in Fourth Amendment analysis, they are critical to an equal protection analysis.

- 1 -

Following his arrest, the plaintiff was immediately subjected to a 60-day suspension.  The plaintiff alleges that this is a violation of the department's written policies, and a violation of his right to due process.

Under the standard of Federal Rule of Civil Procedure 8(a), the complaint is entirely sufficient to state causes of action under § 1983 for violations of the First, Fifth, and Fourteenth Amendments.  Therefore, the motion to dismiss must be denied.

## II. ARGUMENT

### A. The Plaintiff States a Claim for Denial of Equal Protection

The defendant cites the very recent case of *Bell Atlantic Corp. v. Twombly*, __U.S.__, 127 S. Ct. 1955 (2007), for the proposition that the plaintiff's complaint does not allege sufficient facts to state a claim under 42 U.S.C. § 1983.  In fact, the complaint meets the standard enunciated in *Bell*, which is essentially that it must state sufficient facts to enable reasonable discovery.  This is the key passage in *Bell*, quoted at some length (127 S. Ct. at 1959):

> This case presents the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act.  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)... ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (footnote omitted), on the assumption that all the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for ***enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.*** And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." *Ibid.* [1]

*Bell* is not a civil rights case, and some of the statements in *Bell* apply only to a conspiracy claim, and this isn't a conspiracy case. Nonetheless, the plaintiff agrees that *Bell* requires more than the pleading of legal conclusions. It requires the pleading of enough fact – accepted as true – to show a right to recovery. And, it requires enough specificity to raise a reasonable expectation that discovery will reveal evidence of illegal, or unconstitutional, acts. The plaintiff has met those standards.

The complaint states, in relevant part:

11. * * *.The plaintiff further alleges that he was treated differently from other police officers and City officials because he is an African-American man married to a Caucasian woman. The plaintiff further alleges that if he were Caucasian he would not have been arrested and immediately suspended without pay.

---

[1] See also, to similar effect, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination*, 507 U.S. 163, 168 (1993). The *Leatherman* Court quoted from *Conley v. Gibson*, 351 U.S. 41, 47: "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

- 3 -

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

Obviously, in stating that he was treated differently because he is an African-American man married to a Caucasian woman, and that he would not have been arrested and immediately suspended without pay if he were Caucasian, the plaintiff has stated *facts*, subject to discovery. If those facts are true, as must be assumed in this proceeding, the plaintiff has stated causes of action for violation of his right to association, and violation of his right to equal protection of the law. He has not engaged in the formulaic recitation of the elements condemned in *Bell Atlantic v. Twombly.*

It is not necessary for the plaintiff to make more specific allegations against specific individuals at this time. His allegation is that the defendants caused him to be arrested because he is a black man married to a white woman. This is a reasonably clear allegation, subject to proof or disproof as are other matters of fact.

Plaintiff's case should be compared, for example, with *Bernhardt v. County of Los Angeles,* 279 F3d 862 (9th Cir 2002). In that case, the plaintiff alleged that Los Angeles County "had a custom, practice and policy to offer or accept settlements in federal civil rights cases only for a 'lump sum, including all attorneys' fees'." She alleged that this policy had deprived her of her "implied federal statutory right under 42 U.S.C. Section 1988" to contract with an attorney for representation in exchange for an assignment to the attorney of the right to seek statutory attorney fees. The County's policy, she alleged, violated the Supremacy Clause by implicitly repealing § 1988. More specifically, she alleged that the County's policy deprived her of the opportunity to obtain a civil rights lawyer to represent her in a separate § 1983 action against County law enforcement officials for the use of excessive force.

- 4 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

As can be seen, the allegations in *Bernhardt* are much less direct than those in this case. The district court dismissed Bernhardt's complaint, partly because it found Bernhardt's allegations too speculative. It was pure speculation, the district court found, that a settlement would be offered in her case, or that the County would require her to waive fees in the event of settlement.

On appeal, the Ninth Circuit held that the plaintiff's allegations of damages suffered, though somewhat speculative, were sufficient to withstand a 12(b)(6) motion. Specifically, the Court held: "First, the court should have accepted as true Bernhardt's allegation that she would have obtained counsel in the absence of the County's policy." (279 F.3d at 871) The Court went on to say (279 F.3d at 872):

> At oral argument, Bernhardt contended that she could obtain actual damages because she would have prevailed in her underlying action if she had been represented by counsel. Bernhardt analogized her damages claim to a claim for legal malpractice. We are doubtful that Bernhardt's damages claims are plausible, and we note that a claim for damages that is too speculative in some circumstances precludes standing. * * *. But we accept her allegations because we examine only the face of her complaint and therefore conclude that she has standing to pursue her claim for damages.[2]

Since the arrest in this case was made under California law, it is helpful to consider what California courts have said about selective arrests. In *People v. Monroe,* (1993) 12 Cal.App.4th 1174, 1192, the Court of Appeal for the First District summarized the law:

> It is important to note that though we find no basis for a constitutional challenge to the form of police discretion authorized by [Vehicle Code]

---

[2] See also, *McNamara-Blad v. Association of Flight Attendants,* 275 F3d 1165 (9th Cir. 2002), in which the Ninth Circuit wrote: "We take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir.2000). *We will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir. 2000)." (Emphasis added.)

