DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH SALVESON, State Bar #83788
Chief Labor Team
MARGARET W. BAUMGARTNER, State Bar #151762
ADELMISE WARNER, State Bar #215385
Deputy City Attorneys
Fox Plaza
1390 Market Street, Floor No. 5
San Francisco, California 94102-5408
Telephone:    (415) 554-3930
Facsimile:    (415) 554-4248

Attorneys For Defendants
CITY AND COUNTY OF SAN FRANCISCO ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ANTONIO FLORES, DON SLOAN, MARSHA ASHE, and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Case No. C 07 2569 CRB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: Feb. 22, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 8, 19th Fl.<br><br>Date action filed: May 15, 2007<br>Trial date: None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ..................................................................................................................... 1
STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................................. 2
    I.    FACTUAL BACKGROUND............................................................................ 2
        A.    Lisa Cook Reports Domestic Violence................................................... 2
        B.    Lisa Cook Repeats Her Allegations of Domestic Violence, Including Reports of Physical Injury, During Her Interview .................................. 2
        C.    Lisa Cook Reports a History of Domestic Violence............................... 3
        D.    Captain Ashe Decides to Arrest Inspector Cook ..................................... 3
        E.    Captain Ashe Never Heard that Assistant District Attorney Liz Aguilar-Tarchi Stated Prior to the Arrest That She Would Not Charge the Case ..................................................................................................... 4
        F.    Inspector Flores Obtains a Bail Enhancement ........................................ 5
        G.    Captain Ashe Declines Cook's Offer to Give a Statement ..................... 5
        H.    The Department Temporarily Suspends Cook, and Returns Him to Duty After the District Attorney's Office Declines to Prosecute ............ 5
    II.    PROCEDURAL HISTORY............................................................................... 5
ARGUMENT.............................................................................................................................. 6
    I.    COOK LACKS ANY EVIDENCE THAT RACE MOTIVATED THE SAN FRANCISCO POLICE DEPARTMENT TO ARREST HIM FOR DOMESTIC VIOLENCE AND MISUSE OF THE CRIMINAL HISTORY COMPUTER SYSTEM ................................................................. 6
    II.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ....................................................................................................... 9
    III.    THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON COOK'S *MONELL* CLAIM BECAUSE NO FINAL DECISION MAKER RATIFIED RACE DISCRIMINATION................................................................ 10
    IV.    COOK IMPROPERLY REPLED A DUE PROCESS CLAIM ........................... 10
CONCLUSION.......................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Federal Cases**

*American Federation of State, County & Municipal Employees, AFL-CIO v. Washington*
  770 F.2d 1401 (9th Cir. 1985) ............................................................................................. 7

*Anderson v. Creighton*
  483 U.S. 635 (1987) ............................................................................................................ 9

*Bell Atlantic Corp. v. Twombly*
  __ U.S. __, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (May 21, 2007) ..................................... 10

*Carmen v. San Francisco Unified School Dist.*
  237 F.3d 1026 (9th Cir. 2001) ............................................................................................. 6

*Gay v. Waiters and Diary Lunchmen's Union*
  694 F.2d 531 (9th Cir. 1982) ........................................................................................... 6, 7

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982) ............................................................................................................ 9

*Hernandez v. New York*
  500 U.S. 352 (1991) ............................................................................................................ 8

*Monell v. Department of Social Services*
  436 U.S. 658 (1978) .................................................................................................. 1, 6, 10

*Saucier v. Katz*
  533 U.S. 194 (2001) ............................................................................................................ 9

*Washington v. Davis*
  426 U.S. 229 (1976) ........................................................................................................ 6, 8

*Wong v. INS*
  373 F.3d 952 (9th Cir. 2004) ............................................................................................... 9

**Federal Statutes**

42 U.S.C.
  § 1983 .............................................................................................................................. 1, 6

Federal Rules of Civil Procedure
  § 12(b)(6) .......................................................................................................................... 10

# INTRODUCTION

The San Francisco Police Department arrested Inspector Clifford Cook, one of its employees, after investigating an allegation that Inspector Cook committed a crime of domestic violence. Cook's wife reported to the Department that she and Cook had an altercation, during which Cook threw Lisa Cook down some stairs. Lisa Cook suffered bruises and a hairline fracture of her finger.

