1    DENNIS J. HERRERA, State Bar #139669
     City Attorney
2    ELIZABETH SALVESON, State Bar #83788
     Chief Labor Team
3    MARGARET W. BAUMGARTNER, State Bar #151762
     ADELMISE WARNER, State Bar #215385
4    Deputy City Attorneys
     Fox Plaza
5    1390 Market Street, Floor No. 5
     San Francisco, California 94102-5408
6    Telephone:     (415) 554-3930
     Facsimile:      (415) 554-4248

7

8    Attorneys For Defendants
     CITY AND COUNTY OF SAN FRANCISCO ET AL.

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11    CLIFFORD COOK,            Case No. C 07 2569 CRB

12           Plaintiff,        **DECLARATION OF MARSHA P.**

13        vs.                **ASHE IN SUPPORT OF MOTION FOR**
                                         **PARTIAL SUMMARY JUDGMENT**

14    CITY AND COUNTY OF SAN
     FRANCISCO, ANTONIO FLORES,      Date:   Feb. 22, 2008

15    DON SLOAN, MARSHA ASHE, and      Time:   10:00 a.m.
     DOES 1-50, inclusive,             Place:   Dept. 8, 19th. Floor

16                                       Hon. Charles R. Breyer
           Defendants.        Date action filed: May 15, 2007

17                                      Trial date: None set

18

19

20

21

22

23

24

25

26

27

28

1        I, Marsha P. Ashe, declare as follows:

1.  I am a Captain in the San Francisco Police Department. I have been assigned to the Juvenile and Family Services Division since February 2005. I have personal knowledge of the facts contained herein, except for those stated on information and belief, and as to those facts I believe them to be true. If called upon to testify, I could and would testify competently hereto.

2.  I became a police officer with the San Francisco Police Department in August 1982. The Department promoted me to Sergeant in approximately 1990, Lieutenant in 1994, and Captain in 1998. I worked in the investigations bureau as a Captain since 2002. I also worked in Crime Scene Investigations for four years in 1986 to 1990. I attended the Institute of Criminal Investigations, an 80-hour course, in 2004. I have attended multiple weeklong trainings specific to investigation of domestic and family violence, in addition to standard Department training in Domestic Violence investigations, which is fairly vigorous.

3.  My responsibilities as the Captain of the Juvenile and Family Services Division includes supervision of the Domestic Violence, Missing Persons, and Elder Abuse, all of which share issues of family violence.

4.  When the DV Unit received Lisa Cook's report of domestic violence perpetrated by her husband, Clifford Cook, the DV Unit notified me. That occurred on July 26, 2007. Lt. Sloan kept me updated on the progress of the investigation, including informing me of the victim's statements and the information obtained from other jurisdictions regarding prior police contacts related to the Cooks.

5.  In the morning on July 27, 2007, I attended a meeting with other members of the command staff to discuss this case. Shortly thereafter, I made the decision to arrest Clifford Cook, with the approval of Deputy Chief Tabak and then-Captain Keohane. I made that decision based on what I was told by the investigators and the documents I reviewed.

6.  Police officers hold a special position of authority within our society. When police officers are accused of committing crimes, it triggers concern that officers could use their profession, knowledge, skills and access to information to intimidate, harass, or threaten a victim. Thus, there is usually a higher fear-factor when the perpetrator is a police officer. There is also the

concern of tarnishing the public image of police officers and interfering with the public's trust, which we need to do our job. I believe that it is incumbent on us to investigate police officers as fully, if not more fully, than others because the consequences are potentially greater. At the same time, we need to ensure that the rights of the officers are protected.

7. In this case, a number of lethality factors arising in the investigation contributed to my belief that there was a significant risk that Inspector Cook could further harm Lisa Cook, and that arresting him was the proper course of action. These factors included:

- The medical report indicated a hairline fracture of Lisa's finger, and she showed photos of other injuries to the investigators.
- The physical evidence corroborated her report of domestic violence.
- There was a history of police contact involving allegations of abuse, which appeared to me to be escalating.
- Lisa Cook stated she just filed for divorce, which can increase tension in a relationship.
- Lisa consistently stated that she feared for her safety.
- Lisa stated that Inspector Cook has threatened to kill her and stated he could get away with it due to his training and contacts
- Lisa reported a history of stalking type behavior (multiple phone calls and following her)
- This incident appeared to involve alcohol abuse,
- The size difference between the two (Inspector Cook is approximately 6' 6" and 275 lbs, and Lisa is 5' 4" tall).
- Lastly, Lisa reported that Inspector Cook had been cruel to their cat, which, although seemingly insignificant, can often be a sign of potential for violence.

8. I believed, and continue to believe, that arresting Inspector Cook fulfilled our obligation to the victim and to uphold the law. An arrest can serve as another barrier to prevent a perpetrator of domestic violence from further harming the victim. It is our obligation to take all reasonable steps to create those barriers to prevent potential violence.

9. I also was aware of and supported Inspector's Flores application for a bail enhancment in this case. I believed that a bail enhancement would be yet another potential barriar to harm.

10. I was aware at the time of my decision to arrest Clifford Cook on the morning of July 27, 2007 that Inspector Flores would be discussing this matter with Assistant District Attorney Elizabeth Aguilar Tarchi, although I did not know when that discussion would occur. However, in this case, I did not believe that it was necessary or prudent to seek the assistance of the District Attorney's office to obtain a warrant for Inspector Cook's arrest because of the perceived risks as set forth above.

11. The Police Department has a close working relationship with the District Attorney's office. Even when the Department does not request a warrant, conversations with the District Attorney can be useful. For example, the District Attorney's office can provide good advice regarding charges that may be brought, and suggest additional investigative steps prior to or subsequent to an arrest.

12. Between the time that I determined that Inspector Cook would be arrested and the time of the arrest later that afternoon, I did not learn any details regarding Inspector Flores' conversation with ADA Aguilar Tarchi. No one has ever told me that prior to the arrest that ADA Aguilar Tarchi told Inspector Flores that the Department should not arrest Cook, or that the District Attorney would not charge the case. I am aware that after Cook's arrest the District Attorney discharged the case for further investigation, and, about two months later declined to prosecute. I was not aware that the District Attorney would decline to prosecute when Inspector Cook was arrested.

13. It is my understanding that Inspector Cook alleges that the Department violated its normal practice by refusing to allow him to give a statement when I arrested him. Sometimes interviewing a suspect is neither necessary nor prudent. For example, in a homicide case, the Homicide Inspectors sometimes prefer to wait to obtain statements so that there is no question about coercion, or because the arresting officer is not as adept at interviews. In this case, I did not take a statement from Inspector Cook because we had objective evidence of a crime, including evidence of physical injury, and the statement of the victim. In domestic violence cases such as this, we give considerable weight to a victim's statement, more so than in other types of crimes. In addition, I did not believe that it was in his best interest to lock himself into

a story without advice of counsel and in the stressed state that accompanies an arrest.  In other words, I was attempting to prevent him from making a mistake that could affect his administrative disciplinary matter that was related to this case, or from making a statement that he could later claim was coerced or otherwise inadmissible.

14. At no time did Inspector Cook's race, or that of his wife, influence my decision to arrest Inspector Cook, or take any other actions related to this matter.

15. Attached hereto as Exhibit 1 is the Chronological Report of Investigation prepared by Inspector Antonio Flores in the normal course of his business as a San Francisco Police Inspector.  The entry summarizing the victim's statement and the investigative steps prior to Cook's arrest is consistent with what was told to me prior to my decision to arrest Inspector Cook.

16. Attached hereto as Exhibit 2 is the initial Police Incident Report concerning the allegations against Inspector Cook, which is a document created and kept in the normal course of business in the San Francisco Police Department.  The report contains information consistent with what was reported to me prior to my decision to arrest Inspector Cook.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: January 18, 2008

Marsha P. Ashe, Captain, San Francisco
Police Department

# EXHIBIT "1"

EXHIBIT "1"

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL OF INVESTIGATION

Page 1 of 33

| TYPE OF CASE | CASE NO. | VICTIM |
|---|---|---|
| Domestic Violence | 050835556 | Cook, Lisa **COPY** |
| DATE | DETAIL | INSPECTOR ASSIGNED |
| Tuesday, July 26, 2005 | DVRU | Insp. Flores #683 |

| DATE | TIME | ACTIVITY |
|---|---|---|
| 07/26/05 | 1500 | Rec. a work up on a DV investigation involving the victim and suspect. |
| | | Lt. Sloan #1385 gave me a brief up date on the case and instructed me to contact Capt. Cashman and Lt. Loftus regarding the investigation. |
| 07/26/05 | 1534 | Met with Capt. Cashman and Lt. Loftus. |
| | | I was informed that on July 25, 2005 SFPD officers responded to the suspect's home at 581 Bright St, regarding the fact that the suspect was going through a break up with the victim and wanted to kill himself. The officers spoke to the suspect and determined the suspect was ok. He surrendered his weapon. |
| | | The suspect has made numerous calls to the victim. |
| | | Past DV incident which occurred in San Francisco on 07/20/05 at ▓▓▓▓ Street. |
| | | The victim saw a doctor in the East Bay. |
| | | Past DV reports involving them. |
| | | Request to disarm suspect with Chief's order. |
| | | Obtained case number for initial police report. |
| | | Victim's telephone number ▓▓▓▓▓▓ |
| 07/26/05 | 1653 | I called the victim and told her that I was handling the investigation. I told her it was a crime to make a false police report. I told her that I needed to obtain a tape interview with her, involving the incident. |
| | | A tape interview was conducted and this is a summary of the interview. The victim had asked me if I knew the suspect in this case. I told her I knew the suspect and had seen him at police functions. At this point the victim told me that she wanted someone else to handle the investigation. I asked her if she could give me some of the incident and what was going on, which she said all she wanted was safety for her and her children. She said if something was to happen to and her children I was liable. I asked her to give me her address. |
| | | The victim told me that she lived at ▓▓▓▓▓▓▓▓▓ Walnut Creek, 94597, and she lived with her two daughters: |
| | | She told me that she did not have a work address. |
| | | Her daughters were from a prior relationship. |

EXHIBIT
1
12·4·07
C. Cook

PEH040 800-831-6989

CITY 0142
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000288

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION
Page 3 of 33

**COPY**

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | after being reviewed. |
| | | He provided me with phone number ████████ to obtain past DV report. |
| | | Refer to tape for details of the interview. |
| 07/26/05 | 1742 | Called Contra Costa County Sheriff's Office, record room to obtain past DV reports. I spoke to Bernice who told me that she would fax police report. |
| 07/26/05 | 1755 | I spoke to Capt. Cashman who had obtained the Chief's Order. Retained a copy in case file. |
| 07/26/05 | 1807 | Called Lt. Sloan and updated him on the investigation. |
| 07/26/05 | 1811 | I called victim and gave her an update. I told her Chief's Order was granted and the conditions of the order. (Suspect would surrender his firearm and police powers, not have any contact with her or her family and would not use others to contact her.) She told me she was happy and felt safe. |
| | | I told her that Lt. Sloan would contact her for the interview in person. |
| | | Refer to tape for details. |
| 07/26/05 | 1814 | Called Lt. Sloan and updated him on the investigation. |
| 07/26/05 | 1818 | Rec. faxed police report. Retained in case file. |
| 07/26/05 | 1820 | Rec. call from Lt. Sloan who told me that he made contact with the victim and we were going to her location to conduct the interview. |
| 07/26/05 | 1830 | Called Capt. Cashman and updated him on the investigation. He told me that the suspect was served with the Chief's Order. He said that he would honor the order. |
| 07/26/05 | 1835 | Conducted computer work up (all retained in case file). The following results indicated: |

Per CAD history on the location ████████ prior calls for service.
1. 07/25/05, (CAD#2054) Victim reported to the Contra Costa County Sheriff's Office that the suspect wanted to kill himself because of break up. SFPD responded. No action taken and no report made.

2. 07/20/05, (CAD#2592) "Brian" from Urgent Care in Walnut Creek reported that she was a victim of spousal abuse and the suspect was "Clifford Cook."

