John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel: (415) 561-9600
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Attorneys for Plaintiff,
CLIFFORD COOK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ANTONIO FLORES, DON SLOAN, MARSHA ASHE, and DOES 1-50, inclusive<br><br>Defendants. | Case No.: C 07-02569 CRB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUEST FOR CONTINUANCE TO CONDUCT DISCOVERY UNDER RULE 56(f)**<br><br>Date: February 22, 2008<br>Time: 10:00a.m.<br>Place: Courtroom 8, 19th Fl. |

PLAINTIFF'S P&As IN OPP. TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# Table of Contents

PAGE

I. Introduction ................................................................................................. 1

II. Summary of Argument ................................................................................ 2

III. Statement of Facts and Evidence of Discrimination ............................... 4

    A. Inspector Cook Appears to be the First Person Ever Arrested by the S.F.P.D. after the DA's Office Declined to Prosecute ............................. 4

    B. The Chronological Summary Supports the Inference that Before Cook's Arrest Assistant District Attorney Elizabeth Aguilar-Tarchi Advised Defendants Sloan and Flores that She Would Not Prosecute Cook ................ 4

    C. The Issue Is Not Whether the Defendants Had Probable Cause to Arrest Cook ................................................................................................ 5

    D. Evidence of Disparate Treatment and Malice ............................................ 6

    E. Additional Evidence of Discrimination ...................................................... 7

IV. Legal Authorities ........................................................................................ 8

    A. Cook's Equal Protection Claim .................................................................. 8

    B. The Individual Defendants Do Not Enjoy Qualified Immunity ................. 9

    C. The Decision to Arrest Cook Was Made by Final Decision Makers and was Ratified by the Chief of Police .......................................................... 9

    D. Rule 56(f) Requires a Continuance .......................................................... 10

V. Conclusion ................................................................................................. 11

# TABLE OF AUTHORITIES

PAGE

CASES

*Christier v. Iopa*, 176 F.3d 1231 (9th Cir. 1999)..................................................................9

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)..................................................................9

*Garrett v. City & County of San Francisco*, 818 F.2d 1515 (9th Cir. 1987)......................10

*Henry v. County of Shasta,* 132 F3d 512 (9th Cir. 1997) .....................................................9

*Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) ........................................................11

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)...........................................................9

*People v. Monroe*, (1993) 12 Cal.App.4th 1174..................................................................8

*Taylor v. SentryLife Ins.*, 729 F.2d 652 (9th Cir. 1984).....................................................10

*Wayte v. United States*, 407 U.S. 598 (1985) .....................................................................8

STATUTES

Fed. R. Civ. Proc. 56 (f)......................................................................................................10

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

## I. INTRODUCTION

Clifford Cook is an African-American man who has worked as a police officer with the San Francisco Police Department ("S.F.P.D.") since 1991. On or about July 25, 2005, the plaintiff's Caucasian wife, Lisa Cook, contacted the Department and alleged that she had been a victim of domestic violence on the evening of July 19, 2005 at the couple's home.

The evidence supports the reasonable inference that on July 27, 2005 at approximately 10:00 a.m., Assistant District Attorney Elizabeth Aguilar-Tarchi advised Inspector Antonio Flores and Lieutenant Don Sloan that she had reviewed the allegations and decided **not** to prosecute **or** seek a warrant against Cook. Captain Marsha Ashe knew about this meeting with Aguilar Tarchi. At approximately 3:00 p.m., she and Lt. Don Sloan arrested Cook. The case was presented again to ADA Aguilar-Tarchi the next day and she again declined to prosecute.

Cook sued Ashe, Flores, and Sloan alleging selective enforcement based on race and that this was done with knowledge that the arrest could result in a suspension and other career consequences. This Court invited the defendants to move for partial summary judgment regarding the plaintiff's Equal Protection claim. This Court identified the essential facts underlying this claim: what the District Attorney's office communicated to the defendants **prior to** Cook's arrest. The defendants offered evidence that Capt. Ashe was not advised of this information until **after** the arrest. Plaintiff requested permission to take additional depositions, and this Court invited Cook to present his discovery needs under Federal Rule of Civil Procedure 56.

Cook seeks a continuance so that he can depose ADA Aguilar-Tarchi, defendants Flores and Sloan, Inspector Ciardella and Captain Kevin Cashman in order to oppose this motion.

PLAINTIFF'S P&As IN OPP. TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## II. SUMMARY OF ARGUMENT

The Equal Protection Claim requires evidence (more likely than not) of an intent to discriminate. This is typically established through circumstantial evidence, such as disparate treatment, because admissions of racial bias are rare.

