John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel: (415) 561-9600
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Attorneys for Plaintiff,
CLIFFORD COOK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ANTONIO FLORES, DON SLOAN, MARSHA ASHE, and DOES 1-50, inclusive<br><br>　　　　Defendants. | Case No.: C 07-02569 CRB<br><br>**DECLARATION OF CLIFFORD COOK IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　February 22, 2008<br>Time:　10:00a.m.<br>Place:　Courtroom 8, 19th Fl. |

I, Clifford Cook, declare as follows:

1.　　I was hired as a police officer for the San Francisco Police Department in June 1991. After graduating from the Academy I worked as a patrol officer at the Ingleside, Cental, Park Stations between 1991 to 2001. During that time I was also assigned to the Public Housing Task Force and as an undercover officer in the Crime Suppression Unit. As a patrol officer I responded to radio calls, conducted traffic stops, made arrests and often interviewed victims, witnesses and suspects. I was encouraged to obtain statements from alleged victims, witnesses and suspects whenever possible.

- 1 -

DECL. OF CLIFFORD COOK IN OPPOSITION TO DEFS MOTION FOR PARTIAL S.J.

2. From approximately 1995 to 2000 I also served as the Executive Director of Operation Dream, a non-profit organization sponsored by the San Francisco Police Department. This program was designed to bring services and mentoring to children in Public Housing Developments. In 2001 I was promoted to Inspector and assigned to the Fugitive Apprehension Unit. In December 2002 I was assigned to the Robbery Detail at the Hall of Justice. As part of that assignment I attended an ICI investigation course for two weeks. I later received an Advanced Certificate in interviews and interrogation.

3. As an Inspector with the Robbery Detail my primary duties and responsibilities were to investigate robberies, including armed robberies and commercial robberies, in the City. I had this assignment from December 2002 until August 2007. In that assignment I consulted almost daily with the District Attorney's Office regarding ongoing investigations, arrests, arrest warrants, the filing of charges and the progress of prosecutions. It was the policy and practice of the Investigative Bureau to have the District Attorneys Office review an investigation prior to making an arrest. In some cases Inspectors were authorized to make a no warrant arrest. In other cases a decision was made by the DA's Office to authorize an arrest warrant or not to prosecute.

4. I also assisted other Inspectors with their investigations and had contact with Inspectors in other Details such as Auto, General Works, and Burglary. During that time I presented dozens of cases to the DA's Office where a suspect had not yet been arrested but was under investigation. In those cases, I never made an arrest or caused an arrest to be made unless I first confirmed that the case would be prosecuted. This was the custom and practice of all Inspectors I worked with.

5. I never made an arrest after the DA informed me that charges would not be filed, nor am I aware of any other SF police officer who made an arrest after the case was reviewed by the DA's Office and a decision was made not to prosecute.

6. To my knowledge I am the only person (and only police officer) ever arrested in San Francisco after the case was presented to the DA's Office and a decision was made not to prosecute. I also have information and believe that I am the first SF police officer ever arrested for making unauthorized CLETS inquiries. Prior to my arrest for that offense SF police officers had been disciplined, but not arrested, for that type of misconduct.

7. I am also familiar with the custom and practice among SF police officers to seek enhanced bail in connection with making an arrest. Based on my training and experience enhanced bail is rarely sought, but is appropriate in cases where the arrestee is a flight risk, an imminent threat to the public or has multiple cases pending. Enhancement is a tool to keep a suspect in custody. I have made dozens of arrests in my career, however, I never sought a bail enhancement in any of those cases.

8. Based on my training and experience, SF police officers are encouraged to interview suspects under investigation prior to making an arrest. I have also been instructed that suspects have a right to provide investigators with exculpatory information and evidence. As an investigator I was trained to interview suspects whenever possible and obtain statements either by videotape, audiotape or in writing. I was also trained to encourage suspects to provide me with any information or evidence that would assist in my investigation.

9. On Wednesday, July 27, 2005, I was on duty working the day shift in the Robbery Detail at 850 Bryant Street. That afternoon I was informed by Lt. Don Sloan that I was to report to Room 400. I went to Room 400 with Lt. Loftus, my supervisor. Upon arrival I initially contacted Captain Kevin Cashman. His office was also in Room 400. He was above Lt. Loftus in

- 3 -

my chain of command. I requested that Officer Mike Lewis also be present. Soon thereafter Officer Lewis arrived.

10.   The four of us (Cashman, Loftus, Lewis and I) went into an office and met with Captain Marsha Ashe and Lt. Don Sloan. A tape recorder was on the table. Soon after I arrived I was informed that the tape was going and that I was under arrest. I responded by saying "No one has heard my side of the story." Shortly thereafter Capt. Ashe and Lt. Sloan left the room. Capt. Cashman contacted my union representative, Steve Johnson. Mr. Johnson arrived within minutes. Mr. Johnson informed Captain Cashman that he would have a POA attorney present for an interview within 30 minutes. He requested that Captain Cashman talk to Capt. Ashe and Lt. Sloan and encourage them to take a statement from me. Captain Cashman left the room for several minutes. He returned and informed me that I would not be allowed to give a statement. Shortly thereafter Lt. Sloan came into the room and told me that it didn't matter what I said, "it's not going to change anything."

