DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH SALVESON, State Bar #83788
Chief Labor Attorney
MARGARET W. BAUMGARTNER, State Bar #151762
ADELMISE R. WARNER, State Bar #215385
Deputy City Attorneys
Fox Plaza
1390 Market Street, Floor No. 5
San Francisco, California 94102-5408
Telephone:    (415) 554-3959
Facsimile:    (415) 554-4248

Attorneys For Defendants
CITY AND COUNTY OF SAN FRANCISCO ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>    Plaintiff,<br><br>   vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ANTONIO FLORES, DON SLOAN, MARSHA ASHE, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. C 07 2569 CRB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND OPPOSITION TO MOTION TO CONTINUE**<br><br>Date:  Feb. 22, 2008<br>Time:  10:00 a.m.<br>Place:  Courtroom 8, 19th Fl.<br><br>Date action filed:  May 15, 2007<br>Trial date:  None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    THE COURT SHOULD DENY COOK'S REQUEST FOR A CONTINUANCE BASED ON FEDERAL RULE OF CIVIL PROCEDURE 56(F) ................................................................................................................. 1

        A.    The District Attorney's Statements Do Not Create an Inference That Captain Ashe Arrested Cook Based on His Race ........................................ 2

        B.    Because Captain Ashe Decided to Arrest Cook Prior to or During Inspector Flores's Meeting With the District Attorney, What Occurred at the Meeting is Irrelevant ...................................................................... 4

        C.    Cook Makes an Insufficient Showing That He Requires Additional Discovery Regarding the Department's Usual Practices Related to its Interactions With the District Attorney's Office ......................................... 5

    II.    COOK FAILS TO PROVIDE ANY EVIDENCE OF RACE DISCRIMINATION ......................................................................................... 6

        A.    The Undisputed Facts Show That Captain Ashe Arrested Cook Based on Her Assessment That Cook May Further Injure His Wife, Not Because of His Race ................................................................................ 7

        B.    Captain Ashe's Refusal to Allow Cook to Make a Formal Statement Following His Arrest Does Not Raise an Inference That Ashe Arrested Him Because of His Race ............................................................ 8

        C.    No Final Policy Maker Ratified Any Discriminatory Conduct and Therefore Cook's *Monell* Claim Fails ........................................................ 9

        D.    Lt. Sloan and Inspector Flores Did Not Arrest Cook and Therefore Did not Deprive Him of a Constitutional Right ........................................ 10

    III.    ALTERNATIVELY, ALL INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY .................................................................... 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Federal Cases**

*American Federation of State, County & Municipal Employees, AFL-CIO v. Washington*
   770 F.2d 1401 (9th Cir. 1985) ..................................................................................6

*Burrell v. McIlroy*
   464 F.3d 853 n.2 (9th Cir. 2005) ...............................................................................7

*Employers Teamsters Local No. 175  v. The Clorox Company*
   353 F.3d 1125 (9th Cir. 2004) ..................................................................................2

*Gay v. Waiters' and Diary Lunchmen's Union*
   694 F.2d 531 (9th Cir. 1982) ................................................................................6, 8

*Monell v. Department of Social Services*
   436 U.S. 658 (1978) ..............................................................................................9, 10

*Pembaur v. City of Cincinnati*
   475 U.S. 469 (1986) ..................................................................................................9

*Saucier v. Katz*
   533 U.S. 194 (2001) ................................................................................................10

*St. Louis v. Praprotnik*
    485 U.S. 112 (1988) ...............................................................................................10

U*nited States Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.*
   281 F.3d 929 (9th Cir. 2002) ....................................................................................1

*Wayte v. United States*
   470 U.S. 598 (1985) ..................................................................................................6

**Federal Statutes**

42 United States Code
   § 1983 ..................................................................................................................9, 10

Federal Rule of Civil Procedure
   § 56(f) ...................................................................................................................1, 5

**INTRODUCTION**

Captain Marsha Ashe of the San Francisco Police Department arrested Inspector Clifford Cook, a member of the Department, for domestic violence and for unauthorized use of the Department's protected criminal history databases. Cook sued the City alleging, among other things, that the Department arrested him based on his race. Cook does not allege that any officer made any race-based remarks, but attempts to infer racial discrimination based solely on his view of how the Department should have responded to his wife's domestic violence allegations. The City has moved for partial summary judgment on this claim.

