John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel: (415) 561-9600
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Attorneys for Plaintiff,
CLIFFORD COOK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br>ANTONIO FLORES, DON SLOAN,<br>MARSHA ASHE, and DOES 1-50, inclusive<br><br>            Defendants. | Case No.: C 07-02569 CRB<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUEST FOR CONTINUANCE TO CONDUCT DISCOVERY**<br><br>Date:  May 9, 2008<br>Time:  10:00a.m.<br>Place:  Courtroom 8, 19th Fl. |

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 3

      A. Inspector Flores is Assigned to Case on July 26, 2005..........................3

      B. The Morning Meeting on July 27, 2005…………………………………3

      C. The Decision to Arrest Without a Warrant………………………………4

      D. Inspector Flores and Ciardella Meet with ADA Aguilar-Tarchi……………..5

      E. Custom and Practice in "Off the Street" Complaints……………………5

      F. Cook is Denied His Request to be Interviewed………………………….6

      G. The District Attorney Never Brings Charges After Further Investigation......7

III. ARGUMENT .......................................................................................................... 7

      A. Legal Standard Governing Motions for Summary Judgment………………..7

      B. Discrimination in Violation of the Equal Protection Clause……………..8

      C. Plaintiff's Renewed Rule 56(f) Motion for Additional Discovery……………9

IV. CONCLUSION ..................................................................................................... 10

SCOTT LAW FIRM
1375 SUTTER STREET, SUITE 222
SAN FRANCISCO, CA 94109

i

PLAINTIFF'S SUPPLEMENTAL P&A IN OPP. TO DEFENDANTS' MTN FOR PARTIAL SUM. JUDG'T

# TABLE OF AUTHORITIES

**CASES**                                                   **PAGE**

*Farm Labor Organizing Com. v. Ohio State Highway Patrol*, 308 F.3d 523 (6th Cir. 2002) ..................................................8

*Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir. 1994) ...............................7, 8

*Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1986) ....................................7, 8

*Parr v. Woodmen of the World Life Ins.Co.*, 791 F2d 888 (11th Cir.1986) ...........8

*Peacock v. DuVal*, 694 F.2d 644 (9th Cir. 1982) ....................................................7

*Tetro v. Elliott Popham Pontiac*, 173 F.3d 988 (6th Cir. 1999) ............................8

*U.S. v. Bullock*, 94 F.3d 896 (4th Cir. 1996) .........................................................8

*U.S. v. Montero-Camargo*, 208 F.3d 1122 (9th Cir.)(en banc) ............................8

*Watson v. Nationwide Ins. Co.*, 823 F2d 360 (9th Cir. 1987) ................................8

*Wayte v. U.S.*, 470 U.S. 598 (1985) .......................................................................8

*Whren v. U.S.*, 517 U.S. 806 (1996) ......................................................................8

**STATUTES**

42 U.S.C. SECTION 1983..................................................................................1, 8

## I. INTRODUCTION

This brief is being filed to supplement the brief filed on February 1, 2008, in opposition to Defendants' motion for partial summary judgment.[1] The plaintiff is also submitting additional evidence from the depositions taken since this court's order of February 15, 2008, continuing the motion "so that plaintiff can take the requested discovery." Additional discovery has disclosed that the plaintiff was the victim of a series of discriminatory acts by defendants Ashe and Sloan.

The testimony of Inspector Flores supports the plaintiff's claims.[2] Normal customs and practices were not followed leading up to his arrest. Plaintiff was denied an opportunity to be interviewed before his arrest. The bail enhancement requested by defendants Ashe and Sloan was not warranted. No legitimate reason existed for making the arrest before a warrant was obtained. In addition, as a result of the arrest Cook was suspended for 60 days. He is the only officer suspended for 60 days (1) who was arrested, but not prosecuted, and (2) before his administrative investigation was completed.

Of course the defendants will argue that they had probable cause to arrest and they had not been informed, yet, that the District Attorney did not intend to prosecute. However, this is not a false arrest case. This is a discrimination case. Why was Cook treated differently than other officers (and citizens) investigated for alleged domestic violence? One reasonable explanation - but not necessarily the only explanation - is that Cook is a black man who was accused of domestic violence by a white woman.