- 5 -

section 40302 and similar statutes, a citee who believes that discretion has been abused is not without a remedy. Like a challenge to the discretionary decision to prosecute, a challenge to an officer's decision to take a citee into custody must be based on a showing the decision was made on invalid criteria, such as pretext, race, religion, or other classification unrelated to the purpose of the statute, i.e., to ensure the compliance of a citee with the promise to appear. In those cases in which the officer has used the custody procedure for some other purpose, the officer's decision is open to challenge. ( *Sundance v. Municipal Court, supra,* 42 Cal.3d at pp. 1133-1136, 232 Cal.Rptr. 814, 729 P.2d 80; see, e.g., *Wayte v. United States* (1985) 470 U.S. 598, 607-608, 105 S.Ct. 1524, 1530-1531, 84 L.Ed.2d 547 [selective enforcement]; cf. *Com. v. Williams* (1990) 390 Pa.Super. 493, 568 A.2d 1281, 1287 [given probable cause, discretionary decision to arrest not constitutionally significant absent evidence of discriminatory enforcement].)

The *Monroe* Court cites *Wayte v. United States,* 407 U.S. 598 (1985) in which the U.S. Supreme Court wrote (at 608):

Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints. *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (footnote omitted). In particular, the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' *Bordenkircher v. Hayes, supra,* 434 U.S., at 364, 98 S.Ct., at 668, quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), including the exercise of protected statutory and constitutional rights, see *United States v. Goodwin, supra,* 457 U.S., at 372, 102 S.Ct., at 2488.

Not to belabor the point any further, the complaint states a claim for selective enforcement based on association and race, in violation of the First and Fourteenth Amendment. Plaintiff's allegation that he would not have been arrested or immediately suspended if he were Caucasian suffices to state the nature of his claim and show his entitlement to relief, as required by FRCP 8(a).

- 6 -

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

**B. The Plaintiff Has Stated a Cause of Action for Denial of Due Process**

The complaint states that "contrary to Department customs and policies, and without a hearing before the Police Commission, the plaintiff was suspended from his position...." (Complaint ¶ 12)  Which is to say, plaintiff was denied due process of law.

Strictly for its reasoning in regard to the issue of due process, plaintiff asks this Court to take judicial notice of the unpublished opinion in *Cohen v. City and County of San Francisco*, (1st Dist.2007) 2007 WL 1941761.  (See, Exhibit A attached)

Local Rule 3.4(e) of this Court provides that at any order or opinion that is designated "NOT FOR CITATION" pursuant to the rules of the issuing court, may not be cited to this Court, except when relevant under the doctrines of law of the case, *res judicata* or collateral estoppel.

California Rule of Court 8.1115 provides that an unpublished opinion, such as *Cohen*, may be cited or relied on: (1) when the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel; or (2) when the opinion is relevant to a criminal or disciplinary action because it states reasons for a decision affecting the same defendant or respondent in another such action.

The *Cohen* case is also citeable because it meets both of the exceptions stated in the California rule.  Taking the exceptions in reverse order, it is entirely relevant to a disciplinary action, because it states reasons for a decision affecting the same defendant, an action involving the same rules and regulations involved in this case.

The decision is also relevant under the doctrine of collateral estoppel.  As stated in *Pacific Lumber Co. v. State Water Resources Control Bd.*, (2006) 37 Cal. 4th 921, 943, the elements of collateral estoppel are:

- 7 -

First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; second, this issue must have been actually litigated in the former proceeding; third, it must have been necessarily decided in the former proceeding; fourth, the decision in the former proceeding must be final and on the merits. [fifth], the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

The *Cohen* decision satisfies all those conditions. Specifically, the court in *Cohen* held that the discretionary power of the Chief to suspend officers without pay and without a hearing is limited by the requirement of "exigent circumstances." Every case must be decided on its own facts, but *Cohen* held a suspension must be based on an actual need to protect the public or the police. Here, there is no showing of any such exigency. The *Cohen* decision establishes that the Chief cannot create exigent circumstances merely by declaring that they exist.

Lastly, plaintiff takes note of Judge Hamilton's very recent decision in *California v. Infineon Technologies AG*, Slip Copy, 2007 WL 2523363 (N.D.Cal., Aug 31, 2007). In that case, the court adopted the reasoning of *Arnold v. Microsoft Corp.*, 2001 WL 1835377 (Ky.Ct.App. Nov.21, 2001) a Kentucky decision that was directly on point, though the case was unpublished and not citeable by Kentucky rule. Therefore, the court relied on *Arnold* (an unpublished case) to the same extent as two other cases, and adopted the reasoning of the unpublished case, exactly as we are asking the Court to do in this case.

In *Cohen*, a police officer who produced a highly publicized video parody of life in the SFPD was suspended without pay, but returned to duty following an administrative hearing, with a total loss of four days' pay. Eventually, the officer filed a petition for a writ of mandate, seeking the lost pay.

In its defense in *Cohen*, the City argued, among other things, that the suspension was within the discretionary power of the Chief, as set forth in city charter § 8.344 and General Order 2.07. Those sections provide as follows –

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

- 8 -

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

• **Section A8.344 of the City Charter**: "In the circumstances listed in Section A8.341 the chief of the police department and the chief of the fire department may temporarily suspend a member of the respective department pending a hearing before the police or fire commission on disciplinary charges against the member...."