In addition to arresting Cook, the Department suspended him from employment for 60 days while the criminal case was pending, but put him back on duty shortly after the District Attorney's office declined to move forward with the prosecution. Cook remains unarmed, but working, pending the resolution of disciplinary charges by the San Francisco Police Commission.

Cook sues the Department and three individuals for employment discrimination for his temporary suspension, and also for violation of his constitutional rights under 42 U.S.C. § 1983 based on his arrest and temporary suspension. The three individual defendants, Captain Marsha Ashe, Lieutenant Donald Sloan, and Inspector Antonio Flores worked on the criminal investigation, and Captain Ashe arrested Inspector Cook. These individual defendants did not participate in the administrative proceedings related to Inspector's Cook's suspension.

The City and the three individual defendants now move for partial summary judgment on Cook's 42 U.S.C. § 1983 cause of action on the grounds that: (1) Cook cannot present any evidence upon which a reasonable trier of fact could infer that Captain Ashe arrested him because of his race; (2) the court has already dismissed Cook's due process claim without leave to amend; and (3) Cook's allegations do not state a claim under *Monell*. The three individual defendants also move for dismissal based on qualified immunity because Cook lacks any evidence that these officers knew or should have known that their actions violated Cook's clearly defined constitutional rights.

**MPA/MSJ CASE NO. C 07 2569 CRB**                                           n:\labor\li2007\080165\00456673.doc

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**I.     FACTUAL BACKGROUND**

The Department hired Clifford Cook as a police officer in June of 1991. (Cook Depo. p. 9:13-15.[1]) He promoted to Inspector, and until the events related to this matter worked in the robbery detail. (Cook Depo. p. 9:6-10.)

**A.     Lisa Cook Reports Domestic Violence**

In late July, 2005, the Department received a report that Cook had physically injured his wife in an altercation. (Ashe Dec. ¶ 4, Ex. 1 pp. 1, 2.) The Department received this information through two different sources. First, on July 20, 2005, a medical center made a required report of domestic violence after Lisa Cook reported that her husband caused the injuries for which she sought medical attention. (Ashe Dec. Ex. 1, p. 2.) Those injuries included bruises and a hairline fracture of her finger. (Ashe Dec. ¶ 7, Ex. 2, p. 5.)

Then, on July 26, 2007, Lisa Cook spoke with Lt. Sloan, who worked in the Domestic Violence Unit and reported the incident to him. Lt. Sloan reported the matter to his superior, Captain Marsha Ashe. (Ashe Dec. ¶ 4.) The Department assigned the investigation to Inspector Antonio Flores. (Ashe Dec. Ex. 1.) Inspector Flores immediately opened a case file and began investigating Lisa Cook's allegations. (*Id.*) As part of his investigation, Inspector Flores obtained information about prior police contacts with Cook and his wife, and contacted Lisa Cook for an interview. (*Id.*)

**B.     Lisa Cook Repeats Her Allegations of Domestic Violence, Including Reports of Physical Injury, During Her Interview**

The same evening that Lisa Cook first spoke to Lt. Sloan, Lt. Sloan and Inspector Flores interviewed Lisa Cook at her home. (Ashe Dec. Ex. 1) Lisa Cook stated that on July 19 or 20, 2005, she and her husband had been to the House of Prime Rib in San Francisco and had been drinking. (Ashe Dec. Ex. 2, pp. 4-10.) After they got home, Cook accused her of having an affair with her new boss, and stated that he would run a computer query on the new boss. (*Id.*) They got

---

[1] The pertinent pages of the Deposition of Clifford Cook are attached to the Declaration of Margaret W. Baumgartner, filed herewith, as Exhibit 1.

into an argument about this, and Lisa Cook threw some papers and a vase on the floor. (*Id.*) Then Cook grabbed her, lifted her up and threw her out of the house. (*Id.*) After the incident, Lisa Cook called her daughter, who came and picked her up. (*Id.*) The next day, Lisa Cook woke up in pain, and went to Urgent Care. (*Id.*) The doctors took x-rays and diagnosed her with a hairline fracture in her finger. (Ashe Dec. Ex. 2, p. 5.) At that time, she told the medical staff that her husband caused the injuries. (*Id.*) The medical staff indicated that they would report the incident as required. (*Id.*)

Lisa Cook provided the inspectors with photographs of her bruises that she stated Cook caused during the incident on July 19/20, 2005. (Ashe Dec. Exs. 1 and 2.)