The suspect is not in custody and has one felony convictions per the CII rap sheet.

No prior documented DV history between the victim and suspect in San Francisco.

No firearms registered to them.

Victim results retained in case file.

CITY 0143
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

SFPD 296 (10/78)

000289

## CHRONOLOGICAL REPORT OF INVESTIGATION

Page 2 of 33

COPY

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | Kimberly Abbas, 04/15/78. |
| | | Fawn Abbas, 10-30-84. |
| | | No other people are living at her house. |
| | | She confirmed that she wanted to speak to another person (inspector) that did not know the suspect. |
| | | I told her that I would call her back with an up date. |
| | | I asked her if she wanted to give me a statement regarding the incident, which she told me no, that she would talk to someone that had no affiliation with the suspect. |
| | | She confirmed she made a police report (Contra Costa County Sheriff Department) Case #0520177. The officer spoke to the suspect. She told the suspect not to contact her anymore. In the morning the suspect left a voice mail and that was where it stood. |
| | | No EPO was ordered. |
| | | She had not sought a restraining order. |
| | | I gave the victim my telephone number to contact me. |
| 07/26/05 | 1705 | Called Capt Cashman and gave him an update and gave him the victim's information for the Chief's Order. He told me that he was applying for the order. |
| 07/26/05 | 1706 | Called Lt. Sloan and updated him. He told me that he would respond to the DVRU and assist in the investigation. |
| 07/26/05 | 1710 | Called Contra Costa County Sheriff's Office, and spoke to Officer Mitchell #34520. I requested a copy of the police report to be faxed to me. He told me that he had to locate the report and obtain permission. |
| 07/26/05 | 1734 | Received a call from Officer Mitchell, who responded to the victim's home and wrote the initial police report on the suspicious occurrence report involving the victim and suspect. He had notified SFPD regarding the incident. |
| | | He was told that she was a victim of domestic violence, but did not get details about the domestic violence nor did he ask questions about it. He was not there for that incident. |
| | | He told me that there was a past DV incident and police report (case# 0330489) at ████████████ |
| | | No prior calls to the new location (█████████████ Walnut Creek). |
| | | The new report was being reviewed by his supervisor and he would fax it to me |

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION

Page 4 of 33

COPY

| DATE | TIME | ACTIVITY |
|------|------|----------|
| 07/26/05 | 1924 | Rec. a call from Lt. Sloan and updated him on the investigation. |
| 07/26/05 | 1925 | I called Walnut Creek PD (925) 943-5844 for history. Notification #05-8971.<br><br>Requested copy of police report, I was told they would call me back, because record room was closed. Record room number (925) 943-5890. |
| 07/26/05 | 1930 | Contacted Contra Costa County Sheriff's Office, for notification that we were responding to victim's location for interview. |
| 07/26/05 | 1934 | Rec. a called from Walnut Creek that I would have to call back tomorrow to obtain the prior police report. |
| 07/26/05 | 2000 | Met with Lt. Sloan who later contacted the victim and told her he was responding to her location. |
| 07/26/05 | 2039 | Wa arrived at victim's home. |
| 07/26/05 | 2047 | Made contact with the victim. The victim did not want me present for the preliminary interview. The interview was conducted outside near the pool area in the presence of her daughter Kimberly Abbas.<br><br>Later Lt. Sloan requested that I join the interview.<br><br>When I was interviewing the victim she did not want to recap the entire incident and I was limited in my interview.<br><br>Facts of the incident documented in the initial police report made by me. (See police report).<br><br>She added that when she was seeking medical attention she was told that they would have to call the police. She told them that she just wanted X-rays and she was leaving. She did not want a restraining order and she just wanted to be left alone.<br><br>She was told by Officer Mitchell that a police report should have been made and they were violating state law.<br><br>She added that there were four documented incidents of DV (one in St. Helena & three in Walnut Creek), but there were many 911 calls to her location ▮▮▮▮▮▮▮▮▮▮▮▮▮, Walnut Creek).<br><br>She said that Lt. Sloan had covered the messages the suspect left on her cell phone. She told me that she had changed her cell phone number and saved the chip from the phone. She said she still could obtain messages from her old cell phone. The victim gave me directions to call (925) 818-1372, Star 229556 and hit pound. She said it would say, "you have seven messages" and would only be for so many days.<br><br>I told her that I would try to retrieve the messages. I told her that I wanted to retrieve the messages from my office phone. She said the date and time are marked on the messages. |

SFPD 298 (10/78)

CITY 0145
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

| DATE | TIME | ACTIVITY |
|------|------|----------|

COPY

She said the voice on the messages were "Clifford Cook". The suspect did not threaten her on the messages. I asked her to summarize the messages when the suspect called her at 02:00 and 03:00 in the morning. He called and she answered and he hung up. She turned off her phone. The next day at 08:55 the suspect called and apologized for calling so late and asked her to call him. The suspect continued to call her needing the pink ship to the Mercedes. The suspect then showed up at her home around 11:00 AM.

She did not have any restraining order at this time. She was granted an EPO in the past. She did not follow up to obtain a restraining order.

The victim gave me her new cell number ▬▬▬▬

The victim told me that she had an exit (safety) plan.

I asked her if anyone had witnessed the assault that the suspect had done, and she shook her head no.

Kimberly Abbas had not witnessed any of the assaults, only the after affects, when her mother would call her. I asked her if she had ever confronted the suspect when he hit her mother, which she said no. No one in the family had confronted the suspect about the assaults.

I asked her what she wanted to see, which she told me that she wanted to be safe and wanted safety for her children. She did not want anything from the suspect and she was filing for her own divorce.

She said the suspect was selling a Mercedes, which she will have to sign off on. Again I told her the suspect can not have any contact with her.

I told her about CROC and that I would refer her to them.

I asked her if I could call her after I reviewed Lt. Sloan's interview for more questions which she told me yes.

Kimberly Abbas showed me photos taken with her digital camera and she told me that she would print the photos for me. The victim confirmed the photos were of her. Later she printed the photos for me and gave them to me. I viewed the photos on the camera:

I saw a photo of bruises on her left arm (top and under). She told me that the suspect caused the injuries.

I saw a photo of her back right elbow.

I saw a photo of both hands together. She said the lighting was bad but she

CITY 0146
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000292



| DATE | TIME | ACTIVITY |
|------|------|----------|

had bruising on her right thumb, where I saw a little bruising.

I saw a photo of her left hand where she pointed to the bruising.

The victim said the suspect would push the cat outside and not feed him sometimes.

The hospital did not take photos of her injuries.

The victim told me that she had more photos of when the suspect destroyed the house in March 2005 at [redacted] but was not reported to the police.

The suspect would call 911 and beat her to the call.

She confirmed that on the date of the incident (07/19) she was under the influence of alcohol. She was not under the influence of alcohol on (07/20). She was taking medication for allergy (Zertec, Biaxrin). The medication has side affects with alcohol. She said her doctor knew she was under a lot of stress. She said it affects her badly.

She confirmed the injuries I viewed on the camera were caused by "Clifford Cook." This occurred on 07/19/20, at 581 Bright St, San Francisco.

I asked her if she fought back when the suspect had her which she said, "trying to release myself... I'd pull away...he just grabbed me." The suspect said to her, "you bitch...you never have any "f"en thing...you white hoe...this is my property...sleep with this doctor...hook up with someone else."

The suspect did not make any threats when he was holding her. She said when they were in St. Helena he told her, "you're not going to leave me." She said the suspect chased her with his truck in that incident.

On the incident that occurred on 07/19/20 she said the suspect had grabbed her and threw her, but did not make any threats to her. When the suspect grabbed her he was in a rage.

She said there was an incident that occurred in Arizona, but she did not want to talk about it. She did not go to the hospital but told her daughter about it, just recently.

07/19/2005 incident: When the suspect grabbed her they were at the front door. He was standing behind the door and she was standing on the threshold, when the suspect grabbed her and threw her. The door was open, and they were both inside. The suspect did not pull her in. She said she wanted to leave but the suspect grabbed her again and threw her again. She stood up and

SFPD 298 (10/76)

| DATE | TIME | ACTIVITY |
| --- | --- | --- |

wanted to get her things, which were inside the house, but she then left.

She confirmed the suspect was grabbing her to throw her out of the house. She said the suspect had lifted her off the ground.

The victim is 5-4 and 150 lbs. The suspect is 6-6, and 278 lbs.

She did not remember if the suspect had his firearm when they were drinking, but she knew it was rare that the suspect did not have his firearm.

She said when the suspect held her at the door she was screaming. She could not remember what she was screaming. She again repeated parts of what the suspect said, but added, "get out of here."

She believed her daughter Kimberly heard them in the background.

She left the house.

The next day she sought medical treatment. The X-ray technician told her she did not see any broken bones and she was then referred to a radiologist who told her she may have a possible hair line fracture on her middle finger. She did not need to go back for follow up.

Lt. Sloan told me that he had the information on the interview involving the victim on his tape interview.

I asked her if there was anything that the Lt. or I had not asked her regarding the incident, which she said no. I told her that I was only getting the pieces of the incident.

She told me that the porch light was on.

No neighbors came out to see what was going on.

She did not fall.

There was no one in the house during the incident. She did not call anyone else when she was waiting in the car for her daughter.

The suspect did not have anymore contact with the victim when she was outside waiting.  No police responded to the incident.

Everything she told me was the truth. She did not know if she would testify, if summoned to court. If she was handed a subpoena she would come to court.

She told me that she was concerned about wire tapes on her line, because she

| DATE | TIME | ACTIVITY |
|------|------|----------|

knew the suspect had attended "wire taping class." She called Pac Bell and asked for a check on her line, which they told her they could not. She told them she suspected her telephone line was tapped.

She confirmed they used to live at ████████████████ together.

The suspect drove a GMC Sierra black truck and a blue Chevy Cameo. She had not seen the vehicle pass her locations after the incident.

She said that his cousin Bobby Martin had a lot of cars the suspect could use.

The victim told me that she had researched hidden devices and is afraid.

When she was talking to her therapist on the phone she heard a loud clicking noise, which she said they both heard. She had been disconnected before.

I told her that we would talk over safety plans with her.

She told me that she was in contact with an organization in Chicago for women who were abused by police officers and wanted to be involved with a support group in the Bay Area.

Kimberly Abbas responded back with the photos, which the victim initialed and dated. Photo retained in case file. She told me that she would print the photo for me on better photo paper later.

I gave the victim's daughter Kimberly Abbas a DV referral card and circled the telephone number of CROC. I told her that I would call CROC for her. I also told her about the advocates from the DVRU and FVP units and I would contact them for her.

The victim had the medical papers, but I did not see any medical treatment information.

She asked about if the suspect's friends Leroy Lindo, Mike Lewis and his other friends knew about the investigation. She asked me about the incident that occurred yesterday.

I told her to document new incidents, recorded or not, and to make a police report on any contact that the suspect made involving her.

She asked what would happen if the suspect's friends from the police department called and I told her the Chief's order directed him not to do that.