The defendants' motion is based on two pieces of evidence, which demonstrate that (1) material disputed facts exist and (2) additional discovery is required. A Chronological Summary prepared by Inspector Flores, a co-defendant, is replete with hearsay. Captain Ashe cannot bootstrap her decision-making process with information in a document she did not review before arresting Cook. The Chronology also contains numerous hearsay allegations made by Lisa Cook that *might* be admissible, not for their truth, but for notice *if* Captain Ashe had read this document before the arrest. The statement made by Lisa Cook to Lt. Sloan and Inspector Flores on July 26, 2005, one week after the alleged domestic violence, contains hearsay allegations that required corroboration and investigation before the District Attorney's office would consider charging Cook with these allegations.

Instead, what this Chronology shows is that defendants Flores and Sloan *knew* that the District Attorney's office made the decision to **not** prosecute Cook hours before they participated in his arrest. Indeed, the District Attorney's office described additional evidence needed to prosecute Cook in a memorandum prepared by Assistant District Attorney Elizabeth Aguilar-Tarchi dated July 28, 2005. (*See*, Declaration of Clifford Cook, Ex. A). The reasonable inference is that this memorandum documented what the ADA discussed with Flores and Sloane the morning before Cook's arrest day.

The declaration by Captain Marsha Ashe should be viewed with caution given her subsequent deposition testimony. Most importantly, it does not answer the question underlying this claim: did defendants Ashe **and** Sloan know that the DA's Office had declined to prosecute the case before they arrested Cook. Captain Ashe declared that on the morning of July 27, 2007, she decided to arrest Clifford Cook based on what she was told by the investigators and the

- 2 -

PLAINTIFF'S P&As IN OPP. TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

documents that she had reviewed. (Ashe Decl. ¶ 8.) She declares that investigators did not tell her about the "details" of their meeting with the Assistant District Attorney that morning.

In her declaration Captain Ashe attempts to rely on the Chronology as establishing probable cause and a lack of discriminatory intent; however, she testified that she had not read or even seen this document until days, if not weeks, **after** the arrest was made. (*See*, Scott Decl., Exhibit A, Ashe Depo.109:1-110:4) Captain Ashe's declaration implies that she relied on information that had not yet been obtained. In addition, once additional information was obtained the District Attorney's Office still declined to prosecute. (*See*, Chronological Summary, Ex. 1 to Ashe Declaration).

After closer examination of the fundamental flaws in Captain Ashe's declaration, what remains is an admission that she decided to arrest Inspector Cook because of her subjective "belief that there was a significant risk that Inspector Cook could further harm Lisa Cook." (*See*, Ashe Decl., 3:5-7) She then goes on to admit that she knew Inspector Flores would be discussing the case with A.D.A. Aguilar-Tarchi, but she did not think it was necessary, or prudent, to seek the assistance of the District Attorney's Office **before** making the arrest. (*Id.* 4:1-6) She then declares that when she eventually arrested Cook "later that afternoon, I did not learn any details regarding Inspector Flores conversation with A.D.A. Aguilar-Tarchi." (*Id.* 4:12-14). Whether Captain Ashe had a reasonable and unbiased belief that it was necessary to arrest Cook is a triable issue of fact.

Captain Ashe has testified that Inspector Cook is the **only** person who she has ever arrested for domestic violence and that she has never arrested anyone after learning that the District Attorney did not intend to prosecute. (*See*, Scott Decl. Ex. A, Ashe Depo., 99:21-104:6 and 116:9-17) Captain Ashe never met with or spoke to Lisa Cook. (*Id.* 69:14-20) She knew there were prior incidents that did not involve violence. (*Id.* 68:4-69:13) She had no information about Inspector Cook other than he enjoyed a good reputation with his peers. (*Id.* 63:1-66:6) She also acted contrary to police custom and practice when she refused Inspector Cook's request to be

- 3 -

PLAINTIFF'S P&As IN OPP. TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

interviewed so that he could present exculpatory evidence and give his side of the story. (*Id.* 153:1-154:11)

The evidence submitted confirms this Court's observation that something is a bit fishy here. More discovery is required. Whether Ashe's intent was racially-motivated represents a question for the jury, which precludes summary judgment. Alternatively, this Court should grant plaintiff's request for additional discovery under 56(f) and continue the motion.

### III. STATEMENT OF FACTS AND EVIDENCE OF DISCRIMINATION

#### A. Inspector Cook Appears to be the First Person Ever Arrested by the SFPD after the DA's Office Declined to Prosecute.