11.   Several minutes later I learned that a request for bail enhancement was approved resulting in my bail being increased from $50,000 to $100,000. I was then escorted to the jail for booking. The booking process lasted approximately a half an hour. Later that same day I learned that a police dispatcher had announced that the jail would be temporarily closed because an officer was being booked.

12.   I believe that the arrest was motivated by the fact that I am an African-American man who was accused by his Caucasian wife of domestic violence. The allegation of domestic violence was made six days after an incident that occurred at my home. This type of delayed allegation is typically investigated thoroughly, and reviewed by the District Attorney's Office, before an arrest is made.

DECL. OF CLIFFORD COOK IN OPPOSITION TO DEFS MOTION FOR PARTIAL S.J.

13. I have spoken to other SF police officers familiar with the circumstances surrounding my arrest. They have informed me that they also believe that the arrest was motivated by race.

14. As a result of this lawsuit, and a complaint of discrimination I made to the EEOC, I obtained a copy of Inspector Flores Chronological Summary of his investigation of my case. This document is attached to the Declaration of Marsh Ashe as an exhibit. I believe that pages 9 and 10 of that document are quite revealing. This document supports my belief that I was arrested several hours after Assistant District Attorney Elizabeth Aguilar-Tarchi reviewed my case on the morning of July 27th and informed Inspectors Flores and Ciardella, as well as Lt. Sloan, that she would not prosecute the case.

15. I have also been provided with a document through this litigation prepared by Ms. Aguilar-Tarchi on July 28, 2005. A copy of this memo is attached hereto as **Exhibit A**. Based on my review of the investigation file and my experience as an Inspector, I believe that this memo confirms what was told by Ms. Aguilar-Tarchi to Inspectors Flores and Ciardella on the morning of July 27th. Based on my experience as an Inspector with the San Francisco Police Department I believe that this information must have been shared with Lt. Sloan and Captain Ashe prior to my arrest.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 30th day of January, 2008, at San Francisco, California.

_____
Clifford Cook

# EXHIBIT A

## INTEROFFICE MEMORANDUM

TO: INSPECTOR TONY FLORES STAR # 9132

FROM: ASSISTANT DISTRICT ATTORNEY E. AGUILAR TARCHI

SUBJECT: DISCHARGE 27 – FURTHER INVESTIGATION NECESSARY IN CASE NUMBER 050-335-556

COURT NUMBER # 2227959 PRESENTED TO ADA AS REBOOKING ON 7-28-05

PLEASE RETURN TO DA'S OFFICE FOR DA WARRANT REVIEW ON OR BEFORE AUGUST 17, 2005.

DATE: 7/28/2005

CC: RUSS GIUNTINI

---

The following additional documentation and evidence is needed by the San Francisco Police Department in order to make a filing decision for domestic violence charges:

1. Interview V's daughter, Kimberly Abbas. Victim called daughter for assistance and daughter arrived and transported victim home. Daughter may corroborate victim's injuries, fear, possible witness to prior assaults or threats- did daughter transport victim to Urgent Care in Walnut Creek? Did victim's other daughter, Fawn Abbas, witness any prior assaults or threats? Please ascertain.

2. Obtain the victim's "log of events" referenced in Inspector Flores' police report. (i.e. victim purportedly maintained log of the DV history between the parties)

3. Obtain and record cell phone messages that suspect left on V's cell phone. These will corroborate any possible annoying or harassing telephone calls (653m P.C. behavior) or possible 422 criminal threats.

4. Need all original or duplicates of photos from Contra Costa County report of 10-29-03. Any and all physical evidence collected needs to be preserved and photographed.

5. Obtain copy of the suspicious occurrence report made by Officer Mitchell in Contra Costa County on or about 7-25-05. It is in this report that victim reports that suspect is suicidal and she references the alleged DV that occurred on July 19, 2005.

6. Need copy of dispatch of Walnut Creek report made on 4-13-05 re: 647(f)/243(e)(1) wherein victim was arrested.

7. Obtain all photos in evidence and photo of physical evidence of 4-13-05 647(f) report from Walnut Creek (photos were taken of Ms. Lisa Cook showing injuries)

8. Obtain the following physical evidence referenced in the June 4, 2003 St. Helena police report: Videotaped interview of victim made by officer at station; audio taped interview; photos and any other physical or documentary evidence referenced in police report.



C. Cook 12-4-07
DEPOSITION EXHIBIT
11

Check to see whether suspect ran any other individuals close to or known to the victim- Inspector to review list with victim to determine whether suspect made computer checks of persons known or close to victim

10. Obtain copy of internal investigation by SFPD MCD re: St. Helena case. St. Helena report says SFPD notified. A St. Helena report says Deputy Chief Robinson spoke to Cook.

11. Please ascertain whether the 2003 police reports from St. Helena and Contra Costa County were referred to San Francisco DVRU for investigation.