In addition to providing argument in opposition to the City's motion, Cook also requests a continuance under Federal Rule of Civil Procedure 56(f) to obtain additional discovery. The City addresses both the request for continuance and Cook's arguments in opposition to the motion in this reply.

The Court should deny Cook's motion to continue because he fails to carry his burden under Rule 56(f) to show that he could not obtain "essential" evidence. The court should grant the City's motion for summary judgment because Cook cannot present any facts upon which a reasonable trier of fact could conclude that Captain Ashe arrested him because of his race.

**ARGUMENT**

**I.  THE COURT SHOULD DENY COOK'S REQUEST FOR A CONTINUANCE BASED ON FEDERAL RULE OF CIVIL PROCEDURE 56(F)**

Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts *essential* to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
> Fed. Rule of Civ. Proc. 56(f) (emphasis added).

The party seeking additional time to develop its opposition bears the burden of showing that such relief is warranted. See *United States Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.,* 281 F.3d 929, 939 (9th Cir. 2002). Moreover, the moving party must proffer facts showing

"that the information sought actually exists." *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. The Clorox Company*, 353 F.3d 1125, 1129 (9th Cir. 2004)

The discovery that Cook claims that he requires to defeat summary judgment relates only to three facts: (1) What the DA said in a meeting prior to Cook's arrest; (2) whether Captain Ashe knew of that discussion prior to arresting Cook; and (3) the Department's regular practices regarding arrests of domestic violence suspects. Even if we assume that the facts are as Cook apparently hopes they will be, such evidence would not defeat summary judgment. First, these facts have little or no bearing on and raise no inference regarding the only issue here: Did Captain Ashe arrest Cook because of his race? Second, even if Cook can elicit additional information regarding the meeting with the DA, the uncontroverted evidence shows that Captain Ashe decided to arrest Cook before that meeting, and would have taken the same action even if she knew what happened at that meeting. What the DA said therefore is irrelevant to her motivation. Lastly, even if Cook shows that the Department failed to follow its usual practices regarding the arrest of domestic violence suspects, the undisputed facts show that Cook's status as a police officer removed this case from the usual circumstances. Therefore any deviation from the Department's "usual practices" is not relevant and fails to raise any inference of race discrimination.

Because the evidence sought by Cook will not change the result, the Court should deny the motion to continue.

### A. The District Attorney's Statements Do Not Create an Inference That Captain Ashe Arrested Cook Based on His Race

Cook requests a continuance in order to depose Assistant District Attorney Elizabeth Aguilar-Tarchi, Lieutenant Don Sloan, and Inspector Antonio Flores regarding what occurred at the morning meeting on July 27, 2005, with ADA Aguilar-Tarchi and what part of that conversation, if any, was conveyed to Captain Ashe before Cook's arrest. But even if the Court assumes that the evidence will show what Cook claims it will show, such evidence does not raise an inference of racial discrimination.

Importantly, Cook continues to use an ambiguous phrase to describe what the DA, according to him, decided at the morning meeting on July 27, 2005. He states that at that meeting the DA

1   informed Inspector Flores that she "declined to prosecute." What Cook describes with this phrase,

2   however, is the DA's determination that she would not be willing to file criminal charges absent

3   additional investigation. (See Cook Dec. ¶ 15, Ex. A ("I believe this memo [requesting further

4   investigation] confirms what was told by Ms. Aguilar-Tarchi to Inspectors Flores and Ciardella on

5   the morning of July 27th").) But requesting additional investigation is not the same as "declining to

6   prosecute" or "discharging" the case. The DA "declines to prosecute" or "discharges" a case only

7   after the Department arrests a suspect and the Inspectors present a "rebooking" package to the

8   District Attorney. (See Ashe Depo. pp. 99:12-20; 105:21-106:18.)[1]

9   In this case, the uncontradicted evidence shows that the DA discharged the case two months

10  after Cook's arrest, and after additional investigation by both the Police Department and a DA

11  investigator. (Cook Depo. Ex. 12; pp. 99:16-23.) Therefore, a more accurate description of Cook's

12  allegation is that in the morning of July 27, 2005, the DA indicated that the Department should

13  conduct additional investigation before the DA would file criminal charges.

14  For the purposes of the City's motion for partial summary judgment, the City will not

15  dispute that fact. Cook therefore has no need to depose anyone, including ADA Aguilar-Tarchi, to

16  obtain further proof of that allegation.