This is a civil case. Plaintiff has the burden of proof "by a preponderance of the evidence" – 50.1%. On summary judgment all inferences must be drawn in favor of the non-

---

[1] The pending motion for summary judgment goes to Plaintiff's claims that he was discriminated against because of his race (African-American) and his association with his Caucasian wife. This motion is only directed to his claims under 42 U.S.C. Section 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment. He has also brought claims under Title VII and the California Fair Employment and Housing Act that are not the subject of this motion.

[2] Plaintiff intends to dismiss Defendant Antonio Flores based on the deposition testimony recently obtained.

moving party, i.e., Plaintiff Cook. The court cannot weigh the evidence or make credibility determinations. Plaintiff need only demonstrate the existence of a triable issue of fact.

Plaintiff has presented substantial evidence that he was treated differently than other police officers investigated, arrested, and disciplined for allegations of domestic violence. He has presented a prima facie case of discrimination, i.e., he is an African American and he was treated differently than other police officers. This raises an issue of fact as to the intent of the two persons (Defendants Ashe and Sloan) who caused his arrest, bail enhancement and 60 day suspension.

Defendants Ashe and Sloan have attempted to articulate a legitimate, non-discriminatory reason for the disparate treatment of Cook. They claim that somehow his case was different because (1) police should be held to a higher standard than others and (2) his arrest and bail enhancement was necessary to protect Cook's wife from possible homicide. However, the evidence flatly contradicts these claims. First, other SF police officers were not held to a "higher standard." Cook was the only officer ever arrested for domestic violence **before** the police "worked the case up" and obtained an arrest warrant.

Second, there were no exigent circumstances or legitimate reasons for making the arrest before the case had been worked up for a warrant. Two days before the arrest Inspector Cook had turned over his firearms to the Department. He was no longer living with his wife – they had physically separated. He had not made any threats. The Chief of Police issued a stay away order that, if disobeyed, could result in serious discipline including termination. The police had also obtained an Emergency Protective Order. There were no prior incidents of domestic violence. The day before the arrest Cook's wife told the inspectors that she "felt safe." Cook was not a flight risk – he worked for the SF police department, had a good reputation, owned property in San Francisco, and lived here his entire life. Cook had the ability to post bail, including enhanced bail. His arrest and enhanced bail would not change the situation.

Naturally, the defendants deny discriminating. The only remaining defense is skepticism that a female Captain and male Lieutenant, both white, in the "liberal" San Francisco police

department would discriminate against a black officer married to a white woman. This skepticism may help the defendants prevail at trial, but this is a motion for summary judgment. Defendants are entitled to claim they did not discriminate, but they are not entitled to summary judgment. "Save it for the jury."

## II. STATEMENT OF FACTS

### A. Inspector Flores is Assigned to Case on July 26, 2005

Inspector Antonio Flores was assigned to investigate this case on July 26, 2005; the day before the arrest. He reported to Lt. Sloan who reported to Capt. Ashe. Flores and Sloan interviewed Cook's wife, Lisa, on the evening of July 26th. She was staying with her daughter in the East Bay. A day earlier (July 25th) she had reported being injured by Plaintiff Cook at their home in San Francisco on the night of July 19th. During the interview she acknowledged that she was under the influence of alcohol and prescription drugs at the time Cook allegedly grabbed her. (Flores Depo, 87:8-23)

### B. The Morning Meeting on July 27, 2005

Ashe testified that the decision to arrest Cook was made at a meeting she attended on the morning of July 27, 2005 with Captain Kevin Cashman, Inspector Antonio Flores and others. (Ashe Depo, 121:11-122: 2) She also testified that they (Cashman and Flores) should be able to confirm that the decision to arrest Coook was made at the meeting. The Plaintiff has deposed Cashman and Flores. Each has denied that a decision to arrest Cook was made at that meeting. (Cashman Depo, 17:24-20:4; Flores Depo, 40:15-41:5).

That morning Inspector Flores was assigned two additional inspectors (Ciardella and Martinez) to assist him in his investigation. Flores left the meeting that morning and, together with Inspector Ciardella, took his file and met with ADA Aguilar-Tarchi to "work the case up for a warrant." (Flores Depo, 38:13-41:14) Flores explained that this would be the normal procedure in cases such as this where an arrest for DV was not made at the scene, the victim had delayed coming forward, and the suspect was not a flight risk. (Flores Depo, 16:21-25:15).