• **Section 8.341City Charter**, imported into § 8.344, includes, "conduct involving misappropriation of public funds or property, misuse or destruction of public property, drug addiction or habitual intemperance, mistreatment of persons, immorality, acts which would constitute a felony or misdemeanor involving moral turpitude, or acts which present an immediate danger to the public health and safety...."

• **SFPD General Order 2.07, Rule I.C.8**, states, "Under exigent circumstances the Chief is authorized to suspend temporarily any officer pending a hearing before the Commission. In all such cases of suspension, the Chief shall immediately report the same to the Commission with the reasons therefor in writing."

The City cited these provisions in *Cohen*, and cites them again here.  In *Cohen*, the Court of Appeal observed:

> The evident purpose of the temporary suspension procedure is to protect the public and the Department and its employees from the risk of further misconduct by the accused officer. That is the only type of exigency that justifies suspending the officer without pay before the underlying accusations have been fully formulated, disclosed, or adjudicated, and before the officer has been afforded any opportunity to respond to them. The procedure is not designed to allow the Department to inflict immediate punishment on the officer as a way of underlining its disapproval of his conduct. Indeed, under the Department's theory, any alleged conduct that might bring discredit on the Department, or that merely angered members of the public or drew adverse publicity, would authorize the chief to immediately suspend the accused officer without pay. Such a sweeping interpretation of the chief's discretion would be inconsistent with the applicable Charter provisions, and would upset the balance struck by Charter section A8.344 and General Order between protecting the Department's mission and protecting the officer's due process rights and reputational and financial interests.

- 9 -

The reasoning *Cohen* should be applied in this case.

The defense also relies on *Gilbert v. Homar,* 520 U.S. 924 (1997). In that case, the Supreme Court held that there is no *absolute rule* that governmental employer may not suspend employee without pay unless that suspension is preceded by some kind of pre-suspension hearing, providing employee with notice and opportunity to be heard.

*Gilbert v. Homar* prescribes a balancing test, taken from *Matthews v. Eldridg*e, 424 U.S. 319, 335 (1976):

> To determine what process is constitutionally due, we have generally balanced three distinct factors:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Gilbert v. Homar*, 520 U.S. at 931-932. Here, if the plaintiff's allegations are accepted as true, the three factors all favor the plaintiff. First, the plaintiff's private interest in his job, his career, and his reputation are all severely impacted by the suspension; second, there is an obvious risk of an erroneous conclusion in an action taken without benefit of any investigation; third, the City had little if any legitimate interest in suspending the plaintiff instantly. The Department knew that the District Attorney had declined to prosecute. Cook hadn't been charged with anything that would make him a danger to the public. The *Gilbert* Court wrote (520 U.S. at 932): "the State has a significant interest in immediately suspending, **when felony charges are filed against them,** employees who occupy positions of great public trust and high public visibility, such as police officers." (emphasis added). No doubt. But in this case, no criminal charges were filed against the plaintiff.

In **this** case, the plaintiff was suspended entirely on the basis of an arrest made without a warrant, a week after the alleged act, on the basis of one person's uncorroborated statement.

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

- 10 -

1   Plainly, there was **no** exigent circumstance, **no** danger to the public, and **no** pressing need to

2   suspend the plaintiff without pay and without a hearing. This case is not barred by *Gilbert v.*

3   *Homar*.

4

5       **C. This Case is Not Brought Under the Fourth Amendment**

6       Though it recognizes that the complaint does not mention the Fourth Amendment, the

7   defense devotes a section of its motion to the argument that plaintiff fails to state a claim under

8   the Fourth Amendment. (Motion, 9:1-10:10.)

9       In order to remove any lingering doubt – this case is not brought under the Fourth

10  Amendment. The question is not whether the police had probable cause to effect an arrest. The

11  question, as to the arrest per se, is whether the arrest was selective, based on the plaintiff's race,

12  and his marriage to a white woman. These allegations implicate the First and Fourteenth

13  Amendments.

14

15

16      **D. The Individual Defendants Are Not Immune**

17      The defense argues that the individual police officers sued are entitled to qualified

18  immunity. The defense alleges that nothing in the complaint suggests that the officers who

19  arrested him did not have probable cause to do so, and that "Cook fails to identify any other

20  clearly defined constitutional right violated by the department." (Motion, 9:13-18.)

21      To reiterate: the plaintiff alleges a selective, race-based arrest. The mere presence of

22  probable cause is not a defense to selective arrest. This matter is discussed at length above. A

23  selective arrest, based on race or association, is unconstitutional.

24

25      It is ironic that, given the allegations in this case brought under 42 U.S.C. Section 1983,

26  the defense claims that Cook has not identified a clearly defined constitutional right. The Federal

27  Civil Rights Act of 1871 was historically known as the Ku Klux Klan Act and was passed as an

28

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

enabling statute to enforce the Constitution and the 14th Amendment.  Although the Equal

Protection Clause was not part of the original "Bill of Rights", the plaintiff believes it is a clearly

defined constitutional right intended to protect African-American men and women.  As remedial

legislation, Section 1983 is to be given liberal construction.  In addition, since 1967 the Supreme

Court has made it clear that miscegenation statutes to prevent marriages between persons solely

on basis of racial classification violate the equal protection and due process clauses of the

Fourteenth Amendment. *Loving v. Virginia*, 388 U.S. 1 (1967).