### C.     Lisa Cook Reports a History of Domestic Violence

Lisa Cook also reported a history of domestic violence. (Ashe Dec. Ex. 2, p.) She stated that often she did not file police reports, but that Contra Costa County, Walnut Creek and St. Helena had documented incidents. (Ashe Dec. Ex. 2, p. 4.) She expressed fear of Cook due to his threats, and his statements that he could always track her down, and "plan the perfect murder and they would never find her bones." (*Id.*) She also reported that earlier in their relationship, Cook had raped her while in a car in Arizona, but she had not made a report. (Ashe Dec. Ex. 1, p. 9.)

Lisa Cook also told the Inspectors that Cook "had been cruel to the family cat on several occasions for no reason." (Ashe Dec. Ex. 2, p. 5.)

In addition to interviewing the victim, the Department sought and obtained police records from the other jurisdictions, confirming Lisa Cook's report of other incidents. (Ashe Dec. Ex. 1, pp. 2-4.) The Department additionally obtained records confirming that Cook had made unauthorized computer queries related to Lisa Cook and her family. (*Id.* p. 9.)

### D.     Captain Ashe Decides to Arrest Inspector Cook

On July 27, 2005, the morning after the Department received the report, Captain Ashe met with Deputy Chief Tabak as well as other officers, to discuss this case. (Ashe Dec. ¶ 5.) Both before and during that meeting, Lt. Sloan reported what he and Inspector Flores learned from the victim and from the other aspects of the investigation. (Ashe Dec. ¶ 4.) After discussing the matter with her superiors, Captain Ashe decided that the appropriate way to proceed was to arrest Cook

3

rather than seek a warrant. (Ashe Dec. ¶ 10.) She made his determination based on her belief that the facts indicated that Cook could become even more violent towards Lisa Cook, and that arresting Cook could prevent future harm. (Ashe Dec. ¶¶ 7, 8.) Although Captain Ashe informed her superiors of her decision and they approved, she never sought permission to make the arrest. (Ashe Dec. ¶ 5.)

Later in the afternoon of July 27, Captain Ashe placed Cook under arrest in the Investigations Office in the Hall of Justice. (Cook Depo. p. 32:19-33:10.) The Department allowed Inspector Cook to have present at the arrest some other police officers to provide him support. (Cook Depo. p. 27:19-28:6.) In addition, Cook's commanding officer was present. (Cook Depo. p. 28:10-16.) Immediately afterward, the Union also provided a representative. (Cook Depo. p. 30:14-19.) After the arrest, the Department allowed Cook to remain in an office in the Investigations Bureau while he arranged for bail rather than being taken to the jail facility. (Cook Depo. p. 34:5-7.) Only after his representatives obtained bail did his commanding officers take Cook to be booked. (Cook Depo. p. 38:20-25.)

### E. Captain Ashe Never Heard that Assistant District Attorney Liz Aguilar-Tarchi Stated Prior to the Arrest That She Would Not Charge the Case

While Captain Ashe was discussing this matter with Deputy Chief Tabak and others in the morning of July 27, 2005, she knew that Inspector Flores would be talking the case over with Assistant District Attorney Elizabeth Aguilar Tarchi. (Ashe Dec. ¶ 10.) She did not know when that conversation would occur. (Ashe Dec. ¶ 10.) Given the nature of Lisa Cook's complaint, Captain Ashe did not intend to wait to determine whether the District Attorney would issue a warrant before arresting Cook. (Ashe Dec. ¶ 10.)

Captain Ashe at no point heard or learned that ADA Aguilar Tarchi stated prior to Cook's arrest that she would not charge the case, or that the Department should not arrest Inspector Cook. (Ashe Dec. ¶ 12.) She spoke to ADA Aguilar Tarchi after the arrest, and knew that the ADA Aguilar Tarchi discharged the case for further investigation after Cook's arrest, during the rebooking process. (Ashe Dec. ¶ 12.)

4

### F. Inspector Flores Obtains a Bail Enhancement

Sometime near the time of the arrest, Inspector Flores sought, and the court ordered, a bail enhancement. (Cook Depo. p. 37:13-18.) This increased the bail amount from $50,000 to $100,000. (Cook Depo. p. p. 33:22-34:24.) Captain Ashe supported the bail enhancement in this case. (Ashe Dec. ¶ 9.)