He told her in the past that he can get any photo number, because he has a friend that is a federal judge. (Martin) but she did not know his last name. She

SFPD 298 (10/76)

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | said he told her this when she was in a safe house in Sacramento and she was afraid. The suspect has told her in the past, "Lisa do you think you can hide from me...I could find you where ever you go...Lisa I have federal judges."<br><br>I asked her to make a list of the names he had told her of the people who can help him in getting that information.<br><br>I told her that I would attempt to obtain an EPO.<br><br>Again I told her to document all new incidents, involving the suspect and victim.<br><br>After the tape interview the victim told us that she needed to tell us that she was sexually assulted by the suspect in the beginning of the marriage which occurred out of California. She said he ripped her panties in a car. She did not want to go into details of the assault and she had just told her daughter (Kimberly Abbas) about the sexual assault.<br><br>She further told us she suspected that the suspect knew or had knowledge of a murder involving a Marquee Moffat (did not know the exact spelling), which he talked about in April 5 years ago. He said that the person could not testify.<br><br>The victim & Kimberly Abbas told us that she would be available for follow up interviews (925)705-0883.<br><br>For details of the interview refer to tape. |
| 07/26/05 | 2200 | Arrived at DVRU and started my initial police report regarding the incident. Summarized the incident by reviewing the tape interview of Lt. Sloan and myself.<br><br>Contacted the victim and gave her an update that I would find the phone number for a phone trap. She told me of a possible witness named "Julie" who lives on the right side of the house at ▮▮▮▮▮ She stayed near her and she waited for her daughters.<br><br>Contacted Commissioner Frank and told her the facts of the investigation; she granted the EPO. |
| 07/27/05 | 0800 | Arrived at DVRU and worked on investigation. Later I met with Lt. Sloan and he told me he requested a "sniffer" query on possible "curiosity" computer queries made by the suspect.<br><br>On 06/07/05 at 1705 hrs and 1707 hrs a query was made on the victim's name and CII number using the suspect's "A" number and name and star number from the suspect's unit (Robbery).<br><br>Attempted to retrieve the victim's messages from her cellular telephone ▮▮▮▮ Star 229556 and hit pound. The telephone number disconnected. |

COPY

| DATE | TIME | ACTIVITY |
|------|------|----------|
| 07/27/05 | 0930 | Meeting with DC Tabak, Capt. Ashe, Capt. Keohane, Capt. Cashman and Lt. Sloan. Update on the investigation.<br><br>The facts of the case to this point were presented and discussed. Threat assessment was discussed.<br><br>I requested support during the investigation, which was granted.<br><br>I was told to update the DA's Office on the incident.<br><br>I was updated that Lt. Lindo may have some information on the incident, but he was in Atlanta and could not be contacted.<br><br>I was told the suspect had surrendered another firearm to Lt. Lindo, which Lt. Loftus had. |
| 07/27/05 | 1000 | Met with Insp. Ciardella and updated him on the investigation.<br><br>Later we responded to the DA's Office and met with ADA Aguilar-Tarchi and told her about the investigation.<br><br>While conducting meeting Lt. Sloan came in and informed us that the suspect would be taken into custody. |
| 07/27/05 | 1030 | Worked on investigation along with Insp. Ciardella (see his chronological report of investigation for details). I requested he try to contact Lt. Lindo for tape interview and to contact Urgent Care for medical reports and interview and to obtain past police reports. |
| 07/27/05 | 1030 | Worked on investigation. |
| 07/27/05 | 1230 | Met with Insp. Martinez and updated him on the investigation. (See his chronological report of investigation for details). I requested he obtain past police report and past CAD history at prior locations. |
| 07/27/05 | 1430 | I was informed by Lt. Sloan that he and Capt. Ashe would make the arrest on the suspect. |
| 07/27/05 | 1453 | I received a call from Dr. Timmothy Merrigan MD that he had received a telephone call regarding obtaining information about the treatment of the victim. I told him that I was handling the investigation and that we needed to obtain a statement from him. He told me that when the victim responded to the hospital he attempted to have law enforcement make a police report but was told because it occurred in San Francisco they could not do it and the victim would have to make the police report in San Francisco. He had contacted his staff member who called SFPD, but did not know the outcome. He told me that I could fax the medical release to (925)939-5010.<br><br>I told him that Insp. Martinez would call him for a further interview and we had a medical release which the victim signed. He told me the victim was at the hospital and would wait for Insp. Martinez's phone call. |

SFPD 296 (10/76)

CITY 0151
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000297

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | Later I spoke to Insp. Martinez and requested he obtain the medical report and to conduct an interview. |
| 07/27/05 | 1500 | I was informed by Lt. Sloan that the suspect was in custody without incident. He told me the EPO was served and requested a bail enhancement. He was told by Capt. Ashe and Lt. Sloan the charges and the allegation made. |
| | | The suspect was told the conversation was being recorded. This is a summary of the contact: |
| | | When contact was made the suspect said that there were neighbors who talked to her who saw that she was intoxicated, that she (victim) was an alcoholic...and he was being book for a no bail warrant...He asked about his career. |
| | | He further stated that no one had heard his side of the story. |
| | | The suspect said he understood the EPO. |
| | | The tape recording of the contact and arrest of the suspect is retained in the case file. |
| 07/27/05 | 1400 | Met with Judge Lam, told facts of the case and bail enhancement granted for $100,000.00. |
| | | Hand carried bail enhancement to room 101 to file and hand carried it to CJ#9 and gave it to Lt. Loftus. |
| 07/27/05 | 1430 | Continued to work on investigation. Made arrest report, faxed EPO to ID Bureau. Reviewing police reports and CAD history which were faxed to DVRU. |
| 07/27/05 | 2030 | I rec. telephone call from ADA Aguilar-Tarchi, which we talked about the investigation. |
| 07/28/05 | 0700 | Worked on investigation. |
| 07/28/05 | 0844 | I called Lt. Sloan and updated him on the investigation. He told me that he was in contact with the victim and she still wanted to proceed with the case and would testify. |
| 07/28/05 | 0900 | I called ADA Aguilar-Tarchi regarding the update and time for case to be presented. |
| 07/28/05 | 0947 | I called Insp. Martinez and left him a message to obtain final disposition on the past DV cases. |
| 07/28/05 | 1100 | Printed photos (three copies retained in case file). |
| 07/28/05 | 1110 | Report given to Lt. Sloan. |
| 07/28/05 | 1120 | Meeting with ADA Aguilar-Tarchi to review case. |
| 07/28/05 | 1300 | While reviewed the case with ADA Aguilar-Tarchi, Insp. Martinez told me that he obtained the information from Saint Helena regarding the disposition of the case. He was told that there is no disposition and there department is not filing charges. They did have a few pictures that show the small bruise on the upper arm, they could scan it and forward it if we wanted them. |

SFPD 298 (10/76)

CITY 0152
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000298

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION          Page 12 of 33

COPY

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | Retained in case file is the duplicated St. Helena report that was previously sent to SFPD.<br><br>I requested Insp. Martinez contact Lt. Lindo and conduct a tape interview with him. |
| 07/28/05 | 1407 | ADA Aguilar- Tarchi contacted victim/witness coordinator Kerri Evensong (558-2408) and left her a message regarding the FVP Advocates helping the victim.<br><br>Later met with Kerri Evensong in ADA Aguilar-Tarchi's office and requested to obtain an Advocate for her. I gave her a copy of the police reports. |
| 07/28/05 | 1436 | Rec. a call from Public Affairs Officer Orpeza, that media were asking about the incident and they did not have any information. I told her the suspect was arrested for the listed charges and the case was still under investigation with the DA's Office and the case may be discharged pending further investigation. |
| 07/28/05 | 1448 | Called Lt. Sloan and we gave him an update on the case and he gave me the victim's telephone number ▨▨▨▨▨▨▨▨▨▨which was given to Kerri Evensong. He told me that they would inform the Captains and Deputy Chief Tabak. |
| 07/28/05 | 1545 | While reviewing the case with ADA Aguilar-Tarchi, I contacted Insp. Martinez, who told me that he conducted a tape interview with Lt. Lindo. He told me that he updated his chronological report and the tape interview was on my desk.<br><br>He had obtained the fax printed out of the disposition where the victim was arrested for 647(f) PC. No charges pending at this time.<br><br>Later I obtained Insp. Martinez's updated chron, tape interview and fax from Contra Costa County DA's Office.<br><br>Retained in case file. |
| 07/28/05 | 1600 | Case reviewed and discharged 27 (further investigation needed) with a list of follow up documents and evidence for the investigation. Due date of August 17, 2005. |
| 07/28/05 | 1620 | Met with Lt. Loftus and obtained a copy of the police report & memo of booked firearms from suspect.<br><br>Booked firearms:<br><br>1. 9mm Sig Sauer Blk, S/N#U455124 (reg. to suspect)<br>2. 40mm Sig Sauer Blk, S/N#AK16382 (reg. to suspect)<br>3. 9mm Walther, Blk, S/N#017637 (unknown reg.)<br>4. 22. Rifle Remington. No S/N<br><br>Report and memo retained in case file. |
| 07/28/05 | 1630 | Rec. a telephone message from Sgt. Santos #2 from MCD, requesting that I call him about the investigation and to obtain a copy of the police report. |

SFPD 298 (10/76)

CITY 0153
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000299

SAN FRANCISCO POLICE DEPARTMENT
CHRONOLOGICAL REPORT OF INVESTIGATION

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | Later I responded to MCD and met with Sgt. Santos. I gave him a copy of the police report. He told me to obtain the copy of the SFPD MCD internal investigation and the DA's Office has to make the request. |
| 07/28/05 | 1933 | I called victim to give her an update on case. This is a summary of the conversation:

She was upset and told me that she did not want to talk to me because she felt that people were hassling her.

She told me that she did not like that three other inspectors had knowledge of the investigation. I told her that the two Inspectors were handling the parts of the investigation and that I was the key person on the investigation. I told her the other Insp. was a female officer and that she was acting as support for her and me, during the investigation. I told her that she would only be dealing with Lt. Sloan and me during the investigation. I told her I needed help in this investigation.

I told her I needed to get additional information from her, along with other things I needed to do for the investigation. I told her about the DA's office needing me to obtain more information.

During this time I had an open dialog with the victim talking about my own personal and work experience in domestic violence.

The victim asked me if I had interviewed the neighbor "Julie" and I told her that I was going to do that.

I told her that I was unable to retrieve the telephone messages. She told me that the cell phone was in the suspect's name but was used by her. She said he cancelled the account on 07/05. She told me the bill would be sent to the suspect's home. She spoke to Cingular, James Winsett (866)246-4852.

I asked about her appointment with CROC and she told me she had it at 10:00 AM, and she did not want to come to SF because she was afraid. I told her I could provide her with safe transportation to the locations.

She confirmed that she talked to Denise her advocate from Victim Witness and Emberly. She did not like Denise.

We agreed either I or the advocates would call her back about if we could arrange conducting the restraining order application in a safe location no later than 09:30 on 07/29/05.

During part of the conversation the victim felt relaxed and calm. |
| 07/29/05 | 0800 | Worked on investigation. Acting LT. Loftus told me that ADA Angular-Tarchi left a message for Lt. Sloan to tell to try to preserve and secure the 911 tapes |

SFPD 298 (10/76)

CITY 0154
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000300

COPY

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | from Walnut Creek and St. Helena. She informed ADA Rowland to review the case. |
| 07/29/05 | 0910 | Met with Kerri Evensong at victim/witness and talked about victim's needs and assistance. She told me that Advocate Caramagno was helping out clients at CROC but she would page her and update her.<br><br>She told me that she knew Advocate Caramagno had made contact with her. |
| 07/29/05 | 0930 | Called victim at home ▇▇▇▇▇▇▇ and left her a message to call me about trying to contact Advocate Caramagno. I told her I would leave her a message on her cell phone.<br><br>Called victim's cell phone (925)935-0904. Number out of service. |
| 07/29/05 | 0935 | Rec. call from Kerri Evensong about getting the victim and Advocate from RSVP at the Sheriff's Office to talk to the victim for support and referrals. The Advocate had been a victim of domestic violence by her ex-husband when he was a police officer. |
| 07/29/05 | 1146 | Rec. a telephone message from Capt. Ashe not to release any information to the media or other members, regarding the suspect's arrest. Anyone making inquiries internally of externally should refer them to Lt. Sloan or her. |
| 07/29/05 | 1207 | Rec. a telephone call from the victim. She seemed upset and told me that she wanted me to send her copies of the police reports and not to call her cell phone number anymore. I asked her if she wanted me to call her at her house and the victim said she did not want me to call her. She would call me.<br><br>I placed her on hold and taped the rest of the conversation. This is a summary of the victim's statement:<br><br>I confirmed her address and the fact that she did not want me to call and "chit chat" at night unless it was urgent. She said she didn't want to be harassed by the Department and did not want to talk a minute longer. She said she did not want to be contacted and it was not my responsibility to help her with a restraining order. She said she could find her own resources and didn't want to talk to anybody. She became belligerent with me when I told her I needed to get information for the DA. She said it was on her time schedule. She said she didn't want the red carpet rolled out for her. |
| 07/29/05 | 1200 | I updated Acting Lt. Loftus about my conversation with the victim and played the tape conversation. |
| 07/29/05 | 1225 | Called Lt. Sloan and gave him an update on the victim's conversation. I told him that I tried to call the victim on her cell phone and the number was disconnected. He told me that he talked to the victim, who told him that she was disconnecting the number because the suspect had it. |
| 07/29/05 | 1315 | Lt. Loftus gave me the Robbery case statistics of the suspect, which listed cases assigned to him. 07/02/03 to 07/25/05. Retained in case file. |
| 07/29/05 | 1349 | Rec. a call from Deputy Chief Tabak and updated him on the investigation. |
| 07/29/05 | 1401 | Rec. call from Lt. Sloan and he updated me and told me that he was going to call the victim and tell her that he would call her on Monday to attempt to set up |