Captain Ashe testified that she is not aware of **any** case where an arrest was made **after** learning that the District Attorney's Office had reviewed a case and decided not to prosecute. She claims that she has never made an arrest after learning that the DA was not going to prosecute. (*See,* Scott Decl., Exhibit A, Ashe Depo., 99:21-104:6). She also testified that Inspector Cook is the only person she has arrested for domestic violence since taking charge of that unit in 2004. (*Id.* 166:9-17). *See also,* Declaration of Clifford Cook, ¶6 and Declaration of Steven Johnson, ¶5.

#### B. The Chronological Summary Supports the Inference that Before Cook's Arrest Assistant District Attorney Elizabeth Aguilar-Tarchi Advised Defendants Sloan and Flores that She Would Not Prosecute Cook.

According to the Chronological Summary prepared by Inspector Flores (Ex. 1 to the Declaration of Captain Ashe, at page 10 of 33), at 10:00 a.m. on July 27, 2005, Inspector Flores and Inspector Ciardella met with A.D.A. Aguilar-Tarchi and briefed her about the investigation. "While conducting meeting Lt. Sloan came in and informed us that the suspect would be taken into custody." (*See,* Ashe Decl., Ex. 1, p.10) The plaintiff seeks to depose defendant Flores to confirm that he was meeting with A.D.A. Aguilar-Tarchi to determine whether she would prosecute Cook and the outcome of the meeting.

Captain Ashe claims she did not learn that A.D.A. Aguilar-Tarchi "didn't like the case" and was not going to prosecute until sometime **after** Cook had been arrested. Cook was arrested at a meeting in Room 400 that began at approximately 3:00 p.m. and lasted over an hour. (Ashe Depo., 151:20 – 152:3) Captain Ashe further testified that: "**I wasn't surprised to learn that she** (Aguilar-Tarchi) **thought the case was weak.**" (Ashe Depo., 174:19-25) (emphasis added).

The circumstantial evidence is overwhelming that Captain Ashe must have known that A.D.A. Aguilar-Tarchi was not going to prosecute **before** she arrested Cook. Flores and Sloan met with A.D.A Aguilar-Tarchi that morning between 10:00 and 10:30 a.m. The case had been presented and rejected. The DA needed more evidence in order to consider prosecution. This was documented the next day in a memorandum that undoubtedly was the subject of the conversation the morning of the arrest. (*Id.* 189:7-18; *See also*, Decl. of Clifford Cook, Ex. A).

Captain Ashe testified that she spoke with Lt. Sloan several times on July 27th before the arrest, and possibly Flores. (*Id.* 131:25-132:16) She does not remember if she talked to them about their meeting with Aguilar-Tarchi, **but she expected Sloan to tell her if the DA was not going to prosecute or go for a warrant.** (*Id.* 132:17-133:6) Accordingly, the plaintiff wants to depose Lt. Sloan to determine (1) what Flores told him; (2) what he learned from Aguilar-Tarchi; and, (3) what he told Captain Ashe on July 27th before the arrest was made.

### C. The Issue Is Not Whether the Defendants Had Probable Cause to Arrest Cook.

Captain Ashe's fall-back argument appears to be that even if she was informed that the DA's Office did not intend to prosecute Cook, she would have arrested him anyway. (Ashe Depo., 126:7-24) Her reliance on "probable cause" totally misses the point. **This is not a false arrest case.** Rather, it is a selective enforcement claim bought under the Equal Protection Clause. She also claims she was doing Cook a favor by not taking a statement from him because it did not matter what he said. (*Id.* 140:4-10) She concedes that Cook offered to give a statement, but she did not know if a suspect had a right to provide police with exculpatory evidence. (*Id.* 153:1-154:11; 168:14-169:11)

- 5 -

PLAINTIFF'S P&As IN OPP. TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

She also acknowledges, as she must, that this case had mitigating factors that weighed against an arrest. The vast majority of arrests for DV are made at the scene of the incident soon after the alleged event that caused physical injury. Such arrests are mandated in the field if, at the time of the event, there is injury. (*Id.* 55:5-56:5) However, if a week goes by before a spouse complains an arrest is not mandated. "It becomes more difficult to have the supporting evidence for the arrest; but the arrest itself is not mandated: You have an opportunity to review a case in a way that is different from being there at the scene." (*Id.* 56:6-12) In short, "it's a more complex situation." (*Id.* 56:18) Evidence may be lost. A person could claim an injury that occurred two or three days after the alleged assault. In addition, a spouse may have a motive to lie or exaggerate. (*Id.* 170:22-171:8) Alcohol can affect a person's reliability as a witness, and Captain Ashe was aware that Lisa Cook had been drinking at the time of the alleged incident. (*Id.* 171:24-172:13). In addition, many cases are characterized as mutual combat because it is difficult to determine who was the primary or initial aggressor. (*Id.* 40:13-42:1)