17  If Cook is attempting to argue that ADA Aguilar-Tarchi told the Department that she

18  intended to discharge the case, i.e., dismiss it outright, Cook has not carried his burden of showing

19  that such evidence may actually exist. All of the evidence shows that, if anything, ADA Aguilar-

---

[1] Cook's attorney specifically asked Captain Ashe what she meant when she used the phrase "decline to prosecute":

> Q: When you used the term 'decline to prosecute,' what did you mean by that?
>
> A: I meant the same thing I meant with discharging a case. The standard for an arrest is different, and certainly much lower, than the standard of proof in a criminal case. And it's the District Attorney's Office, after the arrest is made, who has the responsibility to review cases for the likelihood of a conviction.
>
> Ashe Depo. p. 99:12-20.

**REPLY MPA/MSJ CASE NO. C 07 2569 CRB**                                    n:\labor\li2007\080165\00464115.doc

1  Tarchi stated more investigation would be necessary before she would charge the case.  The court
2  should therefore deny Cook's request for a continuance.

      **B.**      **Because Captain Ashe Decided to Arrest Cook Prior to or During Inspector Flores's Meeting With the District Attorney, What Occurred at the Meeting is Irrelevant**

5      Cook also requests a continuance in order to depose Lieutenant Sloan and Inspector Flores
6  regarding "communications" between them and Captain Ashe regarding the meeting with the DA.
7  But any communications between them are irrelevant to any material fact in this case.

8      The only issue in this motion is whether Captain Ashe arrested Cook because of his race.
9  Captain Ashe testified that she attended a meeting at 9:30 a.m. on the morning of July 27, 2005, at
10 which time she, in conjunction with Deputy Chief Tabak, made the decision to arrest Cook.  (Ashe
11 Depo. p. 177:17-23.)  They discussed, but rejected, the possibility of waiting to determine whether
12 or not the DA would issue a warrant.  (Ashe Depo. pp. 119:1-24; 179:14-180:2.)  However, the
13 arrest did not occur immediately, because Captain Ashe learned that Inspector Cook was gone and
14 out of the building that morning, and therefore they waited until he returned.  (Ashe Depo.
15 p. 118:20-23.)

16      Captain Ashe knew when she decided to arrest Cook that Inspector Flores would at some
17 point be meeting with the District Attorney's office to discuss this case, but she did not know when
18 that meeting would occur.  (Ashe Depo. p. 123:9-21.)  She also testified that no one told her prior to
19 Cook's arrest that the DA stated that she would not charge the case without further investigation.
20 (Ashe Depo p. 124:17-25.)  But, she also testified that even if she had learned of any such
21 conversation, it would not have made any difference to her decision.  (Ashe Depo. p. 126:7-22.)
22 She would have arrested Cook anyway because she believed that the Department "had the legal and
23 ethical responsibility to make an arrest in this case" and because "this case is predicated on physical
24 evidence, escalating violence, as reported by the victim, and lethality factors, that suggested this
25 could easily be a domestic violence homicide."  (Ashe Depo. p. 126:7-22.)

26      Thus, the DA's decision did not and could not have an affect on Captain Ashe's motivation
27 to arrest Cook.  Captain Ashe not only had already made up her mind, she would have made the
28 same decision even if she knew the DA's position on the matter.  As Captain Ashe stated, the

4

**REPLY MPA/MSJ CASE NO. C 07 2569 CRB**      n:\labor\li2007\080165\00464115.doc

1  "District Attorney doesn't approve our arrests."  (Ashe Depo. p. 101:18-19.)  Thus, whether or not
2  the DA said additional investigation would be necessary, or whether or not Lt. Sloan or Inspector
3  Flores told Captain Ashe about the DA's view, raises no inference regarding Captain Ashe's
4  motivation for arresting Cook.
5      The court should therefore deny Cook's motion to continue to under Rule 56(f).