- 3 -
PLAINTIFF'S SUPPLEMENTAL P&A IN OPP. TO DEFENDANTS' MTN FOR PARTIAL SUM. JUDG'T

### C. The Decision to Arrest Without a Warrant

Capt. Ashe also knew that Flores and Ciardella left that meeting to meet with ADA Aguilar-Tarchi "to review the facts of the case for a possible warrant." (Ashe Depo, 119:1-18)[3] This was consistent with normal practice. It would also be custom and practice to obtain a warrant before making an arrest. (Flores Depo, 23:25-25:15) However, in this case Capt. Ashe and Lt. Sloan decided to arrest Cook regardless of whether the DA would approve a warrant. (Ashe Depo, 119:9-24)

Capt. Ashe's explanation for this unprecedented act was that this case was predicated on "escalating violence" and "lethality factors" that suggested it could "easily be a domestic violence homicide". (Ashe Depo, 126:7-22) This testimony supports Cook's case. This is a textbook case of discrimination because it involves an "assumption" that is not supported by "facts". This is the classic definition of discrimination! Capt. Ashe's reason is based on irrational beliefs based on racial stereotypes. Her imagination and thought process is entirely consistent with racial stereotypes regarding black men in America.

Capt. Ashe had not even met with the alleged victim and she had made up her mind to arrest Cook. Cook was not given an opportunity to be interviewed so he could give his side of the story. The night before the arrest, Cook's wife reported to Lt. Sloan and Inspector Flores that "she was happy and felt safe." (Flores Depo, 82:9-84:25) Lisa Cook never reported any threats. (Flores Depo, 86:10-87:1) There was no history of physical violence. (Ashe Depo, 68:4-69:13) The incident under investigation involved alleged bruises that were caused a week earlier when the alleged victim was under the influence of alcohol and prescription drugs. (Flores Depo, 87:8-19)

But there is more! Inspector Cook had a good reputation in the department. (Ashe Depo 65:24-66:13) Two days earlier he had surrendered all of his guns. (Sloan Depo, 87: 14-16; Cashman Depo, 7:18-8:21) He was physically separated from his wife- she was living with her

---

[3] Flores has confirmed that he left the meeting to meet with Aguilar-Tarchi to start the warrant work-up process, yet Aguilar-Tarchi has testified that she did not understand that this was the purpose of the meeting. Compare, Flores Depo, 39:24-41:8 and Aguilar-Tarchi Depo, 7:23-9:7.

daughter in the East Bay. (Flores Depo, 33:16-34:5) Cook had been given a stay away order by the Chief of Police – a violation of this order would result in discipline and possibly termination. (Flores Depo, 81:22-82:8) An EPO (Emergency Protective Order) was obtained and served on Cook when he was arrested. (Sloan Depo, 110:18-111:27; Flores Depo, 52:18-53:9)

There is absolutely no objective evidence to support Capt. Ashe's belief that a warrantless arrest was necessary because of "escalating violence" and "lethality factors" that suggested it could "easily be a domestic violence homicide". This testimony would fit nicely into a Tennessee Williams' play or a sociological study on "Racism in America". Apparently black men who get into arguments and disputes with their wives are predisposed to commit domestic homicide. Of course, here Capt. Ashe could identify with the "victim". Lisa Cook is white – as is Capt. Ashe.

### D.  Inspector Flores and Ciardella Meet with ADA Aguilar-Tarchi

Inspectors Flores and Ciardella met with Aguilar-Tarchi to share information in the case file. While in the process of learning what additional information she would need to obtain an arrest warrant, the meeting was suddenly interrupted by Lt. Sloan. (Flores 41:12-42:11) To Flores' surprise, Lt. Sloan entered the room and announced that regardless of the outcome of the "warrant work-up" - "we're going to arrest him anyway." (Flores 42:25-43:21) Sloan then ordered Flores to seek a bail enhancement. **Flores did not think a bail enhancement was warranted**. (Flores 43:22-44:15).

Flores testified that he, Ciardella and Aguilar-Tarchi were in "shock" by Sloan's announcement. Aguilar-Tarchi handed back the documents she had been reviewing to Flores. Flores testified that as a result of this rash decision to arrest Cook; "We are now in a predicament." (Flores 45:23-46:25).