The defense correctly states that the relevant, dispositive inquiry in determining whether a

right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted. (Motion, 11:1-4.)  Here, it is alleged that the plaintiff

was arrested without a warrant, in violation of established SFPD policy, because of his race and

his interracial marriage.  Certainly, the defendants have the right to deny the charges, but it can

hardly be denied that the alleged conduct is unconstitutional, and any reasonable officer would

know that.

The defense argues that immunity may be denied only if officers of reasonable

competence could not disagree on the lawfulness of the conduct. (Motion, 11:7-9.)  Which is to

say, no "officer of reasonable competence" could doubt that race-based arrest is unlawful.  If the

plaintiff's allegation that he would not have been arrested had he been Caucasian is taken as true,

this cannot possibly be considered a case of good faith misjudgment or mistake.  Therefore, the

individual defendants are not entitled to qualified immunity.

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

- 12 -

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

### E. The Plaintiff Has Adequately Stated a *Monell* Claim

The defense argues that the plaintiff has failed to state a *Monell* claim against the City. Once again, it focuses on the "unlawful arrest," though the plaintiff has not alleged a Fourth Amendment violation.  (See part C, above.)

The defense also argues that the plaintiff has failed to identify the acts that were "ratified" by the City.  In fact, the complaint adequately states the unlawful act – selective, race or association-based arrest.  The SFPD ratified this unconstitutional act when it adopted the police officers' personal judgment and immediately suspended the plaintiff.  *Henry v. County of Shasta*, 132 F3d 512 (9th Cir. 1997).

### F. Punitive Damages Are Available Against the Individual Defendants

As shown above, the plaintiff has alleged a valid cause of action against the individual defendants.  Consequently, regardless of the immunity of public entities from punitive damages, the plaintiff may still seek punitive damages against the the individual defendants in their personal capacities. See, e.g. *Smith v. Wade*, 461 U.S. 30 (1983); *C.N. v. Wolf*, 410 F.Supp.2d 894, 904 (C.D.Cal., 2005).

### G. There is No Need for a More Definite Statement

The defendant asks for, at the least, that the plaintiff amend his claim to state his claims more clearly.  As stated above, the plaintiff believes that his claims are clearly stated.  Should the Court feel otherwise, the plaintiff certainly stands ready to amend his complaint to state more clearly the causes of action for selective arrest and deprivation of due process.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**H. The Pendent State Claim**

The plaintiff has brought a lawsuit in state court under the California Fair Employment Act virtually identical to the pendent state claim alleged here. While the plaintiff recognizes that he can not try the liability case twice, he should be able to have that claim decided at least once. This court can and should exercise supplemental (pendent) jurisdiction over this claim. Otherwise, there could be 2 trials because Title VII has a $300,000 limit on general damages and the FEHA does not. If a federal jury found discrimination in violation of Title VII and awarded over $300,000 in general damages, which this Court would potentially have to reduce, the plaintiff would be entitled to a trial in State court to try to make up the difference. This would be a waste of judicial resources.

### III.  CONCLUSION

The plaintiff has adequately stated causes of action as required by Rule 8. Plaintiff's allegations, if true, show violations of the First, Fifth, and Fourteenth Amendments. The individual defendants do not enjoy qualified immunity and may be liable for punitive damages.

For all of these reasons, the City's motion must be denied.

**DATED:** October 5, 2007

**SCOTT LAW FIRM**

By: _____
    JOHN HOUSTON SCOTT
    Attorney for Plaintiff

THE SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# EXHIBIT A

Westlaw.

Not Reported in Cal.Rptr.3d                                                                                 Page 1
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

Cohen v. City and County of San Francisco
Cal.App. 1 Dist.,2007.
Only the Westlaw citation is currently available.
California Rules of Court, rule 8.1115, restricts
citation of unpublished opinions in California courts.
Court of Appeal, First District, Division 1, California.
Andrew COHEN, Plaintiff and Appellant,
v.
CITY AND COUNTY OF SAN FRANCISCO et
al., Defendants and Respondents.
No. A114661.
**(San Francisco County Super. Ct. No. CPF-
06-506056).**

July 5, 2007.

Alison Berry-Wilkinson, Rains, Lucia & Wilkinson
LLP, Concord, CA, for Plaintiff and Appellant.
Lawrence Hecimovich, Deputy City Attorney, San
Francisco, CA, for Defendants and Respondents.
MARGULIES, J.
*1 Andrew Cohen, a uniformed San Francisco po-
lice officer, appeals from a judgment denying his
petition for a writ of mandate to compel the City
and County of San Francisco, and its police depart-
ment and chief of police, to rescind his temporary
suspension without pay from December 8 until
December 16, 2005. The suspension arose from a
video Cohen made that parodied police department
life in a manner that the chief of police found to be
offensive and harmful to the department's image.
Cohen contends that the trial court erred in finding
that the suspension was authorized by the city
charter and police department regulations. We
agree in part with Cohen's contentions, and reverse
the judgment.