### G. Captain Ashe Declines Cook's Offer to Give a Statement

Shortly after the arrest, Cook requested that he be allowed to give a statement. (Cook Depo. p. 31:4-32:18.) Captain Ashe refused out of concern for Cook. (Ashe Dec. ¶ 13.) Her concern for Cook arose out her knowledge that administrative proceedings regarding his employment would follow the arrest, and she did not want him to lock himself into a statement under the stress of an arrest. (Ashe Dec. ¶ 13.) In addition, she based the arrest on physical evidence, and did not believe that anything that Cook could say would cause her to release him. (Ashe Dec. ¶ 13; Cook Depo. p. 39:19-24.)

### H. The Department Temporarily Suspends Cook, and Returns Him to Duty After the District Attorney's Office Declines to Prosecute

On July 27, 2005, the Police Department suspended Cook pending the resolution of the criminal case against him. (Cook Depo. p. 93:24-25.) A few days after the Department informed Cook of his suspension, the Department convened a hearing to provide Cook with an opportunity to explain why he should not be suspended. (Cook Depo. p. 94:1-3.) Inspector Cook did not testify at that hearing, nor did not provide sufficient information for the Department to return him to work. (Cook Depo. pp. 93:24-25, 94:8-19.) He therefore remained suspended until the District Attorney closed the case, about 60 days later. (Cook Depo. Exs. 15, 14.) At that time, the Department returned Cook to duty in an unarmed status. (*Id.*) Cook remains unarmed, and assigned to a position that does not require public contact. The misconduct charges against him arising out of this incident remain pending. (Cook Depo. p. 129:22-130:17.)

## II. PROCEDURAL HISTORY

On May 15, 2007, Cook sued the City and the three individual defendants in federal court. (He also sued them in state court based on the same facts). He included three causes of action:

5

**MPA/MSJ CASE NO. C 07 2569 CRB**                                          n:\labor\li2007\080165\00456673.doc

Title VII, 42 U.S.C. § 1983, and FEHA.  The City and the individual defendants moved to dismiss the Second Cause of Action under 42 U.S.C. § 1983 for failure to state a claim either against the individuals or the City under *Monell*, and based on qualified immunity.  The court granted the motion as to Cook's due process cause of action without leave to amend, granted the motion as to the *Monell* claim with leave to amend, and suggested that the City file a partial motion for summary judgment as to the equal protection and qualified immunity issues.

On December 11, 2007, Cook filed a First Amended Complaint, which included the same three causes of action.  The only substantive change was the addition of a single allegation related to Cook's *Monell* claim.  Cook failed to eliminate the due process allegations, although the court had granted the City's motion to dismiss without leave to amend.

The parties agreed that the City's motion for partial summary judgment would serve as the response to the complaint.

The City now moves for partial summary judgment on Cook's Second Cause of Action under 42 U.S.C. § 1983 and for dismissal of the individual defendants based on qualified immunity.

**ARGUMENT**

**I.   COOK LACKS ANY EVIDENCE THAT RACE MOTIVATED THE SAN FRANCISCO POLICE DEPARTMENT TO ARREST HIM FOR DOMESTIC VIOLENCE AND MISUSE OF THE CRIMINAL HISTORY COMPUTER SYSTEM**

To prevail on an equal protection claim under 42 U.S.C. § 1983 based on race discrimination, a plaintiff must prove racially discriminatory intent or purpose. *Washington v. Davis*, 426 U.S. 229, 239-42 (1976).  "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).  As the court explained in *Gay v. Waiters' and Diary Lunchmen's Union*, 694 F.2d 531, 555 (9th Cir. 1982), "sanctioning too low a legal standard for inferring discriminatory motivation would encourage harassing, baseless lawsuits. . ."

Here, Cook cannot present evidence of the requisite intent to discriminate against him on the basis of his race (African American) or that of his wife (Caucasian).  Cook lacks *any* direct

6

evidence that his race and the race of his wife motivated the Captain who decided to arrest him. Although a plaintiff may prove a discriminatory motive through circumstantial evidence, the plaintiff must present facts "from which one can infer, if such actions remain unexplained, that it is more likely than not" that the defendant's conduct was racially motivated. *Gay v. Waiters' and Diary Lunchmen's Union*, 694 F.2d 531, 546 (9th Cir. 1982); see also *American Federation of State, County & Municipal Employees, AFL-CIO v. Washington*, 770 F.2d 1401, 1406 (9th Cir. 1985) ("discriminatory intent may be inferred from the actions of an employer where experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.")