CITY 0155
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000301

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | or get appointment for follow up interview and assistance in the investigation. |
| 07/29/05 | 1415 | Met with Advocate Denise Caramagno from Victim Witness. Talked about the victim's feeling and the investigation. She told me that she was in contact with the victim and that she had requested a copy of the police report. I told her that I had spoken to the victim and would send her copies of the police reports. |
| 07/29/05 | 1536 | Obtained copy of new article from Public Affairs. |
| 07/29/05 | 1540 | Made copies of police report and attached letter to it. |
| 07/29/05 | 1651 | Mailed report and letter to victim from Brannan Street post office. |
| 07/29/05 | 1720 | Rec. a telephone call from Steve Johnson who told me that the suspect's attorney was Jim Collins (922-5456). He told me that he was aware the case was 27'd and had to be reviewed no later then August 17, 2005. |
| 07/29/ 05 | 1741 | Hand carried initial and supplemental report to D.I.A.S. Unit and gave them to acting Lt. G. Williams.<br><br>Secured and Confidential request attached and granted. Secured in Lt.'s locked office file. |
| 07/29/05 | 1840 | Conducted further computer work. Retained in case file. EPO entered in system. ADW report made at ████████ on 02/27/04. |
| 07/31/05 | 1000 | Checked telephone voice message. No new information on case. |
| 07/31/05 | 2000 | Worked on investigation. |
| 08/01/05 | 0010 | Check telephone voice message. No new information on case. |
| 08/01/05 | 0800 | Work on investigation. |
| 08/01/05 | 0930 | I called Insp. Ciardella who had spoken to Lt. Lindo.<br><br>Lt. Lindo said the suspect had bought a cat for his grandchild. The victim said she wanted the suspect to get rid of the cat. He said he could not because it now belonged to his grandchild. The victim forced the cat into a box outside. Lt. Lindo said that the victim had to pay out $125.00 to get the cat out in St. Helena. I told Insp. Ciardella that I would attempt to confirm the incident with the SPCA.<br><br>Lt. Lindo told Insp. Ciardella that all of the problems had started in St. Helena when the suspect sold a piece of property that the victim's name was not on. The suspect and victim had moved to St. Helena to get the victim into a treatment program for her alcohol problem. |
| 08/01/05 | 1130 | Arrived at DVRU and met with Insp. Martinez and Insp. Ciardella and talked about the investigation. I gave them copies of the DA's further investigation list and gave them the assignments. |
| 08/01/05 | 1200 | Insp. Ciardella and I met with Lt. Lindo to obtain additional written statement, which he told us he would do regarding his knowledge of the past history involving the suspect. |
| 08/01/05 | 1230 | Attempted to contact Cingular wireless service to obtain information for search warrant. (1-800 635-6840). I received a recorded message stating they will not give out any information with out a search warrant or court order. I could fax a request to 1-888 938-4715 or mail to P.O. Box 24679 West Palm Beach, Florida. |

SFPD 298 (10/76)

CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | I could also go online to see who the carrier of record (www.npac.com.) is. |
| 08/01/05 | 1247 | This is a summary of the tape conversation: |
| | | I called the victim's daughter Kimberly Abbas. I told her that I wanted to get a tape interview with her regarding what she knew when her mother called her. She told me that it was not a good time. |
| | | She told me that she gets off work at 5:30 and that I could call her after that. |
| | | I told her that I would call try to call her today or tomorrow around 5:30 p.m., which she told me was fine. |
| | | I asked her about her mother, she told me every thing was ok and there were no new incidents involving the suspect. |
| | | She told me that she believed she still had my telephone number. |
| | | I told her if I could not call her that I would call her on Tuesday or Wednesday. |
| | | I called later and asked her if she had printed out the photos, she believed her mother did it last night. I asked her if I could get a copy of the photos mailed to me, which she said yes. I also asked her to send me all photos and documents that her mother had. |
| 08/01/05 | 1322 | Insp. Martinez gave me the police report from Officer Mitchell (Case#05-20177). Retained in case file. |
| 08/01/05 | 1400 | Responded to MCD and asked about incoming and out going telephone calls. I was told the only calls that are recorded are calls going out, not incoming calls. |
| 08/01/05 | 1740 | Received Insp. Martinez's up dated chron., retained in case file. |
| 08/01/05 | 1800 | This is a summary of the tape conversation: |
| | | Attempted to call Kimberly Abbas. Left her a message that I was trying to call her to conduct the interview. I told her that I would wait for awhile at my office. I told her to call me and to leave me a message when was a good time to call her and the location. |
| 08/01/05 | 1835 | This is a summary of the tape conversation: |
| | | Attempted to call Kimberly Abbas. Left her a message to call me. |
| 08/01/05 | 2200 | This is a summary of the tape conversation: |
| | | Checked my telephone voice message (08/01/05 at 19:09). I received a telephone call from the victim that she was calling me and would call me tomorrow. |
| 08/02/05 | 10 00 | I called Insp. Ciardella and he updated me on his conversation with Capt. Ashe. St. Helena PD will send copies of the evidence retained with them, per our request. |

CITY 0157
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000303

| DATE | TIME | ACTIVITY |
|------|------|----------|
| 8/02/05 | 1300 | I called Insp. Ciardella, who told me that Lt. Linco he would not be providing us with a written statement because he felt his conversation with the suspect was under the eyes of being a PEER counselor, but to use what information he gave us. Insp. Ciardella told me he will be updating his chron. |
| 08/02/05 | 1155 | Rec. a message from Capt. Ashe to call her. |
| 08/02/05 | 1200 | I spoke to Insp. Ciardella who told me that Capt. Ashe wanted a meeting and update on the investigation on 08/03/05 at 10:00. |
| 08/02/05 | 2200 | I checked my telephone voice messages. No messages from the victim or her daughter Kimberly Abbas. |
| 08/03/05 | 0900 | Worked on investigation:<br><br>Checked telephone voice messages. No new telephone messages. |
| 08/03/05 | 1000 | Meeting with Capt. Ashe, Insp. Martinez and Insp. Ciardella regarding the investigation. |
| 08/03/05 | 1124 | Spoke with attorney Jerry Akins who told me that he had a hearing to reinstate the suspect back to full duty. He told me that he needed copies of the record of investigation and EPO.<br><br>Conducted a computer check which revealed no new court orders issued.<br><br>Later I met with him and gave him copies of the documents.<br><br>Obtained a copy of the draft of an 832.7 PC request for the DA's Office. |
| 08/03/05 | 1248 | Called Attorney Jim Collins at 922-5454. Left him a message with Linda, for him to call me regarding the suspect. |
| 08/03/05 | 1300 | Met with ADA Rowland and gave him the draft of the 832.7 PC. letter. I gave him an update on the investigation. |
| 08/03/05 | 1310 | Met with Advocate Denise Caramagno who told me that she had called the victim and left her messages regarding further assistance. She also contacted CROC to reschedule an appointment for the victim's TRO. |
| 08/03/05 | 1344 | Rec. a telephone message from Attorney Jim Collins who stated he did not think his client would be giving a statement, but I could call him back and discuss the matter. |
| 08/03/05 | 1345 | I spoke to Attorney Jim Collins and he repeated that at this time he was advising his client not to make a statement, but if a warrant was issued to call him. |
| 08/03/05 | 1430 | Contacted Insp. Ramsey regarding a preservation letter and telephone search warrant. |
| 08/03/05 | 1546 | The victim called and left me a voice message. She told me that she had received a TRO and she was going to need help serving it. She was going to use the SFSD to serve the suspect.<br><br>She wanted to ask me some other questions and asked if I could call her back. |
| 08/03/05 | 1557 | I called the victim. This is a summary of the tape interview.<br><br>She told me that she was on the other line and asked if she could call me back |

| DATE | TIME | ACTIVITY |
|------|------|----------|

because she talking to Bay Area Legal aid.

Later the victim called me back.

She told me that she was ok. She obtained a TRO which was granted today in Contra Costa County.

She asked me where the suspect was, and I told her I believed he was at home.

She asked me for the district attorney's name handling the case, and I told her it was ADA Jim Rowland. She wondered why there was a change of attorneys, and I told her it was preplanned before her case. She said she was suspicious why the ADA was now a man.

I gave her ADA Rowland's telephone number.

As I was about to ask her a question she told me that she was not done yet, but then told me to go ahead.

I asked her about the interview with her, which she told me she was not sure if she was going to do that with me. She wanted to talk to the ADA handing the case.

She told me that the suspect had filed a dissolution on 07/28, which she had not been served with yet. She said she was going to talk to the DA about that matter.

I told her that I tried to contact her daughter Kimberly Abbas the other day for an interview and she told me that she (the victim) had all of the photos printed out and the other documents.

She told me that she would mail the documents (doctor's report, photos).

She told me that she would not be able to copy the TRO for me because it was over 100 pages. She did not have the money to make an additional copy. She told me that I could get a copy from Contra Costa County (D0305464 & D0503756).

The judge had signed the order at 01:00 PM today.

She thanked me for mailing her police reports to her, which she received on Saturday.

She confirmed that she had my mailing address and would send me the Doctor's & x-ray reports, including all the other documents she had.

SFPD 298 (10/76)

CITY 0159
CONFIDENTIAL PEACE OFFICER
PERSONNEL RECORDS

000305

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | I asked her if I had a problem getting the TRO if I could call her back, which she said yes. |
| | | I told her the case needed to be reviewed on 08/17/05, which she noted. |
| | | I asked her again about her daughter, and she told me they had some concern regarding last Saturday night when they heard a loud car engine that drove by at 10:30. She became suspicious and looked outside and the car was gone. The same incident happened last night (09:30). She told me that she was worried. |
| | | She told me that she did not know if she was going to be there very long, and she declined to tell me where she was going. She said the DA would know how to get a hold of her. |
| | | I asked her if she could have her daughter call me back and tell me if she was going to give me an interview or not. She told me she would know more when she talked to the DA. |
| | | I explained the warrant process. |
| | | I confirmed that the suspect had a criminal attorney. |
| | | She told me that she had contacted the Attorney General's Office and got the information regarding the charges. |
| | | I told her that she could call me and I would continue going forward with the investigation. |
| | | I told her if she knew of other people I should be talking to, to leave me the names of the additional witnesses. |
| | | She believed the case was wrapped up and she would send me the documents. |
| | | I told her that I would call the DA handling the investigation. |
| | | For details of the interview review tape. ✗ |
| 08/03/05 | 1641 | I spoke to ADA Rowland and told him that the victim would be calling him regarding the investigation. |
| 08/04/05 | 1000 | Work on investigation. Talked to Insp. Ciardella and Martinez for further follow up. Talked to Capt. Ashe to update and give further follow-up on case. The case will try to be reviewed by 08/9 or 08/10. I told her I was obtaining medical |

COPY

SFPD 298 (10/76)