### D.  Evidence of Disparate Treatment and Malice.

Defendants Ashe, Sloan and Flores knew that Lisa Cook was Caucasian. Sloan and Flores met with her on July 26th. Captain Ashe acknowledges that she knew this as well. (*Id.* 74:4-24)

Drawing inferences in favor of the non-moving party, this evidence points to malice. Since Captain Ashe did not have any prior history with Officer Cook, and only knew of his reputation as being well liked by his peers, (*Id.* 63:1-66:6) the most obvious explanation is that Cook was arrested because he is an African-American man whose Caucasian wife accused him of domestic violence. Captain Ashe never met or spoke to Lisa Cook. (*Id.* 69:14-20) She had not seen any medical records or photographs before the arrest. (*Id.* 74:4-21) Nor had she read the Chronological Summary attached to her declaration before she decided to arrest Cook. (*Id.* 109:1-110:4) She knew that there were prior incidents that did not involve violence. (*Id.* 68:4-69:13) Nevertheless, she authorized a request for a bail enhancement from $50,000 to $100,000. (*Id.* 126:23-24) She also knew that an arrest would result in a suspension. (*Id.* 187:3-10).

The Chronology Summary indicates that A.D.A. Aguilar-Tarchi reviewed the case on the morning of July 27th (before the arrest) and declined to prosecute. (*See*, Decl. of Clifford Cook, ¶14). Captain Ashe testified that "I would want to know what the District Attorney's concerns were, and if we could address those prior to making an arrest." (*Id.* 102:1-3) Captain Ashe went on to testify "I've never been told by the District Attorney that they were not going to prosecute a case, and then made an arrest on it…" (*Id.* 102:19-21)

### E. Additional Evidence of Discrimination.

The plaintiff is also submitting additional evidence to support his claim that he was the victim of racial discrimination.

Inspector Cook has declared that to his knowledge he is the only person, and only police officer, who was ever arrested in San Francisco after the case was presented to the District Attorney's Office and the decision was made not to prosecute. He further declares that he believes he is the first San Francisco police officer ever arrested for making unauthorized CLETS inquiries. Prior to his arrest, San Francisco police officers had been disciplined, but not arrested, for that type of misconduct. *See*, Decl. of Clifford Cook, ¶ 6.

In addition, the plaintiff has submitted the declaration of Steve Johnson, a member of the Executive Board of the San Francisco Police Officer's Association and a union representative who was a percipient witness to the circumstances surrounding Inspector Cook's arrest. He declares that this is the only time in his career that a police officer under investigation offered to be interviewed and the request was rejected. In addition, he declares that this is the only time, in his experience, that a police officer was suspended for more than 10 days before the officer had been criminally prosecuted or administrative charges had been filed with the Police Commission. *See*, Declaration of Steve Johnson, ¶¶ 4 and 6.

## IV. LEGAL AUTHORITIES

### A. Cook's Equal Protection Claim.

Since the arrest in this case was made under California law, it is helpful to consider what California courts have said about selective arrests. In *People v. Monroe*, (1993) 12 Cal.App.4th 1174, 1192, the Court of Appeal for the First District summarized the law:

> It is important to note that though we find no basis for a constitutional challenge to the form of police discretion authorized by [Vehicle Code] section 40302 and similar statutes, a citee who believes that discretion has been abused is not without a remedy. Like a challenge to the discretionary decision to prosecute, a challenge to an officer's decision to take a citee into custody must be based on a showing the decision was made on invalid criteria, such as pretext, race, religion, or other classification unrelated to the purpose of the statute, i.e., to ensure the compliance of a citee with the promise to appear. In those cases in which the officer has used the custody procedure for some other purpose, the officer's decision is open to challenge. ( *Sundance v. Municipal Court, supra,* 42 Cal.3d at pp. 1133-1136, 232 Cal.Rptr. 814, 729 P.2d 80; see, e.g., *Wayte v. United States* (1985) 470 U.S. 598, 607-608, 105 S.Ct. 1524, 1530-1531, 84 L.Ed.2d 547 [selective enforcement]; cf. *Com. v. Williams* (1990) 390 Pa.Super. 493, 568 A.2d 1281, 1287 [given probable cause, discretionary decision to arrest not constitutionally significant absent evidence of discriminatory enforcement].)