### C. Cook Makes an Insufficient Showing That He Requires Additional Discovery Regarding the Department's Usual Practices Related to its Interactions With the District Attorney's Office

8      Cook's attorney's declaration states that he requires additional discovery related to "common
9  practices and procedures relating to the way these agencies coordinate their efforts [sic] to arrest
10 and prosecute suspects."  (Scott Dec. ¶ 3.)  But Cook already had a number of sources of such
11 information.  He deposed Captain Ashe, and asked a lot of questions regarding arresting DV
12 suspects.  Captain Ashe explained the process in detail.  (See e.g., Ashe Depo. pp. 50-56.)  In
13 addition, Cook himself provided a declaration stating what he believes to be the common practice.
14 (Cook Dec. ¶¶ 3-7.)  Cook also could have presented declarations from many other inspectors, with
15 whom he has daily contact, regarding what they believe to be these common practices.  For
16 example, Cook claims to be friends with a domestic violence "expert," Leroy Lindo, who could
17 have provided a declaration.  (Cook Depo. pp. 110:1-8.)
18     Moreover, there does not appear to be a lot of dispute regarding the usual procedures for DV
19 arrests.  But it is also undisputed that this is not a "common" case.  Unlike most DV cases, the
20 police did not make the arrest at the scene, because the Department received the report, through
21 unusual channels, a week after it occurred.  (Cook Depo. Ex. 7; Ashe Depo. pp. 100:10-13; 105:12-
22 106:18.)  The suspect was a member of the Department, which caused the Department to be more
23 "proactive."  (Ashe Depo. p. 112:3-15.)  His status as a police officer created a higher risk of
24 potential violence.  (Ashe Dec. ¶¶ 6-7.)  Captain Ashe's arrest of Cook is the only arrest she
25 conducted in her four years as the Captain of the DV unit.  (Ashe Depo. p. 166:9-17.)  Here, the
26 Department did not follow its "normal" or "common" practices because it was not a "normal" or
27 "common" case.  Discovery concerning those practices would therefore be irrelevant to this matter.
28

5

1    Because Cook has failed to show that he was unable to obtain any "essential," much less
2    relevant, evidence, the Court should deny his motion for a continuance.

3    **II.   COOK FAILS TO PROVIDE ANY EVIDENCE OF RACE DISCRIMINATION**

4    Although a plaintiff may prove a discriminatory motive through circumstantial evidence, the plaintiff must present facts "from which one can infer, if such actions remain unexplained, that it is more likely than not" that the defendant's conduct was racially motivated. *Gay v. Waiters' and Diary Lunchmen's Union*, 694 F.2d 531, 546 (9th Cir. 1982); see also *American Federation of State, County & Municipal Employees, AFL-CIO v. Washington*, 770 F.2d 1401, 1406 (9th Cir. 1985) ("discriminatory intent may be inferred from the actions of an employer where experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.")  Moreover, it is not enough that the defendant knew that its enforcement procedures could affect one group more than others.  Rather a plaintiff must prove that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 607-08 (1985).  And, in cases such as these, challenging discretionary enforcement decisions are "particularly ill-suited to judicial review." (*Id*.)  The number of different factors that enter into the decision "are not readily susceptible to the kind of analysis the courts are competent to undertake." (*Id*.)

In this case, to prevail on his Equal Protection claim related to his arrest, Cook would have to prove that chose to arrest him because of, not in spite of, his race.  To avoid summary judgment, he must present facts, not speculation "from which one can infer, if such actions remain unexplained, that it is more likely than not" that the defendant's conduct was racially motivated. *Gay v. Waiters' and Diary Lunchmen's Union*, 694 F.2d 531, 546 (9th Cir. 1982).  Here, the City has provided legitimate non-discriminatory reasons for all of its action.  Cook provides no evidence that these reasons are pretextual.

The Court should therefore grant the City's partial motion for summary judgment on this claim.

6

**REPLY MPA/MSJ CASE NO. C 07 2569 CRB**                                         n:\labor\li2007\080165\00464115.doc

**A. The Undisputed Facts Show That Captain Ashe Arrested Cook Based on Her Assessment That Cook May Further Injure His Wife, Not Because of His Race**

The material facts, absent speculation, are as follows: the Department received a report of domestic violence perpetrated by one of its sworn officers. (Ashe Dec. Ex. 2.) The Department investigated the report. (Ashe Dec. Ex. 1.) The Department obtained a statement from the victim, and corroborating evidence of her statement in the form of photos and personal observation of her injuries and corroboration of a DV report by the medical center. (Ashe Dec. Exs. 1, 2.) The Department also corroborated the victim's statement that Cook, without authorization and in violation of the law, had accessed restricted criminal history databases to run checks on her. (Ashe Dec. Ex. 1, p. 9.) The Department also obtained corroboration of Lisa Cook's report that she and Cook had been involved in prior domestic violence incidents in other jurisdictions. (Ashe Dec. Ex. 1, p. 4; Ex. 2, p. 1.)