### E.  Custom and Practice in "Off the Street" Complaints

Custom and practice would have been for Flores to conduct his investigation under the supervision of Ms. Aguilar-Tarchi and make an arrest if and when she thought there was enough evidence to justify obtaining an arrest warrant. **In cases like this, where the victim "comes in off the street", Inspector Flores tells them "it is up to the DA's office to go forward with the**

case." (Flores 24:20-25:15). This practice also applied to law enforcement officers accused of domestic violence. Cases were "worked-up" and the DA did a warrant review before an arrest was made. Cook is the only police officer Inspector Flores is aware of, in his seven years as an inspector in the DV unit, who was arrested **before** the DA's office completed the warrant review process. In most other cases where officers were accused, an arrest warrant did not issue. (Flores 28:15-30:21).

There were legitimate reasons to delay an arrest in these types of cases. When arrests are made at the scene there is typically corroborating evidence such as witnesses, a statement from the suspect, or physical injuries. Charges must be filed by the DA within 72 hours of the arrest. (Flores 14:4-16:19) However, when alleged victims wait to complain it is typically more difficult to build a case. Unless the suspect is a flight risk, or threatening the victim, an investigation will be conducted ("warrant work-up") so the DA can decide whether to prosecute the case. (Flores 24:7-30:9).

The warrant review process allows investigators an opportunity to interview suspects before they have been arrested. Investigators have time to obtain additional information needed to help the DA evaluate the case. According to Inspector Flores, the decision by Ashe and Sloan to arrest Cook was a "bad idea" that "compromised" his investigation. (Flores 46:2-47:8). Flores was "upset" that he was not able to interview Cook before the arrest. Flores wanted to hear Cook's "side of the story". (Flores 35:15-38:1). He realized that once Cook was arrested it was likely his lawyer would instruct Cook not to talk to investigators – which is what occurred. (Flores 37:5-18).

F.   **Cook is Denied His Request to Be Interviewed**

Capt. Ashe and Lt. Sloan denied Cook's request to be interviewed. This was done without consulting with the lead investigator assigned to the case, Inspector Flores, and without consulting with the DA (Aguilar-Tarchi) who would make the decision whether to prosecute. Sloan's excuse for arresting Cook before getting his statement was "it doesn't matter what you

PLAINTIFF'S SUPPLEMENTAL P&A IN OPP. TO DEFENDANTS' MTN FOR PARTIAL SUM. JUDG'T

say." (Cook Decl. ¶10; Ashe, 153:5-21)  This is direct evidence of malice and oppression and circumstantial evidence of discrimination.

### G. The District Attorney Never Brings Charges After Further Investigation

After two more months of investigation by the police department and the district attorney's office, a final decision was made not to prosecute based on insufficient evidence. (Flores Depo, 89:11-91:14)  Of course, this was no surprise to Captain Ashe.  Captain Ashe was told by ADA Aguilar-Tarchi that "she didn't like the case" and further investigative steps needed to be taken before a warrant could possibly issue. (Ashe Depo, 162:6-164:21)  On July 28, Captain Ashe learned that the DA's office did not intend to prosecute.  Captain Ashe testified that **"I wasn't surprised to learn that she thought the case was weak."** (Ashe Depo, 174:8-22)

## III. ARGUMENT

### A. Legal Standard Governing Motions for Summary Judgment

This court must resolve inferences in the light most favorable to plaintiff.  The decision as to an employer's true motivation is reserved to the trier of fact. *Peacock v. DuVal*, 694 F.2d 644, 646 (9th Cir. 1982); *Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir. 1994); see also, *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1986).

In *Lam v. University of Hawaii*, 40 F.3d 1551 (9th Cir. 1994), a female applicant of Vietnamese descent sued the state university's law school, alleging discrimination in the application process based on race, sex and national origin.  The evidence of bias on part of the members of an appointments committee precluded summary judgment. *Id.* at 1555.

The *Lam* decision addressed "the plausibility of inferences drawn from circumstantial evidence," finding that "[a]ntidiscrimination laws are not predicated upon the existence of . . . 'rational' discrimination; the problem that exists and which such laws target is, to a large extent, **stubborn but irrational prejudice.**" *Id.* at 1563.