Cohen is employed by the San Francisco Police De-
partment (Department) as a police officer. Some-
time in 2005, Cohen created videotapes showing
other police officers and members of the public en-

gaged in what Cohen described as a "comedic par-
ody of Police Department life."According to the
Department, the scenes in the videotape were shot
at the Bayview-Hunters Point station and at other
Department offices, and were staged using police
officers in uniform, and Department vehicles, re-
volvers, and other Department equipment. Cohen
placed excerpts of the video on a Web site he main-
tained on the Internet, and planned to show the
tapes at a Christmas party to be attended by
Bayview-Hunters Point officers. According to the
Department, the existence of the tapes became
known to the press and the public on or about
December 7, 2005. Chief of Police Heather Fong
saw excerpts of the tapes on that date.

On December 8, 2005, San Francisco Mayor Gavin
Newsom and Chief Fong called a press conference
at which they showed the public and the media ex-
cerpts of Cohen's video. At the press conference,
Mayor Newsom described the video as " 'sexist, ra-
cist, and homophobic,' " and Chief Fong labeled
the video as " 'egregious, shameful, and despic-
able.' " Chief Fong stated that this was a " 'dark
day in the history of the San Francisco Police De-
partment.' "

Effective at 8:00 a.m. on December 8, Chief Fong
suspended Cohen without pay from his duties as a
police officer, pending a future hearing on charges
that were to be filed against him before the Police
Commission of the City and County of San Fran-
cisco (Police Commission). The letter notifying Co-
hen of his suspension read in pertinent part as fol-
lows: "Pursuant to Rule [I.C.8.] of Department
General Order 2.07 FN1 ... and San Francisco
Charter § A8.344, FN2 you are hereby suspended
from your duties as a member of the San Francisco
Police Department ... pending hearing of charges to
be filed against you before the Police Commission.
[¶] The charges will allege that you violated Rule 9
of Department General Order 2.01 FN3 when you
created and placed inappropriate and unauthorized
pictures and other information regarding the De-
partment on the Internet. [¶] I have scheduled a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

hearing in my office on Wednesday, December 14, 2005, at 0800 hours with Deputy Chief Tabak, to determine whether your suspension should remain in effect pending the hearing of charges before the Police Commission."A copy of the letter was sent to the Police Commission.

> FN1. Rule I.C.8. of San Francisco Police Department General Order 2.07, entitled "SUSPENSION PENDING HEARING," reads as follows: "Under exigent circumstances the Chief is authorized to suspend temporarily any officer pending a hearing before the Commission. In all such cases of suspension, the Chief shall immediately report the same to the Commission with the reasons therefore [sic ] in writing."

> FN2. Section A8.344 of the Charter of the City and County of San Francisco (Charter) states in relevant part: "In the circumstances listed in Section A8.341 the chief of the police department and the chief of the fire department may temporarily suspend a member of the respective department pending a hearing before the police or fire commission on disciplinary charges against the member, and the member shall be entitled to a prompt administrative hearing to determine if he or she should remain suspended pending the outcome of the commission proceedings...."
> By its reference to Charter section A8.341, section A8.344 incorporates the following circumstances in which uniformed members of the police and fire departments may be temporarily suspended: "conduct involving misappropriation of public funds or property, misuse or destruction of public property, drug addiction or habitual intemperance, mistreatment of persons, immorality, acts which would constitute a felony or misdemeanor involving moral turpitude, or acts which present an immediate danger to the public health and safety...." Section A8.341 deals with the removal or discharge of non-uniformed civil service em-

ployees, and is otherwise inapplicable to uniformed members of the police and fire departments.

> FN3. Rule 9 of General Order 2.01 states in relevant part: "Any breach of peace, neglect of duty, misconduct or any conduct by an officer ... that tends to subvert the order, efficiency or discipline of the Department, or reflects discredit upon the Department or any member, or is prejudicial to the efficiency and discipline of the Department, although not specifically defined or set forth in Department policies and procedures, shall be considered unofficer-like conduct subject to disciplinary action."

**\*2** Following an administrative hearing on December 14, Chief Fong advised Cohen that the administrative hearing officer, Deputy Chief Pengel, recommended that he be returned to duty and that she concurred in the recommendation. Chief Fong ordered Cohen to return to duty effective on December 16. Cohen missed four days' pay while the suspension was in place.

Through counsel, Cohen requested in writing on December 21 that the Department pay him his back pay for the period of his suspension on the grounds that the suspension was improper and unauthorized. Counsel set a deadline of January 19, 2006 for the Department to respond. Although the Department stated that it was reviewing the issues raised, it had made no substantive response to Cohen's request as of February 9, 2006, the date the present petition for writ of mandate and complaint for declaratory relief was filed.

Cohen's petition alleged that under Charter sections A8.341 and A8.344, and General Order 2.07, the chief of police is only authorized to suspend a sworn member of the police department without pay if three conditions are satisfied: (1) an investigation of the member's alleged misconduct has been completed; (2) charges against the officer are filed and pending before the Police Commission; and (3) the misconduct falls within the circumstances enu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                                                          Page 3
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

merated in Charter section A8.341. Cohen alleged that the Department had a clear, plain, and ministerial duty to comply with the Charter and its own rules by rescinding his suspension because none of these conditions had been satisfied.