      Here, Cook does not allege that anyone made racial comments or stated an intent to arrest him based on his race. Rather, Cook attempts to infer that race motivated his arrest because the District Attorney's office told the Department it "declined to prosecute," yet the Department arrested him anyway. This claim fails for three primary reasons. First, even if, as alleged by Cook, ADA Aguilar Tarchi told Inspector Flores on July 27, 2005 that she would not charge the case based on the evidence presented, Captain Ashe never learned of her statement. (Ashe Dec. ¶ 12.) Even to this date, Captain Ashe has never heard that exchange occurred. (Ashe Dec. ¶ 12.) Thus, even if it happened, it had no effect whatsoever on Captain Ashe's decision to arrest Cook and therefore cannot support any inference related to Captain Ashe.

      Second, even if true, the District Attorney's statement about whether it would charge the case or not fails reasonably to raise any inference that race motivated Captain Ashe to arrest Cook. The Police Department does not seek authority from the District Attorney's office to arrest someone without a warrant. (Ashe Dec. ¶ 10, 11.) In domestic violence cases in particular, the Department regularly arrests suspects who the District Attorney declines to prosecute. And, after the Department arrests a suspect, the Department has additional time to prepare the rebooking packet for the District Attorney, to try to get the District Attorney to charge the case. Here, the Department had an additional 24 hours in which to gather documents and other evidence, should that have been necessary, before presenting the evidence to the District Attorney. (Ashe Dec. Ex. 1.)

Lastly, the undisputed facts show that Captain Ashe decided to arrest Cook prior to Inspector Flores' conversation with ADA Aguilar Tarchi. (Ashe Dec. ¶ 12, Ex. 1; Cook Depo. p. 59:13-15.) Thus, even if we assume that (1) ADA Aguilar Tarchi stated that she would not charge the case; and (2) Captain Ashe was aware of it, it could not have had any influence on Captain Ashe's pre-made decision.

Moreover, the City has numerous facts that explain the arrest, eliminating any conceivable inference that race caused the arrest. See *Washington v. Davis*, 426 U.S. 229, 243 (1976) (discussing burden shifting); *Hernandez v. New York*, 500 U.S. 352 (1991) (inference of discrimination on the basis of race refuted by evidence of legitimate non-discriminatory reasons for decision). These undisputed facts include:

- Lisa Cook's report that Cook threw her down the stairs, and caused her physical injury, which the Department corroborated before the arrest by obtaining confirmation through medical sources and through photos of Lisa Cook's injuries. (Ashe Dec. ¶ 7, Exs. 1 and 2.)

- Cook's status as a police officer, which provides him with authority that could be used to obtain power over citizens, including Lisa Cook and those around her. (Ashe Dec. ¶¶ 6, 7.)

- Lisa Cook's report that her husband had in the past unlawfully run computer queries. Police officers have a unique position in our society, and when their authority is misused, can create the most egregious breaches of trust. The Department's investigation provided corroboration of her allegations, which is a serious violation of the trust placed in a police officer. (Ashe Dec. ¶¶ 6, 7, Exs. 1 and 2.)

- Lisa Cook's stated fear of Cook. (Ashe Dec. ¶ 7.)

- The history of contact with other departments of incidents between Lisa Cook and her husband. (Ashe Dec. ¶ 7.)

- Captain Ashe's belief that the pattern indicated an escalating use of violence by Cook towards his wife and her evaluation of the "lethality factors" existing in this case. (Ashe Dec. ¶ 7.)

- Cook's size, which is over six feet four inches tall, in comparison to his wife's small size. (Ashe Dec. ¶ 7.)

- Lisa Cook's having filed for divorce a few days before the Department arrested Cook. (Ashe Dec. ¶ 7.)