CITY 0160
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000306

| DATE | TIME | ACTIVITY |
|------|------|----------|
|      |      | reports and TRO delectations as quickly as possible. |
|      |      | Talked to ADA Rowland, I received update and he told me, that he had a long talk with the victim and she still wanted to proceed with the investigation. |
|      |      | Draft of preservation letter/search warrant, reviewed by ADA Rowland. I was told he needed more information on the 273.5 PC charge, and to obtain tolls. |
|      |      | Evidence to be obtained: |
|      |      | St. Helena documents |
|      |      | TRO being sent. |
|      |      | Tolls and voice messages from cell phone company. |
| 08/05/05 | 0900 | Capt. Ashe took and reviewed the case file. After she reviewed the case we talked about further follow-up needed on the case. |
|          |      | Obtained prior police & chronological investigation reports from suspect's home involving a possible family member. |
| 08/05/05 | 1600 | Had ADA Rowland review Search Warrant for tolls and records on (925)818-1372. He told me that he would have to review it later. He told me that he had received a telephone call from the victim who wanted to send him some evidence regarding the Investigation. He told me that he was going to call the victim back and tell her that he would give that evidence to me and that I would examine it and book or retain the property. He had not received any new information at this time. |
| 08/05/05 | 1722 | Conducted further computer work up on suspect's location, neighbor's address and CAD history. No prior calls for service. |
|          |      | Did Q-ALL on victim's other names. No record found. |
| 08/05/05 | 2100 | Wrote and faxed preservation letter to Cingular Wireless Service. |
| 08/05/05 | 2133 | Conducted computer work-up on Cecile Burrell. No information at this time. DL system down. |
| 08/08/05 | 1200 | Rec. CD of 911 from Contra Costa County Sheriff's Dispatch Center (Certified copy of original master). Retained in case file. |
| 08/08/05 | 1629 | Rec. faxed letter from Cingular Wireless (#119694), regarding my request. This is a summary of the letter: |
|          |      | The number (925)818-1372 was a canceled number. They were unable to obtain any voicemail messages on canceled numbers. They did not have any historical text messages/photo images available on the account. |
|          |      | They had the subscriber and tolls records, which did not need to be preserved. |

SFPD 298 (10/76)

CITY 0161
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000307

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION    Page 21 of 33

| DATE | TIME | ACTIVITY |
|------|------|----------|

COPY

Letter retained in case file.

**08/08/05    1820**    Arrived in the suspect's neighborhood ████████████████
Canvassed the area with Insp. Pierucci.

We saw suspect Cook standing in front of ███████ We exchanged greetings and told him that we were canvassing the area.

The following locations and people were interviewed:

1. ██████████. No answer. Left business card on gate. (18:26hrs)

2. ██████████ No answer. Left business card on gate. (1830 hrs)

3. Grey and Blue house with no numbers attached to house. No answer. Left business card on gate. (1833 hrs).

4. ██████████. We spoke to Alex Lo (OM, 05/15/80). I asked him if he had seen or heard anything on or about July, 19 to 20, 2005. He told us, "I did not hear anything...my bedroom in the back of the house. (north side)". I asked if he had seen his neighbors in an altercation, which he told me no. I asked him if he knew his neighbor "Julie", which he told me no. I gave him my business card and told him to call me if he had any further information. (1835 hrs.)

5. ██████████ St. No answer. Left business card on gate. (1842 hrs).

6. ██████████ St. No answer. Left business card on gate. (1843 hrs).

7. ██████████ St. gated and locked with a chain. No answer. Left business card on gate. (1845 hrs).

8. ██████████. We spoke to Johnny Chan (OM, 07/25/68, Tele: 515-3329). I asked him if he had seen or heard anything on or about July, 19 to 20, 2005, which he told us he did not hear anything. He did not hear a woman screaming or fighting. He knew the suspect was a police officer. He never had any problems with him, but had problems with his sister. He had filed a police report (case #040242892). He said it started when his driveway was blocked. She kept ignoring him when he told her not to park in his driveway. He had her car towed. After that she had threatened his wife. He had two of his family's vehicles broken into, which he suspected was her. He made the police report last year. Again he said he did not have any problems with the suspect or victim. Since the suspect's family moved out there have been no problems. He told me that his neighbor "Julianne" (to the left of his house) was out of town for a week. He was watching her house. I gave him my business card to give to her and ask her to call me, which he told me he would do. He

SFPD 298 (10/76) *

CITY 0162
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS
000308

| DATE | TIME | ACTIVITY |
|------|------|----------|

told me that "Josie" (_____ St) was a person to talk to because she works late at night and returns home about (11:30 PM to 12:00 PM). I told him I left them a business card, but if he sees them to tell them to call me. He told us that "Julia" (_____ St) was a court reporter, but he did not see her car. (1846 hrs).

9 _____ St. We spoke to Robert Dotson (BM 11/11/37) & Shirley Dotson, his wife). I asked him if he had seen or heard anything on or about July, 19 to 20, 2005. He told us that he did not hear anything and he worked at night. He said his wife was in bed at that time. When we asked him about the suspect and victim, he said, "no problems with the people in 581 ever." Shirley said, "No I did not hear a woman screaming." I gave him my business card and told him to call me if he had any information. (1900 hrs).

10 _____ St. No answer. Left business card on gate. (1907 hrs).

1 _____ St. Suspect Cook was standing in front of Roy Cherry (BM 07/17/46) home. Suspect Cook told Insp. Pierucci that he was arrested for the DV incident. I asked Mr. Cherry if he had seen or heard anything on or about July, 19 to 20, 2005, which he said he did not hear anything...that he never had any trouble with the suspect or victim...they got along with them and he was telling the truth. He said he was invited to the suspect and victim's wedding but he could not go. (1910 hrs).

While we were conducting our interview we saw that Suspect Cook had a bandage on his right pinky finger.

Took digital photos of the neighborhood and of the suspect's home. (1846 hrs). Retained in case file.

| DATE | TIME | ACTIVITY |
|------|------|----------|
| 08/08/05 | 2056 | I rec. a telephone call from Robert McCullough (WM, 42 years old). I asked him if he had seen or heard anything on or about July, 19 to 20, 2005, which he said he did not hear or see anything. He did not know of any problems. I spoke to his wife Sandra Albert (OF 49 years old) and asked her if she had seen or heard anything on or about July, 19 to 20, 2005, which she said she did not hear or see anything. She had no problems with the suspect or victim. |
| 08/09/05 | 1131 | Rec. tele messages from William Hawkins who said he received my business card and that he would call me back. |
| 08/09/05 | 1300 | Rec. TRO (D03-05464) from Contra Costa County. (Superior Court- Martinez File Unit PO Box 911, Martinez, CA, 94553 |
| 08/09/05 | 1445 | Rec. a telephone message from Jeff Traxler that he received my business card. He told me that he lived on Bright St. and I could call him back (415-235-0704). |
| 08/09/05 | 1500 | Updated ADA Rowland. |
| 08/09/05 | 1800 | Reviewed TRO D03-05464. |

SFPD 296 (10/76)

CITY 0163
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000309

| DATE | TIME | ACTIVITY |
|------|------|----------|
|      |      | Certified copies of request for order & TRO and notice of hearing documents (hearing date 08/25/05 at 08:30 AM at Superior Court-Martinez 751 Pine St, Martinez, CA:<br><br>1. Declaration of the victim.<br>2. The victim and suspect's marriage certificate.<br>3. Saint Helena EPO and police report case #03-0757-51.<br>4. Photographs of property damage caused by the suspect on 03/05.<br>5. Medical report related to the victim's injuries, which occurred on 07/19/05.<br>6. Photographs of victim's injuries, which occurred on 07/19/05.<br>EPO and SFPD police report 050835556. |
| 08/09/05 | 2130 | Conducted computer work on name listed in ST. Helena police report (C. Burrell) .Results retained in case file. No criminal history found on that subject. |
| 08/10/05 | 1153 | I received a call from William Hawkins (BM, 09/17/23), who told me that he lived at ▒▒▒▒▒ with his wife. I asked him if he had seen or heard anything on or about July, 19 to 20, 2005, which he said no he did not see or hear anything. He knew the suspect by his name and said he had never seen them in any altercation. He told me that he would ask his wife if she saw or heard anything and if she did he would call me back. |
| 08/10/05 | 1250 | Updated Capt. Ashe on the investigation. |
| 08/10/05 | 1450 | I spoke with ADA Rowland and told him that I was ready for him to review the case. He told me that he had not had anymore contact with victim, at this time. |
| 08/10/05 | 1530 | Capt. Ashe came to the DVRU office and had her review parts of the TRO. After she reviewed it she gave it back to me. |
| 08/10/05 | 1652 | I called Jeff Traxler and left him a message regarding my investigation. |
| 08/10/05 | 1709 | Jeff Traxler called (05/05/64) who told me that he lived on 571 Bright St. I asked him if he had seen or heard anything on or about July 19 to 20, 2005, which he told me that he did not see or hear anything. He told me that he is up about that time because he watches TV in the front room, which faces the street. He told me that the street was busy at night, because of the car traffic.<br><br>He told me that he knew the suspect and would wave to him when he saw him. He had never seen any altercation involving the suspect. He really did not know the suspect's wife. He had never had a problem with the suspect.<br><br>He added that before the suspect moved into the house they had a lot of activity, but it had stopped when the suspect moved in.<br><br>I told him to ask other people in his house if they knew or had any information to call me. |
| 08/10/05 | 1730 | Rec. a box from St. Helena addressed to Insp. Ciardella, which contained 911 tapes from the incident in St. Helena, three photos of victim and video tape with the victim. (Case# 03-0757-51). All retained in case file. |
| 08/10/05 | 1800 | Worked on case. Made copy of case file along with photos and tape interviews. |

CITY 0164
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000310

Case 3:07-cv-02589-CRB   Document 50   Filed 01/18/2008   Page 30 of 48

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | I for ADA to review. |
| 08/11/05 | 0800 | Worked on case to update chronological and reviewed case file. |
| 08/11/05 | 0935 | I called Martinez Police Department (925)372-3440 and spoke to dispatcher #997. I requested a Q-ALL on the victim's names (Lisa Cook, Lisa Harvey, Lisa Abbas and Lisa Rhodes) & Cecile Burrell which the victim mentions in the St. Helena police report.<br><br>She told me she had no police reports with the information I provided. |
| 08/11/05 | 0940 | I called Antioch Police Department (925)778-2441 and asked for a check for calls for service at 2009 Live Oak Court, Antioch. I was told to fax a request for past calls for service and any other information I needed to (925)372-3440 to "Custodian of records." They told me that they did have calls for service to that address, but would not elaborate without a faxed request. |
| 08/11/05 | 1200 | I received photos from Walnut Creek PD of photos taken from the incident on 04/13/05 (CASE#0-5-8973) seven photos of victim and six photos of the suspect. Two photos of items (retained in case file). |
| 08/11/05 | 1250 | Faxed a request to obtain all 911 calls from ▓▓▓▓▓▓▓ to custodian of records.<br><br>Later I left a message for Lisa, Custodian of Records, and requested only the calls for service going back 3 years. |
| 08/11/05 | 1310 | I spoke with Insp. Camillari #1533 regarding gun checks on the booked firearms. He told me that he still did not have the information at this time. |
| 08/11/05 | 1400 | Up-dated ADA Rowland who told me that he reviewed the S/W. I told him that because of the information I received from Cingular Wireless service I could get the search warrant signed later, since the tolls and subscriber information would be retained by Cingular. |
| 08/12/05 | 1200 | Printed photos and made copies for DA's files. |
| 08/12/05 | 1425 | I spoke to ADA Rowland and told him that the case was ready to be reviewed. He told me that he would not be able to start reviewing the case until Monday 08/15/05.<br><br>I told him that most of the items and follow-up were completed with the exception of the interview with the victim and her daughter. I told him at this point I had not received any documents of evidence from the victim.<br><br>He told me that he had not had any contact with the victim or received any documents from her.<br><br>I told him to review the entire case file and tapes before we meet on 08/17/05. |
| 08/14/05 | 1500 | No new information or messages regarding the investigation. |
| 08/15/05 | 0830 | I spoke to Lt. Sloan and up dated him on the investigation. He told me he had not received any new information from the victim regarding the investigation. He told me that he wanted to review the case file. I told him the DA's copy was in my cabinet to be reviewed. He told me that he would review the case file and give it to ADA Rowland. |