The *Monroe* Court cites *Wayte v. United States*, 407 U.S. 598 (1985) in which the U.S. Supreme Court wrote (at 608):

> Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints. *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979) (footnote omitted). In particular, the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' *Bordenkircher v. Hayes, supra,* 434 U.S., at 364, 98 S.Ct., at 668, quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), including the exercise of protected statutory and constitutional rights, see *United States v. Goodwin, supra,* 457 U.S., at 372,102S.Ct., at 2488.

Since then, the Supreme Court has recognized, particularly in discrimination situations, that circumstantial evidence may carry even more weight than direct evidence.

> We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination." *Id.*, at 147, 120 S.Ct. 2097 (emphasis added). The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: **"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."** *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 508, n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99, 100, (2003). (emphasis added)

### B. The Individual Defendants Do Not Enjoy Qualified Immunity.

Qualified immunity is an affirmative defense. Defendants Inspector Flores or Lt. Sloan have not submitted declarations stating what they knew before they participated in Cook's arrest and sought enhanced bail. The individual defendants do not argue that they were not integral participants in Cook's selective arrest. Instead, they argue that the plaintiff has no evidence that they knew or should have known that their actions violated Cook's clearly defined rights. Absent evidence about what Insp. Flores or Lt. Sloan knew *before* they participated in Cook's arrest, this Court cannot determine whether qualified immunity should apply.

A police officer can not act "reasonably" and discriminate based on race. Questions of fact preclude both summary judgment and qualified immunity.

### C. The Decision to Arrest Cook Was Made by Final Decision Makers and was Ratified by the Chief of Police.

Captain Ashe testified that she and Deputy Chief Tabak were the final decision makers for the City. She obtained approval from Deputy Chief Tabak for the arrest. "It was my decision supported by him." (Ashe Depo., 177-179) *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).

The S.F.P.D., through the Chief of Police, ratified this unconstitutional act when it immediately suspended the plaintiff as a result of the arrest. *Henry v. County of Shasta*, 132 F3d 512 (9th Cir. 1997); *Christier v. Iopa,* 176 F.3d 1231 (9th Cir. 1999).

### D. Rule 56(f) Requires a Continuance.

Under Federal Rule of Civil Procedure 56(f), a party may seek additional discovery by affidavit as follows:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed. R. Civ. Proc. 56 (f). The Ninth Circuit generally disfavors summary judgment when relevant evidence remains undiscovered. *See, Taylor v. SentryLife Ins.*, 729 F.2d 652, 656 (9th Cir. 1984) (per curiam). Summary judgment may not be granted until this Court rules on the merits of the plaintiff's request for a continuance under Rule 56(f). *See, Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1518-19 (9th Cir. 1987).

When a plaintiff can clearly articulate the information sought by specific discovery requests, and indicate the purpose for which the information is being sought, and, show the sought-after evidence would raise triable issues of fact to oppose summary judgment, it would be an abuse of discretion to deny his request. In *Garrett*, an African-American firefighter sued his employer under Title VII alleging race discrimination. In opposition to summary judgment, the plaintiff sought additional discovery in the form of personnel records of 16 named firefighters to determine whether similarly situated co-workers were being treated differently on the basis of race. *Id.* at 1518-19. The district court denied the motion as moot given the pending summary judgment motion which was granted in part based on a "lack of evidence of disparate treatment." *Id.* at 1519. The Ninth Circuit found that the desired discovery was not only of crucial importance,

but, was in the sole possession of the opposing party and therefore it was an abuse of discretion to deny the motion. *Id. See also, Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

Here Cook sought to depose additional witnesses, but was thwarted by the defendants' decision to rely only on Capt. Ashe as a declarant for their motion. This Court invited Cook to renew this request in his opposition to defendants' motion.

For reasons discussed in this brief and the accompanying declaration of John H. Scott, several percipient witnesses must be deposed to discover what the Defendants knew prior to Cook's arrest. This includes defendants Sloan and Flores as well as A.D.A. Aguilar-Tarchi and Captain Kevin Cashman. The plaintiff has demonstrated good cause to believe that these witnesses can provide admissible evidence to support his Equal Protection claim based on the allegation that he was arrested by the defendants **after** they were informed that the District Attorney's Office did not intend to prosecute the case or seek an arrest warrant.

## V.  CONCLUSION

For the foregoing reasons, plaintiff Clifford Cook respectfully requests that this Court deny defendants' motion for partial summary judgment, or in the alternative, grant plaintiff's request for additional discovery under Federal Rule of Civil Procedure 56(f).

Date: February 1, 2008

SCOTT LAW FIRM

By: _____
JOHN HOUSTON SCOTT
Attorney for Plaintiff