One of the Department investigators conveyed the information about this case to his superior officer, and the Commanding Officer of the Domestic Violence unit, Captain Ashe. (Ashe Dec. ¶ 4.)[2] After obtaining the report of the facts uncovered by the Department's investigation as of the morning on July 27, 2005, and discussing it with other members of the command staff, Captain Ashe decided to perform a custodial arrest of Cook. (Ashe Dec. ¶ 5.)

Captain Ashe decided to arrest Cook rather than wait for a warrant because of her belief, based on what she knew at that time, that Cook's history and the circumstances of the most recent domestic violence incident as reported by Lisa Cook suggested that Cook may further harm his wife. (Ashe Dec. ¶ 5-7.) She believed that arresting him could place an additional barrier to further violence. (Ashe Dec. ¶ 8.)

Cook attempts to obscure these facts through speculation regarding what he believes *should* have occurred. Even though he admits to probable cause, he believes that Captain Ashe should have sought the permission of the District Attorney's office to arrest him. He believes that Captain

---

[2] In his opposition Cook seems to suggest that Captain Ashe improperly relied on the report of Lt. Sloan. But officers often make decisions based on reports of other officers. See *Burrell v. McIlroy,* 464 F.3d 853, 857 n.2 (9th Cir. 2005).

7

1   Ashe should have determined what happened in the meeting with the District Attorney's office. He
2   believes that, if the DA told the investigators that more investigation would be required before she
3   charged the case, the Police Department should not have arrested him. Cook's concludes that "the
4   most obvious explanation" for Ashe's failure to do these things is Cook's race, and that of his wife.

5         Captain Ashe, however, approached this matter in the way she did for legitimate, non-
6   discriminatory reasons. Cook is a police officer. He carries a gun. Captain Ashe only became
7   involved in this case because he is a police officer. (Ashe Depo. p. 112:3-15.) Lisa Cook's
8   allegations that Cook "knew judges" and could make her "bones disappear," carried more weight
9   because he is a police officer. (See Ashe Dec. Ex. 1, pp. 8-9; Ex. 2, p. 4.) In its investigation, the
10  Department found evidence that Cook had already abused his power as a police officer through
11  illegal use of resources available to police officer, but not the general public. (Cook Depo. Ex. 1, p.
12  9.) And, because he is a police officer, the Department knew that its actions in this case would be
13  heavily scrutinized. (Ashe Dec. ¶ 6.) Thus, the "most obvious explanation" for any differential
14  treatment is not Cook's race, but his status as a police officer, which creates circumstances different
15  from those of a standard domestic violence investigation.

16        These legitimate, non-discriminatory reasons for the Department's actions eliminate any
17  inference of race-based animus on the part of Captain Ashe or any other defendant. Therefore, to
18  defeat summary judgment, Cook must provide some evidence that could prove that this explanation
19  is a pretext for discrimination. *Gay v. Waiters' and Diary Lunchmen's Union*, 694 F.2d 531, 546
20  (9th Cir. 1982). The only "facts" upon which Cook relies is what may or may not have occurred in a
21  meeting with the District Attorney at which Ashe was not present and which occurred *after* Ashe
22  made her decision to arrest Cook, and Ashe's refusal *after* she arrested him to allow him to make a
23  statement. These facts do not suffice to show pretext.

24      **B.**    **Captain Ashe's Refusal to Allow Cook to Make a Formal Statement Following His Arrest Does Not Raise an Inference That Ashe Arrested Him Because of His Race**
25

26  Cook's reliance on Captain Ashe's refusal to take a formal statement from him as proof of
27  race discrimination is misplaced. Cook did not make his request to make a statement,ated Captain
28  Ashe did not refuse it, until *after* Captain Ashe placed Cook under arrest. (Cook Depo. p. 29:7-30-

8

17; 33:2-10.) Steve Johnson, Cook's representative, appears to have been confused about this: he indicates in his declaration that he requested that Cook be given the opportunity to make a statement "to avoid arrest," and "before a final decision to arrest him" had been made. (Johnson Dec. ¶¶ 2-4.) But by that time, Captain Ashe had already placed Cook under arrest. (See Cook Depo. pp. 29:15-31:22. (Johnson did not arrive until after Ashe placed him under arrest).)