In *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1986), an unsuccessful African-American female applicant for a city police officer position alleged that defendants' failure to hire her was result of discrimination on basis of race and sex.  The court held that the evidence raised

- 7 -

a material issue of fact as to whether city's motivation in failing to hire plaintiff was based on race. The court noted that:

> [A]n employer's true motive in an employment decision is **rarely** easy to discern. [W]ithout a searching inquiry into these motives, those acting for impermissible motives could easily mask their behavior behind a complex web of *post hoc* rationalizations.

*Id.* at 1009.

### B.     Discrimination in Violation of the Equal Protection Clause

Most cases involving selective enforcement of the law, whether through arrest or prosecution, involve the racial stereotyping of suspects. *Wayte v. U.S.*, 470 U.S. 598 (1985); *Whren v. U.S.*, 517 U.S. 806 (1996); *U.S. v. Montero-Camargo*, 208 F.3d 1122 (9th Cir.)(*en banc*). These are often "traffic stop" cases involving strangers. *Farm Labor Organizing Com. v. Ohio State Highway Patrol*, 308 F.3d 523 (6th Cir. 2002); *U.S. v. Bullock*, 94 F.3d 896 (4th Cir. 1996). These cases shed little light on evaluating this case.

The cases most helpful to analyzing this case are employment cases. They fall generally into two categories. First, cases of employment discrimination brought under Section 1983 against public employers. Cf., *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1986) and *Lam v. Univ. of Hawaii*, 40 F.3d 1551 (9th Cir. 1994). Second are cases involving discrimination based on interracial marriage. *Tetro v. Elliott Popham Pontiac*, 173 F3d 988 (6th Cir. 1999); *Parr v. Woodmen of the World Life Ins.Co.*, 791 F2d 888 (11th Cir.1986); and *Watson v. Nationwide Ins. Co.*, 823 F2d 360 (9th Cir. 1987) (court held that whether white employee had been constructively discharged as a result of her marriage to a black man was a question for the jury).

This case is not based just on arrest. Rather, it was a series of discriminatory acts by defendants Ashe and Sloan that included a warrantless arrest. The discriminatory acts include:

1. Cook was not allowed to give a statement or be interviewed by police inspectors before he was arrested. This compromised the investigation and was contrary to custom and practice.

2. A bail enhancement was sought and obtained. According to Inspector Flores a bail enhancement was not warranted.

3. Custom and practice would require that the police inspectors, in a case where the alleged victim waited days to complain, "work the case up for a warrant." This should have happened in this case, but didn't. Cook is the only police officer arrested **before** the case was worked up for a warrant.

4. Cook was immediately suspended for 60 days – yet he was not prosecuted and his administrative investigation was far from being completed. No other San Francisco police officer was immediately suspended for domestic violence where the District Attorney did not prosecute the case.

The ultimate issue is discrimination. That is an issue of intent. Cook was treated differently than other officers similarly situated. Was it simply a "coincidence" that Cook was treated punitively and differently than other officers, or was it because he is a black man married to a white woman? **Drawing inferences in favor of Cook**, the evidence supports an inference of discrimination.

### C. Plaintiff's Renewed Rule 56(f) Motion for Additional Discovery

The plaintiff noticed the depositions of Inspector Don Ciardella and Captain Leroy Lindo. They were both percipient witnesses to the circumstances surrounding Inspector Cook's arrest. In addition, Captain Lindo is an expert in domestic violence investigations and an African-American officer. Captain Lindo was expected to testify that Inspector Cook was a victim of racial discrimination in this case. Defendant's counsel refused to produce these witnesses for deposition on the basis that this court's order of February 15, 2008, some how prohibited these depositions. Because an appeal from this court's order on this motion is likely, the plaintiff would like an opportunity to "build his record" to support his claims. Accordingly, should this court be at all inclined to grant this motion, plaintiff requests a further continuance so that he may take the depositions of Inspector Ciardello and Captain Lindo.

PLAINTIFF'S SUPPLEMENTAL P&A IN OPP. TO DEFENDANTS' MTN FOR PARTIAL SUM. JUDG'T

## IV. CONCLUSION

For the foregoing reasons, plaintiff Clifford Cook respectfully requests that this Court deny defendants' motion for partial summary judgment.

Date: April 18, 2008                                                             **SCOTT LAW FIRM**


By: _____/s/_____
JOHN HOUSTON SCOTT
Attorney for Plaintiff


F:\Cases\Cases - Active\Cook\Federal Case\Pleadings\Summary Judgment 2\P&AOppSJ2.041408.doc