In a second cause of action, for declaratory relief, Cohen sought a declaration that: (1) rule I.C.8. of General Order 2.07 and Charter sections A8.344 and A8.341 *only* authorize a summary suspension without pay *after* an investigation has been completed and charges have been filed with the Police Commission, and (2) a summary suspension imposed in accordance with these provisions of the Charter and Department General Orders constitutes the taking of property without due process of law and is therefore unconstitutional.

Cohen's petition was accompanied by a motion for peremptory writ of mandamus. The Department responded with a demurrer to the petition and opposition to the motion, which asserted essentially identical grounds: (1) Charter section A8.344 and General Order 2.07 authorized Cohen's suspension pending the Department's investigation and filing of charges, (2) Cohen could not show that Chief Fong abused her discretion when she suspended him based on Charter section A8.344, (3) the Department's temporary suspension procedures as applied to Cohen comported with his due process rights, and (4) Cohen's claims were barred because he had alternative remedies to recover his lost wages through the Department's disciplinary process.

The trial court denied Cohen's motion and dismissed his petition without leave to amend, citing the following grounds: (1) Charter section A8.344 and General Order 2.07 authorized the Department to temporarily suspend Cohen pending the Department's investigation and filing of charges, and the notice of suspension complied with these provisions; (2) Cohen could not show that the Department abused its discretion under Charter section A8.344; and (3) the Department's temporary suspension procedures comported with Cohen's due process rights in the context of the temporary suspension. The trial court further determined that the

Department's demurrer to the petition was moot.

**\*3** This timely appeal from the ensuing judgment followed.

Cohen advances the following contentions on this appeal: (1) Charter section A8.344 and rule I.C.8. of General Order 2.07 only permit a temporary suspension in the specific circumstances identified in section A8.341, none of which include the violation described in Chief Fong's December 8 letter to Cohen; (2) the Department violated section A8.344 by imposing the temporary suspension before filing any charges or setting a hearing before the Police Commission; and (3) Charter section A8.341 is unconstitutional in that it permits a 30-day suspension of a permanent employee without first affording the employee predisciplinary due process.

A writ of mandate is warranted when the petitioner shows the respondent failed to act upon a clear, ministerial duty to do so, and the petitioner shows a clear right to such performance. (*International Federation of Professional & Technical Engineers v. City and County of San Francisco* (1999) 76 Cal.App.4th 213, 224.)Where the facts are undisputed, and the issue is presented is one of statutory interpretation, the reviewing court exercises its independent judgment and reviews the matter de novo. (*Ibid.*) In our view, the present case turns on an issue of statutory interpretation, and is subject to de novo review. We note that the Department never filed an answer denying the factual allegations of Cohen's petition and that the declaration the Department filed in opposition to Cohen's motion for a peremptory writ of mandate also did not dispute any of the material facts alleged in the petition.

In her December 8 letter to Cohen, Chief Fong stated that Cohen was being suspended pursuant to rule I.C.8. of General Order 2.07 and Charter section A8.344. The opening sentence of General Order 2.07 states: "The purpose of this order is to set forth the Department's disciplinary policies and procedures for officers as prescribed by the City Charter."As the Department readily concedes, rules I.C.8. through I.C.10. of General Order 2.07 "set

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.3d)

forth the Department's procedures for implementing Section A8.344." We note also that rule I.B.5. of the General Order-which defines the term, "suspension pending hearing"-states that "[a]n officer may be suspended by the Chief pending a hearing before the Commission as provided herein below," indicating that rules I.C.8. through I.C.10. provide the *exclusive* procedures by which an officer may be suspended pending a Police Commission hearing on disciplinary charges.

Rule I.C.8. of General Order 2.07-the paragraph Chief Fong explicitly relied on to temporarily suspend Cohen-states that *"[u]nder exigent circumstances* the Chief is authorized to suspend temporarily any officer pending a hearing...." (Italics added.) That section goes on to say, "In all such cases of suspension, the Chief shall immediately report the same to the Commission with the reasons therefore [*sic* ] in writing."Rule I.C.9. requires that in all suspensions under rule I.C.8., "the officer is entitled to an administrative hearing .... held within 5 working days of such suspension .... to determine whether the officer should remain suspended pending a hearing before the Police Commission."Rule I.C.10. provides that if an officer is suspended pending a hearing before the Police Commission, charges are to be filed and served on the officer within seven calendar days after the officer is suspended.

*4 In construing General Order 2.07 and attempting to harmonize it with the relevant Charter provisions, we must be mindful of the potentially conflicting policy interests involved in suspending a uniformed officer without pay before the facts regarding his conduct have been adjudicated or even investigated thoroughly. The loss of pay and stigma associated with a suspension are obviously matters of serious concern to the officer involved. At the same time, uniformed police officers are vested with extraordinary authority in the ordinary course of their duties. Where the officer's continued employment would-if the charges are true-present a material risk of harm to the public or to the Department or its employees, the chief must be empowered to act expeditiously to eliminate that risk.

Of course, a suspension with pay would serve the same purpose as a suspension without pay in that circumstance. But a suspension with pay would penalize the public by imposing a public expense with no corresponding public benefit, and by rewarding the misconduct of those officers ultimately found to be guilty of disciplinary offenses. As long as the affected employee's predisciplinary due process rights are appropriately protected, allowing the chief to suspend accused officers pending a hearing in cases of serious misconduct is essential for the public's protection, and does not offend constitutional requirements.