8

1    This plethora of legitimate non-discriminatory reasons for arresting Cook removes any
inference that Ashe's motive in arresting Cook was his race.  Cook must present some evidence
upon which a reasonable trier of fact could conclude that these reasons are a pretext for racial
discrimination.  He has not, and cannot, do so.  Therefore, the Court should grant summary
adjudication to the City and County of San Francisco and the individual defendants on this claim.

## II.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity shields government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known.  *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  Public officials acting under color of law are protected from "undue interference with their duties and from potentially disabling threats of liability by the principle of qualified immunity." *Id*. (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

The first inquiry is whether the individual officer's actions resulted in the violation of any of Cook's constitutional rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").  If the facts do not show a plaintiff suffered a constitutional injury, the inquiry ends and summary judgment based on qualified immunity is appropriate.  Here, the only constitutional harm Cook alleges he suffered was a racially motivated arrest.  Cook conceded that he is not making a Fourth Amendment claim, or asserting that the Department lacked probable cause.  Rather, he asserts only that race motivated his arrest.

Captain Ashe is the person who decided to arrest Cook, and who placed him under arrest. (Ashe Dec. ¶ 5.)  Because neither Lieutenant Sloan nor Inspector Flores arrested Cook, they did not deprive him of a constitutional right.  Also, no facts or allegations provide any reason to believe that either of the other two defendants, Lieutenant Sloan or Inspector Flores, knew or should have known that Captain Ashe arrested Cook with the intent to discriminate against Cook on the basis of his race or that of his wife.  For that reason also, they should be entitled to qualified immunity. See, e.g., *Wong v. INS*, 373 F.3d 952 (9th Cir. 2004) (INS officials entitled to qualified immunity because complaint fails to allege how individuals participated in deprivation of constitutional right); see also

9

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (May 21, 2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

Captain Ashe is also entitled to qualified immunity. Although she arrested Cook, as shown above, no facts support an inference that she did so because of Cook's race. To the contrary, all facts support the legitimacy of Captain Ashe's decision. Therefore she also should be granted qualified immunity.

### III. THE CITY IS ENTITLED TO SUMMARY JUDGMENT ON COOK'S *MONELL* CLAIM BECAUSE NO FINAL DECISION MAKER RATIFIED RACE DISCRIMINATION

Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978) a plaintiff may bring a claim a constitutional violation against the City if the final policy maker for the City made or ratified the decision that resulted in the plaintiff's deprivation of a constitutional right.

Here, Cook alleges that the "the final decision makers for the San Francisco Police Department authorized Marsha Ashe and Don Sloan to arrest the plaintiff without following the custom and practice of (1) interviewing the suspect before making the decision to arrest and (2) having the case approved for warrant or prosecution by the District Attorney's Office." (First Amd. Comp. ¶ 10.) The Constitution requires neither that the police department interview a suspect prior to arrest, nor, when the Police Department has probable cause, to have the District Attorney's office approve the case prior to the arrest. Thus, even if the court were to believe that a final decision maker authorized this behavior, Cook simply fails to state a claim under *Monell*. Moreover, although Captain Ashe made the final decision to arrest Cook and deny him the ability to make a statement, no facts suggests that she makes final policy on behalf of the police department.

Cook's allegations therefore fail to satisfy the requirement that Cook set forth facts sufficient to give rise to "anything other than speculation" regarding a *Monell* claim against the City. He has had an opportunity to make the necessary allegations and has failed to do so.

The court should grant the City summary judgment on Cook's *Monell* claim.

### IV. COOK IMPROPERLY REPLED A DUE PROCESS CLAIM

The City filed a motion to dismiss under 12(b)(6). The Court granted the City's motion to dismiss Cook's due process cause of action without leave to amend. (Baumgartner Dec. Ex. 2.)

10

However, when Cook amended his complaint, he failed to remove his due process claim.  (First Amd. Comp. ¶¶ 15, 25.)  The City therefore requests that the court either strike the allegations in Cook's First Amended Complaint based on due process or grant summary adjudication on that claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the City's motion for partial summary judgment on Cook's Second Cause of Action.

Dated: January 18, 2008

DENNIS J. HERRERA
City Attorney
ELIZABETH SALVESON
Chief Labor Attorney
MARGARET W. BAUMGARTNER
Deputy City Attorneys

By: /s/ Margaret W. Baumgartner
MARGARET W. BAUMGARTNER
Attorneys for Defendants CITY AND COUNTY OF SAN FRANCISCO et al.