SFPO 298 (10/75) *

CITY 0165
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000311

SAN FRANCISCO POLICE DEPARTMENT
CHRONOLOGICAL REPORT OF INVESTIGATION    Page 25 of 33

| DATE | TIME | ACTIVITY |
|------|------|----------|
| 08/15/05 | 1130 | I spoke to ADA Rowland regarding the investigation. He told me that he spoke to the victim and she will be sending all further documents involving the investigation. He told me the victim was going to contact me and be more cooperative with the investigation. |
| 08/15/05 | 1326 | I spoke to Lt. Sloan regarding the case. He told me he gave the case file to ADA Rowland on 08/15/05 at 11:07 hrs. |
| 08/15/05 | 1000 | I spoke with Lt. Sloan regarding the case. |
| 08/16/05 | 1100 | Reviewed incoming telephone calls. Received a telephone message from the victim that she wanted to talk to me (tele# 925-705-0883) (date 08/15/05, 10:45). Tape retained in case file. |
| 08/17/05 | 1200 | Reviewed incoming telephone calls. Received a telephone message from the victim asking if I could call her back at my earliest convenience and to call her at (tele# 925-915-0904 ) (date 08/17/05, 09:17). Tape retained in case file.<br><br>Received ATF firearm trace search for suspect's hand gun (Walther PPK/S S/N 017637). No new information. Retained in case file. |
| 08/17/05 | 1244 | I called the victim. This is a summary of the interview.<br><br>She told that she spoke to Lt. Sloan who told her that this was my first day back to work.<br><br>She told me that she had been talking to the DA.  She believed that he had all the information and she still needed to give the photos on the case. She told me that she was going to come in today, but could not.<br><br>She told me that she would be in tomorrow. I asked her if she could mail them to me, which she told me that she was coming in to meet with the DA. I asked her what time, which she said, "I have no idea."<br><br>She started to tell me something about the suspect and then told me she would tell the DA.<br><br>She told me that she did not have anymore question for me. I then told her that I needed to talk and get an interview with her daughter. She told me that her daughter was out of town and would be back tomorrow. She told me that I should try to reach her by myself, because she was an adult. I asked her if there was anyone else I should talk to, which she said no.<br><br>She told me her therapist would be at the hearing. She did not want to drag a lot of people through this and she wanted it to be over.<br><br>She was "jilted" by learning the suspect had other children from other relationships.<br><br>I told her that I was reviewing the TRO and saw that another TRO was issued and if she had a copy of that TRO. She asked me if it was in the stuff from St. |

SFPD 298 (10/76) *

CITY 0166
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000312

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | Helena, which I told her no. She told that the information should be there. |
| | | I told her it was the TRO that was filed in Contra Costa County. At this point the victim got upset with me and said, "You know what every time I talk to you…I feel like I'm up against a brick wall…I feel like there is a resentment…I don't appreciate it." |
| | | I told her that I was just trying to go over the documents. "She told me, Don't talk to me…you remind me of Clifford Cook…the same tactic, that he uses when he's interrogating people…I'm not taking it from you or any police officer every again…Lt. Sloan does not talk to me in this manner and neither does the DA…just you…you inspectors." |
| | | I said, "O.K.. Lisa I'm just…" and then the victim said, "don't talk like that …you will respect me…do you understand…I will not take this from anyone ever." |
| | | I asked her if she would be giving me a further interview, which she told me she would not and I had her interview. She told me that she would be giving her interview at the hearing. |
| | | She told me, "All you ever do is irate me…I try to get passed this with you but I just don't like you." |
| | | I told her I was sorry she felt that way, but I was handling the case and I needed to ask her questions. |
| | | She told me if she had to go to the press she would. I told her, "do what you have to do." She then told me that I was disrespectful. I told her sorry and then she hung up on me. |
| | | After my telephone conversation with the victim I informed Lt. Sloan what had occurred. |
| | | Later Lt. Sloan told me that he received a telephone call from the victim and for him to call her. |
| | | For detail of the interview refer to tape. |
| 12/17/05 | 1300 | Lt. Sloan told me that he was going to call the victim. |
| | | Lt. Sloan called the victim. This is a summary of his conversation with the victim. |
| | | She told him that she was not able to communicate with Insp. Flores. She told him that she needed help with this and she did not know who to turn to. |
| | | She asked him what impact this would have on Clifford's case if she went to |

CITY 0167
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000313

| DATE | TIME | ACTIVITY |
|------|------|----------|

the media for support. She said she would not jeopardize his case and she would not be broken down by Insp. Flores. She knew that he was a friend of Clifford's and she was not going through it.

She told him that she will not take the way that I talk to her and that she did not need this and needed to get through it with support.

She told him that she did not trust police officers.

Lt. Sloan told her that it was her choice to go to the media and he did not know what impact it would have on the case.

He told her that she may lose her privacy and they would search her past.

She told him that no one had the right to rape her or physically hurt her. She told him there was evidence and facts.

She did not want to learn anymore about his past.

Again he told her it was her choice to go to the media or not to.

Lt. Sloan asked her for more information regarding Insp. Flores, which she said, she did not like him "the way he talked to her...his tone...and she felt threatened by this person."

She said the last conversation she had with Insp. Flores he told her that the suspect got an attorney. She felt this was a threat and that he wanted her to drop the case.

She said that none of us care about her. She was the foe to the people in the police department. She felt that there was a group of inspectors to protect each other and they all stick together. She asked how she can move through this without the support and communication with Insp. Flores.

She said she would not work with Insp. Flores and what could Lt. Sloan do about it or if she should go to internal affairs.

She said she did not want to drop the case or want it jeopardized. He told her that he wanted to continue with the case.

He told her that he would have Insp. Flores continue the investigation and that he would not have to interview her. She said that she was trying to cooperate and she will give us everything we need for the case.

She said she felt that she was being badgered. She said she shared what she just learned on Monday about the suspect having other children, and that Insp.

SFPD 296 (10/76)

CITY 0168
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000314

| DATE | TIME | ACTIVITY |
|------|------|----------|

Flores just said "uh." She said, "he could of said...what would have been nice...that's unfortunate...it really did not have anything to do with the case."

She continued to talk about how she had feelings for the suspect and she was finding out things about him.

Lt. Sloan asked her if she felt comfortable with the DA handling the case. She said that she is referred back to Insp. Flores by the DA.

Lt. Sloan told her that he would direct Insp. Flores to continue with the investigation and if he needed to contact her he would have him go through him or the DA's office.

She told him that she did not trust Insp. Flores.

She continued to say that Insp. Flores had personal connections with the suspect.

She told Lt. Sloan that he was more professional and compassionate and Insp. Flores had none of that.

She was planning to come to the Hall of Justice today, but was too busy and had to pay some bills.

She had not got a call back from Terri Evensong and she was told by the DA to let her know that she had been in contact with him.

Lt. Sloan gave her Terri Evensong's direct number 553-2404. She said she would give her another call.

The victim wanted to know if she could get the records from SF for her civil case, which he told her that she could get the information.

She asked if an advocate could go with her on the August 25, 2005, because she did not have anyone going with her. She was doing the case pro per, at Dept 7, at 08:30 AM in Martinez. He told he would look into it.

He asked her if she mailed all the stuff she was asked to mail, which said no because she was meeting with the DA. She was going to give it to him and he could past it over to Insp. Flores.

The victim asked what would happen after the case is reviewed. He told her the DA will give the recommended charges or may ask for more investigation to be done by Insp. Flores.

End time 13:35 hrs. Refer to tape for details of the interview.

SFPD 298 (10/76)

CITY 0169
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000315

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION

Page 29 of 33

COPY

| DATE | TIME | ACTIVITY |
|------|------|----------|
| 08/17/05 | 1400 | I asked ADA Rowland to talk to me about the case. |
| 08/17/05 | 1600 | I paged ADA Rowland regarding the case. |
| 08/17/05 | 1630 | Met with M.I.S. Insp. L. Suslow #886 regarding my request. He told me what information he would be able to obtain and would summit it to me when he was finished. |
| 08/17/05 | 2130 | Rec. police report and CAD history from Contra Coast County Sheriff's Department (CASE#05-20177). Retained in case file. |
| 08/17/05 | 2130 | Worked on case. |
| 08/18/05 | 1230 | Lt. Sloan told me that the victim called him and told him that the suspect was requesting the medical report from St. Helena. The contact person is named Nancy #707-963-6481. |
| 08/18/05 | 1230 | Worked on case. |
| 08/18/05 | 2030 | Work on case file. |
| 08/18/05 | 2047 | I attempted to call ADA Rowland regarding if he had met with the victim or received any documents from her. |
| 08/19/05 | 1000 | Worked on the investigation.<br><br>I requested Insp. Ciardella to contact Martinez PD, Walnut Creek PD, Contra Costa County Sheriff's Department, and Antioch Police Department and conduct a name search for the following names:<br><br>1. Lisa Theresa Cook, White Female, DOB:02/11/56, CDL▓▓▓▓<br>   Lisa Theresa Harvey ("            ")<br>   Lisa Theresa Abbas ("            ")<br>   Lisa Theresa Rhodes ("            ")<br><br>2. Fawn Nichole Abbas, White Female, DOB: 10/30/84, CDL▓▓▓▓▓▓▓<br><br>3. Kimberly Marie Abbas, White Female, DOB: 04/15/78, CDL#▓▓▓▓<br><br>4. Cecile Burrell<br><br>He told me that they would fax us the results of the search.<br><br>Later I contacted Contra Costa County Family Court and spoke to Johanna, who told me that the related court number on the victim's TRO was filed by the suspect against the victim. I faxed the request to them. |
| 08/19/05 | 1133 | Rec. the fax results from Walnut Creek Police Department. Hit made on victim's name for traffic violation & same prior police report 2005-8973. Retained in case file. |
| 08/19/05 | 1220 | Meeting with ADA Rowland, Capt. Ashe and Lt. Sloan at the DVRU Office (Lt's office). I updated them on the investigation. I was told by ADA Rowland that he had not received any new information from the victim.<br><br>We agreed to assign a DA investigator to the investigation.<br>He told us that he still needed time to review the case and would update us on |

SFPD 298 (10/76) '

CITY 0170
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000316

SAN FRANCISCO POLICE DEPARTMENT

## CHRONOLOGICAL REPORT OF INVESTIGATION  Page 30 of 33

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | 08/26/05. |
| | | I told them I would continue the investigation and follow-up on the investigation. |
| 08/19/05 | 1932 | I called witness Kimberly Abbas at ▇▇▇▇▇▇▇ and left her a message to call me and tell me if she would give me a statement or not. She could leave me a message about what she witnessed or was told.<br><br>The message was recorded and retained in case file. |
| 08/20/05 | 1445 | Responded to House of Prime Rib (1906 Van Ness Ave). Closed at this time but open at 1630 hrs. |
| 08/21/05 | 0800 | Worked on the investigation. No call from witness Kimberly Abbas or any new information. |
| 08/22/05 | 0900 | Worked on the investigation. No call from witness Kimberly Abbas or any new information. |
| 08/22/05 | 1150 | Responded to Contra Costa County Family Court (1111 Ward St. Martinez). I spoke to the county clerk. I told her that I had faxed a request to obtain all documents for the following names:<br><br>1. Lisa Theresa Cook, White Female, DOB:02/11/56, CDL#▇▇▇▇▇<br>   Lisa Theresa Harvey ("<br>   Lisa Theresa Abbas  ("                  ")<br>   Lisa Theresa Rhodes ("               ")<br><br>2. Fawn Nichole Abbas, White Female, DOB: 10/30/84, CDL ▇▇▇▇▇<br><br>3. Kimberly Marie Abbas, White Female, DOB: 04/15/78, CDL#▇▇▇▇▇<br><br>4. Cecile Burrell<br><br>She told me to come back at 1330 hrs. |
| 08/22/05 | 1340 | Responded to Martinez PD and spoke to Linda of Records. I gave her a request for a name search for the following names:<br><br>5. Lisa Theresa Cook, White Female, DOB:02/11/56, CDL#▇▇▇▇▇<br>   Lisa Theresa Harvey ("<br>   Lisa Theresa Abbas  ("                  ")<br>   Lisa Theresa Rhodes ("              ")<br><br>6. Fawn Nichole Abbas, White Female, DOB: 10/30/84, CDL#▇▇▇▇▇<br><br>7. Kimberly Marie Abbas, White Female, DOB: 04/15/78, CDL#▇▇▇▇▇<br><br>8. Cecile Burrell<br><br>She told me that she would fax me the results of the search. |