Moreover, Captain Ashe did not want to take a statement from Cook because she was concerned that it was not in his best interest, and because she did not believe that it would aid her in her case. (Ashe Dec. ¶ 13.) Even Steve Johnson, the POA representative, states in his declaration that "If arrested I knew that Inspector Cook would be represented by an attorney. In anticipated that his attorney would advise him not to talk to investigators." (Johnson Dec. ¶ 4.) Thus, declining Cook's offer to make a statement has a legitimate, non-discriminatory reason, supported by Cook's own declarant, and does not raise an inference of racial discrimination.

### C. No Final Policy Maker Ratified Any Discriminatory Conduct and Therefore Cook's *Monell* Claim Fails

Being the final decision maker is not the same as being the final policy maker. Otherwise, any final action on the part of any level of employee of a municipal agency would create *Monell* liability. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, … *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' -- that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). It is only when "policy . . . , whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Here, Cook fails to provide any evidence that the City and County of San Francisco or the San Francisco Police Department has a policy or custom to arrest African-American men married to Caucasian women on the basis of race. He also does not have any evidence that any person involved in the arrest here is the final decision maker for making arrest policy for the City.

9

Cook relies entirely on his argument that by suspending him, the Chief of Police ratified racial discrimination. Cook's argument misconstrues the concept of ratification under *Monell*. The only unconstitutional conduct Cook alleges is Ashe's alleged racial motivation in arresting him. But she had probable cause to arrest him. Even if we assume that Chief Fong: (1) is a final policy maker; and (2) knew of Cook's arrest at the time and failed to intervene, nothing suggests that Chief Fong knew or could have known that Captain Ashe was motivated by unconstitutional animus. Therefore, no evidence supports a finding that Chief Fong intentionally ratified an equal protection violation. See *St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988) ("if the authorized policymakers approve a subordinate's decision *and the basis for it*, their ratification would be chargeable to the municipality because their decision is final") (emphasis added).

### D. Lt. Sloan and Inspector Flores Did Not Arrest Cook and Therefore Did not Deprive Him of a Constitutional Right

To be held liable under 42 USC § 1983, a defendant must intentionally act in a manner that results in the deprivation of an unconstitutional right. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Cook here attempts to avoid the dismissal of Inspector Flores and Lieutenant Sloan on the ground that they did not file declarations, and based on the unsupported assertion that they "participated" in Cook's arrest. But they do not need to file declarations because the undisputed facts show that Captain Ashe, not Lieutenant Sloan or Inspector Flores, made the decision to arrest Cook, and placed her under arrest. Captain Ashe and Cook both so testified. (Ashe Depo. p. 177:17-23; Cook Depo. p. 33:2-10.) As the commanding officer of the unit, it is her job to make difficult decisions, and she did so. (Ashe Depo. p. 167:1-11.)

No evidence suggests either that that Sloan or Flores deprived Cook of a constitutional right, nor took any action with the intent of discriminating against Cook on the basis of his race. Also, no evidence suggests that they knew that Captain Ashe may be motivated by race. The Court should dismiss these two defendants.

### III. ALTERNATIVELY, ALL INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

For the same reasons that the court should grant summary judgment to the three individual defendants, the three individual defendants would be entitled to qualified immunity. In particular,

10

even if the court were somehow to find that Cook can survive summary judgment on his case against Captain Ashe, reasonable officers in Lt. Sloan and Inspector Flores's positions would not have known that their actions would result in the deprivation of any clearly defined constitutional right.

Because Cook's allegations against the three individual defendants are based solely on Cook's arrest, they should be dismissed in their entirety.

## CONCLUSION

For the foregoing reasons, the Court should grant the City's motion for partial summary judgment on Cook's Second Cause of Action.

Dated: February 8, 2008

DENNIS J. HERRERA
City Attorney
ELIZABETH SALVESON
Chief Labor Attorney
MARGARET W. BAUMGARTNER
Deputy City Attorneys

By: /s/ Margaret W. Baumgartner
MARGARET W. BAUMGARTNER
Attorneys for Defendants CITY AND
COUNTY OF SAN FRANCISCO et al.