In our view, General Order 2.07 and Charter section A8.344 establish an appropriate balance between the rights of the accused officer and the interests of the public. If anything, General Order 2.07 narrows the circumstances in which the police department may temporarily suspend an officer compared to Charter section A8.344. The dictionary defines "exigent" as "requiring immediate aid or action." (Merriam-Webster's Collegiate Dict. (10th ed.2000) p. 406 .) The use of the term in rule I.C.8. of General Order 2.07 thus indicates that the chief may order the temporary suspension of an officer pending a Police Commission hearing only when he or she has reason to believe that the officer's continued employment presents an appreciable risk of harm to the Department or the public. As stated by the Department in its brief on appeal, the purpose of a temporary suspension is to "safeguard against an unacceptable risk of injury to the Department or its critical mission of safeguarding the public."At oral argument, counsel for the Department characterized exigent circumstances as an "emergency situation" requiring "immediate action." At the same time, rules I.C.9. and I.C.10. protect the accused officer by providing for immediate administrative review of the suspension and, if the suspension is upheld, by compelling the Department to quickly initiate a contested adjudicatory proceeding in which the employee can challenge the underlying misconduct allegations.

Viewed in light of the text and purpose of the temporary suspension provisions in the Charter and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                      Page 5
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

General Order 2.07, the administrative record in this case is notably silent on two critical issues. First, Chief Fong's December 8 letter to Cohen does not say which, if any, of the types of conduct listed in section A8.341 she was alleging against Cohen. In fact, the only conduct specifically alleged against Cohen in the letter was that he "created and placed inappropriate and unauthorized pictures and other information regarding the Department on the Internet." The letter does not explain how such conduct would come within any of the categories incorporated into Charter section A8.344.

**\*5** The December 8 letter does allege that Cohen's conduct violated rule 9 of General Order 2.01. But rule 9 defines a catch-all category of misconduct-"unofficer-like conduct"-that encompasses "[a]ny breach of peace, neglect of duty, misconduct or any conduct by an officer ... that tends to subvert the order, efficiency or discipline of the Department, or reflects discredit upon the Department or any member, or is prejudicial to the efficiency and discipline of the Department." Although this definition is broad enough to overlap the categories enumerated in Charter section A8.341, it surely also includes conduct that does not fall into any of those categories. While placing inappropriate pictures or information about the Department on the Internet may arguably reflect discredit on the Department, it does not necessarily involve any misappropriation or misuse of public property or other wrong described in section A8.341.

Second, Chief Fong's letter makes no reference to any "exigent circumstances" that required Cohen to be temporarily suspended in order to "safeguard against an unacceptable risk of injury to the Department or its critical mission of safeguarding the public." Why would the fact that Cohen had placed inappropriate pictures regarding the Department on the Internet, if true, create an unacceptable risk that his continued service as a uniformed officer would harm the Department's mission? Not only does Chief Fong's December 8 letter fail to explain this, nothing in the trial court record explains it either.

In response to Cohen's mandate petition, the De-

partment asserted in the trial court that Chief Fong had, in fact, determined that his conduct potentially involved "misuse or destruction of public property" and "mistreatment of persons," and therefore fell within the circumstances incorporated into Charter section A8.344. As to the misuse of public property allegation, the Department explained that the videotapes were evidently made at the Bayview Hunters-Point station and at other Department offices, featured officers in uniform and wearing badges, and used Department equipment including vehicles and service revolvers. The Department did not explain at that time the basis for its claim that Cohen's conduct involved the "mistreatment of persons." It also did not explain what the "exigent circumstances" were that Chief Fong believed warranted suspending Cohen without pay.[FN4]

> FN4. At oral argument, the Department's counsel maintained that Cohen had never in fact disputed the existence of an exigent circumstance in the course of the trial court proceedings. In our view, the allegations of Cohen's petition do place the existence or nonexistence of exigent circumstances in issue. He alleged that the Department's action violated rule I.C.8. of General Order 2.07, as well as the Charter, and that his suspension was unauthorized under either the Charter or the Department's rules. The petition incorporated a letter sent by Cohen's counsel to the Department in which he asserted that the Department was acting in contravention of its authority because he was not being charged with any conduct that authorized a suspension under the Charter. In connection with his motion for a writ of mandate in the trial court, Cohen argued specifically that the Department's demurrer to his petition constituted his first notice of the exigent circumstances on which the Department was then claiming to have relied in suspending him.

It was not until oral argument on appeal, in response to this court's questioning, that the Department for the first time spelled out its basis for be-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7 of 8

Not Reported in Cal.Rptr.3d                                                      Page 6
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)
(Cite as: Not Reported in Cal.Rptr.3d)

lieving that Cohen's conduct involved the mistreatment of persons, and its reasons for temporarily suspending him. Regarding the claim of mistreatment of persons, the Department explained that this included two aspects. First, the Department believed that the video's use of racist, sexist, and homophobic group stereotypes constituted mistreatment of persons. Second, the video assertedly included scenes depicting persons being mistreated. The Department questioned whether the participants were fully informed in advance of the nature of the scenes in which they appeared and whether placing the video on the Internet without the participants' consent was itself an act of mistreatment.[FN5]

> FN5. It should be noted that this court has not viewed the video or videos in issue because they were not made part of the record on appeal in this case. Whether the Department has fairly characterized the contents of the video is not material to our analysis, and our decision in this case implies no judgment about the video or the reaction it generated.