SFPO 298 (10/76)

CITY 0171
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS
000317

# SAN FRANCISCO POLICE DEPARTMENT
## CHRONOLOGICAL REPORT OF INVESTIGATION    Page 31 of 33

| DATE | TIME | ACTIVITY |
|---|---|---|
| 08/22/05 | 1400 | Responded to Contra Costa County Family Court. I spoke to the county clerk and she told me that the request was faxed to my office. She gave me the copies of the following documents:<br><br>1. Petition: Clifford Cook, Respondent: Lisa Cook, Court # D05-03756, filed on 07/28/05, assigned to Dept. 7 (Dissolution of marriage).<br>2. Petition: Lisa Cook, Respondent: Clifford Cook, Court # D03-05464, filed on 10/31/03, assigned to Dept 8. (Dissolution of marriage).<br>3. TRO protected person: Clifford Cook, person to be restrained Cecile Burrell, Court # D02-04574, filed on 09/11/02.<br><br>Retained in case file.<br><br>Later I obtained for my office the same faxed documents also retained in case file. |
| 08/22/05 | 1600 | Responded to the DVRU office and obtained the fax response from Contra Costa County Sheriff's. All retained in case file under past police reports. Noted that Mental Ill commitment report not faxed.<br><br>Met with ADA Rowland and gave him additional discovery.<br><br>Family court documents<br>Other police reports.<br><br>I up dated him on my investigation and he told me that he did not receive any new information from the victim. |
| 08/22/05 | 1620 | I contacted Vicky Wood from Contra Costa County Sheriff's and told her that I have received all the reports except the 5150 W&I report. She told me to fax her request and she would fax the report to me.<br><br>Later I received a copy of the police report 05-14675. Copy retained in case file. |
| 08/22/05 | 1645 | Conducted computer work up on 1906 Van Ness Ave. for calls for service and police reports. No calls to this location, during the day of the incident.<br><br>Results retained in case file. |
| 08/22/05 | 1735 | I responded to the House of Prime Rib (1906 Van Ness Ave). I spoke to the General Manager. I told him that I was conducting an investigation and needed to know if the suspect or victim had dinner at the restaurant. He told me that he would check his computerized reservation data base, which confirmed that "Clifford Cook" had a reservation for 07/19/05 at 08:00 PM for a party of two. The server was "Inessa."<br><br>I requested to speak with the server and to obtain a copy of the dinner check. He told me that I needed to talk to the owner.<br>I spoke to Josef Betz (Proprietor of House of Prime Rib). He told me that he did |

SFPD 298 (10/76)

CITY 0172
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS

000318

Case 3:07-cv-02373-CRB Document 91 Filed 03/18/2008 Page 38 of 48

| DATE | TIME | ACTIVITY |
|------|------|----------|
| | | not hear about unusual incidents in the restaurant. He would contact the accountant and get me the information about the dinner check. I showed him a photo of the victim and suspect. He called server "Inessa Agarsey" (WF, 05/01/70).<br><br>I met with Agarsey in Betz's office. I told her I was conducting an investigation and if she remembered any unusual incidents in the restaurant around July 19, 2005 at 08:00PM. She told me that she did not have or know of any problems on or about that day. She could not remember the last unusual incident in the restaurant. A photo of the victim and suspect were shown to her, which she told me that she did not remember them or have any problem with them.<br><br>I gave Betz my business card and told him to call me or send me the information. |
| 08/23/05 | 1400 | Worked on the investigation. Received the following documents:<br><br>1. One sheet containing the Polaroid of victim from Contra Costa County Sheriff's 03-30489.<br><br>2. 911 CAD (CD) for cad history S052012592.<br><br>Retained in case file. Made copies for discovery. |
| 08/24/05 | 1130 | Worked on investigation. |
| 08/24/05 | 1135 | I spoke to ADA Rowland who told me that DA Investigator Erin Gallagher is assigned the investigation and that he was in contact with the victim. He told me the victim will provide further documents to me or the investigator.<br><br>He told me DAI Gallagher had the case file. He believed that she would need an additional two to three weeks to conduct the investigation. |
| 08/24/05 | 1516 | Rec. fax response from Antioch Police department. They had no contacts for the listed individuals per our request.<br><br>Retained in case file. |
| 08/24/05 | 1815 | Unable to play 911 CD. |
| 08/24/05 | 1820 | Conducted computer check on additional witnesses. |
| 08/24/05 | 2000 | Worked on investigation. |
| 08/25/05 | 1200 | I spoke to Lt. Sloan and ADA Rowland, who told me that the case was still being reviewed and it would still take about two to three weeks for the case to be concluded.<br><br>I made and gave ADA Rowland the four audio tapes and the additional information from the other agency.<br><br>I gave him the CD of the 911 call and the video tape from St. Helena PD to copy and give back to me. |

CITY 0173
CONFIDENTIAL POLICE OFFICER
PERSONNEL RECORDS
000319

SAN. FRANCISCO POLICE DEPAR... NT
CHRONOLOGICAL REPORT OF INVESTIGATION    Page 33 of 33

| DATE | TIME | ACTIVITY |
|---|---|---|
| | | I told him that I would be on vacation but the case file would be with Lt. Sloan. |
| | | I was informed that the victim and suspect had a hearing in family court today. |
| 08/26/05 | 1200 | Gave DAI Gallagher up dated chronological. |
| 09/06/05 | 0930 | Rec. a message from Insp. Suslow regarding the "Snifter". |
| 09/13/05 | 1035 | Talked to DAI Gallagher, which she told me that she had talked to the victim, bus she still did not go into details about the incident. She told me the victim did not want to proceed with the case. |
| | | DAI Gallagher obtained a statement from witness neighbor. She confirmed she received my business card. She told me that she would provide me with her reports. |
| | | Suspect made a police report against the victim. Obtain a copy of police report 051-088-857 (retained in case file). |
| 09/14/05 | 1200 | Spoke to ADA Rowland case still under investigation. Up dated Lt. Sloan. ADA Rowland told me that case would have a final disposition by 09/30/05. |
| 09/16/05 | 1700 | Rec. up date from DAI Gallagher. She told me that victim did not want to proceed with the case. |
| 09/20/05 | 1200 | Contacted DAI Gallagher regarding case. She told me that she would obtain and have Chief Asst. DA Russ Giuntini sign the warrant declination memo. He was updated on the case and knew the facts. |
| | | Later obtained signed warrant declination memo from DAI Gallagher. Contacted and up dated chain of command. |
| | | Requested DAI Gallagher's investigation reports. |
| | | Obtained computer print out from Insp. Suslow (retained in case file). |
| 10/20/05 | 1200 | Rec. DAI Gallagher's Chronological report of investigation & field notes of the investigation. She returned the DA's Office working copy of the case. |
| 10/21/05 | 1900 | Worked on investigation. Case closed. |
| | | |
| | | |

# EXHIBIT "2"

**INCIDENT REPORT**

Report Type: Initial

050835556

| Incident Number | Occurrence from Date/Time | Occurrence to Date/Time | Reported Date/Time | CAD Number |
|---|---|---|---|---|
| 050-835-556 | 7/19/2005 | 7/20/200 | 7/26/200  15.10 | 052072866 |

Type of Incident

Spouse, Cohabitee, Parent of Child in Common, Inflict Injury - 15040

| Location of Occurrence | At Intersection with/Premise type |
|---|---|
| | House |

| Confidential Report? ✓ | Arrest Made? | Suspect Known? ✓ | Suspect Unknown? | Non-Suspect Incident? | Domestic Violence? ✓ | (Type of Weapon Used) Hands | Reporting Unit SW14 |
|---|---|---|---|---|---|---|---|

Location Sent

| How Cleared? | Reported to Bureau | Name | Star | Date | Time | Elder Victim | Gang Related? | Juvenile Subject? | Prejudice Based? |
|---|---|---|---|---|---|---|---|---|---|

**D E C L A R A T I O N**

I declare under penalty of perjury, this report of ___ pages is true and correct, based on my personal knowledge, or is based on information and belief following an investigation of the events and parties involved.

PROP 115 CERTIFIED    5 YEAR/POST    Signature:

| Reporting Officer FLORES | Star EB | Station Domestic Violence | Watch 1200-2200 | Date |
|---|---|---|---|---|
| Reviewing Officer LT. DON SLOAN #1385 | STAR | Station | Watch | Date JUL 27 2005 |
| OIC LT. DON SLOAN #1385 | STAR | Station Domestic Violence | Watch | Date JUL 27 2005 |

| Related Case | Related Case | Re-Assigned to Copies to    5W200 | Assigned to 5W200 | Assigned by Add'l Copies |
|---|---|---|---|---|

EXHIBIT 3  12-4-07  C. Cook

| Code V 1 | Name (Last, First Middle) COOK, LISA | | Alias |
|---|---|---|---|
| Day Phone | Type | Home Address | City |
| Night Phone | Type | Work Address | City | State | Zip Code |

| DOB / 2/11/195 | Age 49 | DOB Unk. | or age between: and | Race W | Sex F | Height | Weight | Hair Color | Eye Color | ID Type | Jurisd. | ID No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Confidential Person ✓ | Violent Crime Notification | 293 PC Notification | Star | Follow-up Form YES ✓ | Statement YES ✓ | Relationship to Subject Wife |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment URGENT CARE | Other Information/If Interpreter Needed Specify Language |
|---|---|---|

| Code S 1 | Name (Last, First Middle) COOK, CLIFFORD L | | AlIAS |
|---|---|---|---|
| Day Phone | Type | Home Address | City | State | Zip Code |
| Night Phone | Type | Work Address 850 BRYANT ST | City SAN FRANCISCO | State CA | Zip Code |

| DOB Unknown | Date of Birth 8/12/1954 | Age 50 | or age between and | Race B | Sex M | Height 6'6 | Weight 245 | Hair Color BLK | Eye Color BRO |
|---|---|---|---|---|---|---|---|---|---|

| SFNO | J.D# (If Juv.) | ID Type/Jurisdiction/Number | ID Type/Jurisdiction/Number | ID Type/Jurisdiction/Number |
|---|---|---|---|---|

| Book Section #1 | Book Section #2 | Book Section #3 | Book Section #4 | Book Section #5 | Booking Location |
|---|---|---|---|---|---|

| Warrant # | Court # | Action # | Dept | Enroute to | CWB Check | Star |
|---|---|---|---|---|---|---|
| Warrant Violation(s) | | | | Bail | Mirandized | Star | Date | Time | Statement |
| Citation # | Violation(s) | | | | Appear Date/Time | Location of Appearance |

| Book/Cite Approval | Star | Mass Arrest Code | M X-Rays | School (if Juvenile) | CA Form Booked Copy Attached |
|---|---|---|---|---|---|

Other Information: Citation/Warrant/Booking Charges/Missing Person-Subject Description; Scars, Marks, Tatoos

050835556

| E | Code/No EVD 1 | Item Description TAPE INTERVIEW | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity 3 | Value |
| | Seized by (Star) | From Where INTERVIEW WITH VICTIM | | | | | | | |
| | Additional Description/Identifying Numbers RETAINED IN CASE FILE. | | | | | | | | |

| E | Code/No EVD 2 | Item Description DIGITAL PHOTO DISK | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 2 | Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity 10 | Value |
| | Seized by (Star) 683 | From Where TAKEN OF VICTIM'S INJURIES | | | | | | | |
| | Additional Description/Identifying Numbers RETAINED IN CASE FILE. | | | | | | | | |

| E | Code/No EVD 3 | Item Description PHOTOS | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|---|
| 3 | Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity 8 | Value |
| | Seized by (Star) 683 | From Where | | | | | | | |
| | Additional Description/Identifying Numbers PHOTO PRINTED FROM DIGTIAL MEMORY CARD.  PHOTOS RETAINED IN CASE FILE. | | | | | | | | |

| Code/No | Item Description | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|
| Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity | Value |
| Seized by (Star) | From Where | | | | | | | |
| Additional Description/Identifying Numbers | | | | | | | | |

| Code/No | Item Description | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|
| Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity | Value |
| Seized by (Star) | From Where | | | | | | | |
| Additional Description/Identifying Numbers | | | | | | | | |

| Code/No | Item Description | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|
| Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity | Value |
| Seized by (Star) | From Where | | | | | | | |
| Additional Description/Identifying Numbers | | | | | | | | |

| Code/No | Item Description | | | | Brand | | Model | |
|---|---|---|---|---|---|---|---|---|
| Serial No. | | Gun Make | Caliber | Color | Narcotics Lab No. | | Quantity | Value |
| Seized By (Star) | From Where | | | | | | | |
| Additional Description/Identifying Numbers | | | | | | | | |

On the above date I was told about a possible domestic violent incident involving the victim and suspect Cook. The victim had not yet filed a police report due to fear of retaliation by Cook

Lt. Sloan and I responded to the victim's location. Lt. Sloan conducted a taped interview with the victim. This is a summary the interview:

The victim was afraid of Cook and sought a divorce to free herself and her family from the violence and fear. Over the course of their marriage the victim did not file police report(s) when she was abused because she believed the violence would stop, but it did not. As part of the divorce the victim did not want any money from suspect Cook, she just wanted her freedom.