*6 Regarding the issue of exigent circumstances, counsel for the Department explained at oral argument that the exigency was the Department's need to promptly disassociate itself from the viewpoints and attitudes reflected in the videotape. Cohen had in the past made videos for the Department. According to counsel, Chief Fong was concerned that members of the public angered by the videotape might believe that the Department in some fashion condoned the offensive views or stereotypes reflected in it. Such a perception, if not promptly and forcefully counteracted by the Department, would do irreparable harm to the Department's image and effectiveness in the affected communities, and could even pose a danger to officers on the streets. Chief Fong believed that suspending Cohen would help bring home the message that the Department disapproved of and repudiated the attitudes reflected in the videotape.

There are two problems with the Department's be

lated explanation of its reasoning process. First, the record before us fails to establish that the reasons offered at oral argument were the Department's actual reasons for suspending Cohen in December 2005 or that such reasons were ever communicated to Cohen. The record shows that the Department initially offered no explanation of its reasons. Then, after Cohen filed his mandate petition, the Department claimed in its responsive pleadings that he had been suspended for misusing public property and mistreating persons. The record discloses no mention at that time that Cohen was suspended as a way of disassociating the Department from the views expressed in his video.

Second, assuming for the sake of analysis that the reasons eventually offered by the Department at oral argument do reflect the Department's motivation for suspending Cohen in 2005, such a suspension does not comply with the Charter or the Department's own rules. The evident purpose of the temporary suspension procedure is to protect the public and the Department and its employees from the risk of further misconduct by the accused officer. That is the only type of exigency that justifies suspending the officer without pay before the underlying accusations have been fully formulated, disclosed, or adjudicated, and before the officer has been afforded any opportunity to respond to them. The procedure is not designed to allow the Department to inflict immediate punishment on the officer as a way of underlining its disapproval of his conduct. Indeed, under the Department's theory, any alleged conduct that might bring discredit on the Department, or that merely angered members of the public or drew adverse publicity, would authorize the chief to immediately suspend the accused officer without pay. Such a sweeping interpretation of the chief's discretion would be inconsistent with the applicable Charter provisions, and would upset the balance struck by Charter section A8.344 and General Order 2.07 between protecting the Department's mission and protecting the officer's due process rights and reputational and financial interests.

*7 In our view, temporary suspensions may not be used as a shortcut method of taking punitive action

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                          Page 7
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

against an officer or as a tool for conducting public relations damage control. Based on the record before us, including the Department's shifting explanations of the basis for its action, we hold that Chief Fong abused her discretion by ordering Cohen's temporary suspension for reasons that are not authorized by the Charter and that did not constitute exigent circumstances under the Department's internal rules.

We find no merit in Cohen's additional contentions that the Department violated Charter section A8.344 by imposing the temporary suspension before filing any charges or setting a hearing before the Police Commission, and that the section unconstitutionally authorizes a 30-day suspension without predisciplinary due process. No language in section A8.844 or General Order 2.07 requires that formal charges be filed before a uniformed officer can be temporarily suspended. Rule I.C.10. of General Order 2.07 would be completely superfluous and nonsensical if we adopted Cohen's construction of the chief's suspension powers under rule I.C.8. Further, contrary to Cohen's suggestion, we find no indication in the relevant Charter provisions that uniformed officers can be suspended for 30 days without any form of predisciplinary due process. Since Charter section A8.341 does not apply to uniformed officers, Cohen lacks standing to challenge its constitutionality. The fact that the categories of misconduct enumerated in section A8.341 are incorporated by reference in section A8.344 does not give Cohen standing to challenge other portions of section A8.341 that have no application to uniformed officers.

The Department raises one final barrier to mandate relief, claiming that Cohen has adequate alternative remedies at law for recovering his lost wages, such as bringing an action for damages or utilizing the Department's own disciplinary processes. These remedies are not plain, speedy, or adequate. (Code Civ. Proc., § 1086.)Mandate is appropriate in this case because the dispute concerns the proper construction of the Department's official duties under the Charter and an award of back pay is merely incidental to the duty sought to be enforced. (See

*Coan v. State of California* (1974) 11 Cal.3d 286, 291;*Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469, 475.)

We find that the Department has a plain, clear, and ministerial duty to rescind Cohen's temporary suspension and make him whole for the pay loss he suffered as a result of the suspension. In so holding, we imply no judgment regarding the merits or proper disposition of the disciplinary charges the Department has filed against Cohen.

The judgment is reversed and the matter is remanded to the trial court for entry of a new judgment commanding respondents to rescind Cohen's unpaid suspension and restore any pay and benefits lost as a result of his temporary suspension from December 8, 2005 until December 16, 2005.

We concur: STEIN, Acting P.J., and SWAGER, J.
Cal.App. 1 Dist.,2007.
Cohen v. City and County of San Francisco
Not Reported in Cal.Rptr.3d, 2007 WL 1941761 (Cal.App. 1 Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.