The victim confirmed she was married to the suspect for three years. She had both documented (06/07/03 St. Helena's, 10/03 Walnut Creek) and undocumented domestic violence incidents involving suspect Cook. In the prior cases some photos where taken. She has made numerous 911 calls during the course of the relationship. They were in Contra Costa County.

On 07/25/05, The victim stated that she called Contra Costa County regarding suspect Cook, because she felt that he was going to kill himself, due to their break up. Officer Bruce Mitchell responded to her home and a police report was taken (Case#0520177).

Suspect Cook called her several times asking for a pink slip to a vehicle, which she believed he was using as a ruse to see her.

She saved many of the telephone messages that she received from suspect Cook on her cellular telephone.

Suspect Cook went to her location in Walnut Creek and told her he needed to talk to her, face to face, but she refused, because she was in fear of her safety.

Regarding Cooks recent call to the victim, she answered the phone call, and suspect Cook told her, "Lisa I don't know what to do?...I had my weapon out last night." He told her that he tried to call Contra Costa County Suicide prevention, but they could not help him.

She became concerned and asked if she should talk to his lieutenant. Cook adamantly told her no. She asked him if she could call some of his friends for support, which he told her it would not do any good. She placed their conversation on speaker phone and her daughter heard the conversation.

She called the Contra Costa County Sheriff's Department and reported this suicide incident. They told her they would do a well being check. During this time, suspect Cook called the victim and asked her why she called the police? Officer Mitchell spoke to suspect Cook and she said the officer made a police report.

She told suspect Cook that she did not want him to call her anymore and that their marriage was over. Suspect Cook called her and told her that "she opened a can of worms" when she contacted his Lieutenant. Since this incident the victim has had no contact with the suspect.

The victim is afraid of suspect Cook because he has told her in the past that he could plan the perfect murder and they would never find the bones.

Incident# 050835556

On July 19, 2005 at 11:00PM or 12:00AM at ▓▓▓▓▓▓▓ (the victim and suspect Cook were living at this location during this time), the victim and suspect Cook got into an argument, because suspect Cook felt that she was going to have an affair with her new employer (Eugene Wolf). Suspect Cook said he was going to do a computer query on his name. She added that suspect Cook conducts computer checks on their family's and friends and questioned if this was legal.

During the incident on July 19/20 the victim got up set with suspect Cook and threw some papers & a vase down on the floor and told him that she was tired his actions toward her. Suspect Cook called her a whore, that the house was not hers and she needed to get out.

The victim said suspect Cook physically grabbed her and lifted her up and threw her out of the house. It important to note that the victim is 5'4" and weighs approximately 150 lbs. Cook is 6'6" tall and weighs approximately 265 lbs. At one point the victim grabbed a railing for support, to keep from falling down the landing and this may have caused the fracture to her fingers. The victim picked up a rubber plant and threw it at Cook. It missed him and broke when it landed on the ground. The victim also took off a sandal and threw it at Cook. The sandal missed Cook and hit a window.

The victim called her daughter and told her about the incident and asked her to come to San Francisco and pick her up. The victim waited outside for her daughter and from this point on had no further contact with Cook.

The victim's daughter arrived and took her to a safe location.

The victim was in pain from the incident, but did not immediately seek medical treatment.

On 07/20/05, the victim woke up in pain from the assault last night. Due to the pain the victim went to Urgent Care in Walnut Creek where she told the medical staffs that she was the victim of Domestic Violence. They told her that they would have to call the report the incident.. The medical staff called the police, but were told that because the incident occurred in San Francisco, that the police report would have to be made in San Francisco. X-ray was taken of her injuries. She was told that she had a possible hairline fracture to her finger.

She confirmed they had both been drinking alcohol on the day of the incident at the House of Prime Rib (San Francisco).

Lt. Sloan explained the process for obtaining a restraining order. The victim expressed a serious fear of Cook because he had a lot of firearms and normally always carried a gun. The victim understood how obtaining a TRO would assist.

Lt. Sloan asked the victim if she had any pets. The victim said she had a cat then added that Cook had been cruel to the family cat on several occasions for no reason.

The victim told us that she had started a log of the events and would provide us with any documents. She saved the telephone messages from suspect Cook and granted me permission to obtain the messages left on her cellular phone.

The victim signed a medical release form.

The victim was shown a photo of suspect Cook which she identified the person who assaulted her. The victim signed the photo (retained in case file). During this time the victim began to cry.

Cook allegedly has numerous firearms and some of them are stored in a safe in the garage of the residence in San Francisco.

After the interview a DV referral card was provided to the victim.

After the interview I took 10 photos some of her injuries and retained the digital disk in the case file.

For details of the investigation refer to case file.

# DOMESTIC VIOLENCE CHECKLIST    CASE NO: 050835556

## RELATIONSHIP

Length of Relationship: 3 yrs ___ mos
applicable, date ended: _____

- ⬤ Spouse
- ☐ Dating
- ☐ Former Spouse
- ☐ Former Dating
- Spouse
- ☐ Children in common
- ☐ Engaged
- ☐ Children in household
- ☐ Cohabitants
- ☐ Same sex:
- ☐ Former
- ☐ F/F ☐ M/M
- cohabitants
- ☐ Elder abuse

## PRIOR DOMESTIC VIOLENCE HISTORY    [RF/QINH, QALL, QN]

Documented:
- ☒ Yes ☐ No ☐ Unknown
- No. of incidents: 2
- Dates: 06/03 & 10/03
- Case Nos: _____
- _____
- Other Agency reports: CCCSO
- County/State: CA

Undocumented:
- ☒ Yes ☐ No ☐ Unknown
- No. of incidents: _____
- Approx. Dates: _____
- Location: _____
- _____
- Describe (☒ see narrative) _____
- _____
- _____
- _____

## RESTRAINING ORDERS

- ☐ Yes ☒ No ☐ Unknown
- ☐ Stay Away [RF/HELP (B-2) or QCA]
- ☐ EPO [QN] ☐ Restraining Order [QN]
- ☐ Current ☐ Expired

Issuing County _____
Date issued _____
Court No./File No. _____

Served: ☐ Yes ☐ No _____
Copy attached: ☐ Yes ☐ No

## EMERGENCY PROTECTIVE ORDER [QN]

EPO Issued:
- ☒ Yes: Issuing Judge Frank
  Expiration date 8/3/2005
- ☐ No: Reason _____
  Judge _____

Served:
- ☐ Yes. All terms explained: ☐ Yes ☐ No _____
- ☒ No _____

Copy booked with supplemental: ☐ Yes ☐ No

## COURT SUPERVISION    [RF/QPRO]

Suspect currently on parole or probation:

☐ Yes ☒ No ☐ Unknown

- ☐ Probation: Court _____ Prob. Officer _____
- ☐ Parole: Court _____ Parole Officer _____    Exp. Date _____
-    Exp. Date _____

## EVIDENCE COLLECTED

| Description | Collected | Location booked |
|---|---|---|
| Photos: ☒ Victim ☐ Suspect ☐ Scene ☐ Other | ☒ Yes ☐ No _____ | retained in case file |
| Photos taken by: ☒ Reporting officer ☐ Other _____ Star 683 | | |
| None taken because _____ | | |
| Physical Evidence/Weapon used (Describe) | ☐ Yes ☐ No _____ | |
| 1) _____ | | |
| 2) _____ | | |
| ☐ Impounded for safety per PC §12028.5 | | |
| Witness Statements: | ☒ Yes ☐ No _____ | retained in case file |
| ☒ Victim ☐ Suspect ☐ Other (name) _____ | | |
| Statement form: ☒ Taped ☐ Written | | |
| 911 caller: ☐ Victim ☐ Other (name) _____ | (Interviewed/statement: ☐ Yes ☐ No) | |

For additional names use back of form

## CHILDREN PRESENT

| NAME | DOB/ AGE | FORMAL STATEMENT TAKEN | DEMEANOR | CHILDREN'S SPONTANEOUS STATEMENTS |
|---|---|---|---|---|
| _____ | _____ | ☐ Yes ☐ No | _____ | _____ |
| _____ | _____ | ☐ Yes ☐ No | _____ | _____ |
| _____ | _____ | ☐ Yes ☐ No | _____ | _____ |

OFFICER (print) _____ Star _____

## OFFICER'S OBSERVATIONS    CASE NO. 050855556

Complete a separate form for each victim and suspect

☒ **VICTIM #** _____    ☐ **SUSPECT #** _____

**NAME**

Last Name: Cook First: Lisa Middle: _____

| ☐ Male    ☒ Female | Hgt: 5-4 | Wgt: 145 |

Language spoken _____
Translator's name, if used _____

Pregnant:
☐ Yes, # of months _____
☒ N/A

Influence of: ☐ Alcohol ☐ Drugs ☐ N/A ☒ Other

MARK LOCATION OF VISIBLE INJURIES AND REPORTED PAIN          WRITE SHORT EXPLANATION BESIDE EACH MARK



**DEMEANOR:**
☐ Angry ☐ Apologetic ☒ Tearful/Crying ☒ Calm ☒ Fearful ☐ Irrational ☒ Nervous ☐ Threatening ☐ Belligerent
☒ Other (continue on narrative if necessary) _____

**APPEARANCE** _____

**STRANGLED:** ☐ Yes ☒ No ☐ N/A   If yes: ☐ Voice change ☐ Difficulty breathing ☐ Difficulty swallowing ☐ Pain
☐ Other (continue on narrative if necessary) _____

**SUSPECT'S THREATS TO KILL:** ☐ Victim ☐ Suicide ☒ Other (explain on narrative if necessary)

**SPONTANEOUS STATEMENTS** (continue on narrative if necessary) I need to be safe

**MEDICAL TREATMENT:**
☐ None. Explain: _____
☐ Treated at scene. Paramedic # _____              Paramedic Name _____
☒ Treated at hospital. Name of hospital: Urgent Care        Treating physician _____
☐ Seeking other treatment. Where? _____                        When _____
☐ Refused medical treatment. Explain: _____

**(MEDICAL RELEASE) TO ALL HEALTH CARE PROVIDERS:**
having been advised of my right to refuse. I hereby consent to the release of my medical records to law enforcement and/or the District
Attorney's Office. _____

_____ (Print name)        _____ (Signature)        _____ (Date)

**OFFICER** (print) Flores, Antonio              Star 683          Page _____ of _____