# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

---oOo---

| | |
|---|---|
| CLIFFORD COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. C-07-02569 CRB |
| CITY AND COUNTY OF SAN ) | |
| FRANCISCO, ANTONIO FLORES, DON ) | |
| SLOAN, MARSHA ASHE, and DOES ) | |
| 1-50, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

DEPOSITION OF LIEUTENANT DON SLOAN

March 17, 2008

REPORTED BY:  A. MAGGI SAUNDERS,

C.S.R. No. 2755



A. Maggi Saunders & Associates
Certified Shorthand Reporters
57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755
(415) 383-6281

CLIFFORD COOK VS. CCSF, FLORES, SLOAN, ASHE, ET AL.    Depo of LT. DONALD SLOAN
USDC, NORTHERN DIST OF CA No. C-07-02569 CRB    March 17, 2008

Case 3:07-cv-02569-CRB   Document 82-9   Filed 04/18/2008   Page 3 of 6

## Page 1

```
       IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF CALIFORNIA
                    ---oOo---

CLIFFORD COOK,                 )
              Plaintiff,       )
      vs.                      )
                               )  No. C-07-02569 CRB
CITY AND COUNTY OF SAN         )
FRANCISCO, ANTONIO FLORES, DON )
SLOAN, MARSHA ASHE, and DOES   )
1-50, inclusive,               )
                               )
              Defendants.      )
                               )



         DEPOSITION OF LIEUTENANT DON SLOAN
                  March 17, 2008






REPORTED BY: A. MAGGI SAUNDERS,
             C.S.R. No. 2755
```

## Page 2

```
                    I N D E X

                                            Page
Examination by MR. SCOTT                     6

                    E X H I B I T S

FOR PLAINTIFF                               Page
 1    San Francisco Police Department        82
      Chronological of Investigation,
      July 26, 2005
 2    One-page Memorandum, January 11,      112
      2005, RE: Daily Expectations and
      Investigation Expectations
```

## Page 3

BE IT REMEMBERED that, pursuant to Notice of Taking Deposition, and on Monday, the 17th day of March, 2008, commencing at the hour of 1:00 o'clock p.m. thereof, at the SCOTT LAW FIRM, 1375 Sutter Street, Suite 222, San Francisco, California 94109, (415) 561-9600, before me, A. MAGGI SAUNDERS, a Certified Shorthand Reporter in and for the State of California, there personally appeared

LIEUTENANT DON SLOAN,

called as a witness by the Plaintiff CLIFFORD COOK, who, being by me first duly sworn, was thereupon examined and interrogated as hereinafter set forth.

---oOo---

SCOTT LAW FIRM, 1375 Sutter Street, Suite 222, San Francisco, California 94109, (415) 561-9600, represented by JOHN HOUSTON SCOTT, ESQ., appeared as counsel on behalf of Plaintiffs CLIFFORD COOK.

DENNIS J. HERRERA, CITY ATTORNEY, OFFICE OF THE CITY ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO, 1390 Market Street, Sixth Floor, San Francisco,

## Page 4

California 94102, (415) 554-3800, represented by MARGARET W. BAUMGARTNER, DEPUTY CITY ATTORNEY, appeared as counsel on behalf of Defendants CITY AND COUNTY OF SAN FRANCISCO, ET AL..

LEGAL VIDEOS, LLC, 4340 Redwood Highway, Suite 150, San Rafael, California 94903, (415) 459-7672, represented by GABE ABENDROTH, TRIAL TECHNICIAN/VIDEOGRAPHER, appeared to Videotape the proceedings on behalf of THE PLAINTIFF.

ALSO PRESENT WAS CLIFFORD COOK, THE PLAINTIFF.

Depo of LT. DONALD SLOAN    CLIFFORD COOK vs. CCSF, FLORES, SLOAN, ASHE, ET AL.
March 17, 2008    USDC, NORTHERN DIST OF CA, No. C-07-02569 CRB
Case 3:07-cv-02569-CRB    Document 52-4    Filed 04/18/2008    Page 4 of 6

### Page 85

1 because I don't see an exact time that we left here;
2     So, it would have been between 2130
3 hours and 2200, if you consider driving time back to
4 850 Bryant Street.
5   Q.  Now, as of 2040 hours, which would be
6 10:00 p.m. on July 26th, did you think you had probable
7 cause to arrest Inspector Cook?
8   A.  I believe so.
9   Q.  Okay. Is there any reason why you didn't?
10     MS. BAUMGARTNER: Objection: It's been
11 asked and answered.
12     THE WITNESS: Contacted my superiors.
13     MR. SCOTT: Q. Okay. Do you normally do
14 that before you arrest someone?
15   A.  No.
16   Q.  And did you go back to the Department that
17 evening and review the tape with Inspector Flores?
18   A.  I don't recall doing that, no.
19   Q.  Okay. And did you meet with Inspector
20 Flores the next morning at about 8:00 a.m.?
21   A.  (Looking at the report) Yes.
22   Q.  And did you tell him to do a sniffer
23 query?
24   A.  Yes, I did.
25   Q.  And why did you do that?

### Page 86

1   A.  I recall that, if I can find it -- and let
2 me back up here -- that the victim had stated that
3 Inspector Cook was doing computer queries of her
4 friends, and that those would be illegal, if he was
5 doing them, and the sniffer would show those queries.
6   Q.  Was Inspector Cook arrested for any CLETS
7 violations?
8   A.  I don't recall if he was or not.
9   Q.  Okay. Have you ever arrested any officer
10 for a CLETS violation?
11   A.  I have not, no.
12   Q.  Do you know of any who have been?
13   A.  I've read about them in the newspaper,
14 yes.
15   Q.  Other than that, you are not aware of any?
16   A.  No.
17   Q.  And you'll notice on page ten of
18 Exhibit 1, there is a reference to a meeting at
19 9:30 a.m. on the 27th; do you see that?
20   A.  Okay, yes.
21   Q.  And does this refresh your recollection,
22 in terms of who was present at that meeting?
23   A.  Yes.
24   Q.  And was Captain Keohane present?
25   A.  According to this, he was.

### Page 87

1   Q.  You don't remember him being there?
2   A.  I don't remember him being there.
3   Q.  Do you recall Captain Cashman being there?
4   A.  Yes, I do.
5   Q.  And were you present when Inspector Flores
6 was told to update the DA's Office on the incident?
7   A.  Apparently so.
8   Q.  And what did you understand to be the
9 reason for Inspector Flores updating the DA's Office on
10 the incident?
11   A.  I don't -- Other than to keep the DA in
12 the loop, I don't know. We would normally -- it would
13 be a normal practice to meet with the DA on a case.
14   Q.  Okay. And were you aware that Inspector
15 Cook had surrendered his firearms prior to July 27th?
16   A.  According to this, I was. So, yes.
17   Q.  So that wasn't a reason to arrest him, the
18 firearm issue?
19   A.  Not any more, no.
20   Q.  All right. And then the --
21     Is it your recollection that a decision
22 was made at the 9:30 meeting to arrest Inspector
23 Cook?
24   A.  I don't recall when the decision to arrest
25 Inspector Cook was made. I don't recall if it was made

### Page 88

1 in that meeting, or after that meeting.
2   Q.  All right. And who did you talk to about
3 this case after that meeting?
4   A.  My conversations would have been limited
5 to either Captain Ashe, or the inspectors involved with
6 the investigation.
7   Q.  Okay. So, if you learned of the decision
8 to arrest Inspector Cook after this meeting, it would
9 have been from Captain Ashe.
10   A.  Correct.
11   Q.  Did she ask for you to make a
12 recommendation in relation to that decision?
13   A.  She may have, yes.
14   Q.  What do you recall about that?
15   A.  I recall discussing the facts of the case
16 with her.
17   Q.  After the meeting, the 9:30 meeting.
18   A.  I don't know the time frame. It may have
19 been before the 9:30 meeting on the phone, or it may
20 have been after, I don't recall the exact time.
21   Q.  Well, if you had discussed with Captain
22 Ashe making the arrest before the meeting, is that
23 something you discussed at the meeting, that you
24 intended to arrest Inspector Cook?
25   A.  It could have been part of the discussion.

Depo of LT. DONALD SLOAN    CLIFFORD COOK vs. CCSF, FLORES, SLOAN, ASHE, ET AL.
March 17, 2008                        USDC, NORTHERN DIST. OF CA, No. C-07-02569 CRB
Case 3:07-cv-02569-CRB    Document 52-4    Filed 04/18/2008    Page 5 of 6

## Page 109

1  A. I don't recall asking her.
2  Q. You just assumed that she was going to
3  prosecute?
4  A. (No audible response).
5  Q. Were you so convinced, you didn't think
6  you even had to ask her?
7      MS. BAUMGARTNER: Objection:
8  Argumentative. What's the question?
9      MR. SCOTT: Q. Were you so sure that she
10 was going to prosecute, that you felt you didn't even
11 have to ask her, when you saw her on the morning of
12 July 27?
13     MS. BAUMGARTNER: Objection: Vague;
14 assumes facts not in evidence, and is argumentative.
15     MR. SCOTT: Q. Go ahead.
16 A. I do not know what the DA is going to do.
17     Based on the information and what we
18 had, we made an arrest, with the best case we could
19 put together; and we believed we would have to get
20 more information, but we gave her for the DA the best
21 case we could.
22 Q. Okay. And that would have been the case
23 that was given to her by Inspector Flores on the
24 morning of the 27th.
25     MS. BAUMGARTNER: Objection: Vague.

## Page 110

1      THE WITNESS: No, I don't believe that the
2  morning of the 27th, that Inspector Flores would have
3  had the best case available. I know that Inspector
4  Flores was still working the case.
5      MR. SCOTT: Q. Okay. When did he have
6  the best case available?
7  A. I do not know.
8  Q. Okay. So, you weren't going to wait for
9  the best case available to make an arrest.
10 A. We were making an arrest based on
11 sufficient cause to make an arrest at that time.
12 Q. Now, if you would look at page one of
13 Exhibit No. 1, at 1500 hours, near the top of the page,
14 do you recall informing Inspector Flores at about
15 3:00 p.m. in the afternoon that you had Inspector Cook
16 in-custody?
17 A. I don't recall it, but, yes.
18 Q. And did you tell him that the EPO was
19 served?
20 A. Apparently so.
21 Q. And how did you learn that, did you serve
22 it --
23 A. I recall serving Inspector Cook -- Excuse
24 me -- when we were upstairs in the office.
25 Q. Okay. So you simultaneously served the

## Page 111

1  EPO and arrested him?
2  A. Arrested him, and then served the EPO,
3  yes.
4  Q. All right. And then it refers here to
5  "Requesting a bail enhancement"; do you see that?
6  A. Yes.
7  Q. So, you told Inspector Flores at 3:00 p.m.
8  that a bail enhancement had been requested?
9  A. Yes.
10 Q. Okay. Were you aware that Inspector
11 Flores talked to Ms. Aguilar-Tarchi on the evening of
12 the 27th, according to this document, at about
13 8:30 p.m.?
14 A. No. Reading this, I don't recall -- I
15 don't recall that he told me he had that conversation,
16 but he may have told me.
17 Q. Do you recall at some point learning about
18 that conversation?
19 A. I don't recall.
20 Q. And it indicates here that the next
21 morning, at 8:44 hours, Inspector Flores called you and
22 updated you on the investigation. Do you recall
23 anything about that?
24 A. I don't recall, no.
25 Q. Do you recall telling Inspector Flores

## Page 112

1  that you were in contact with the victim?
2  A. I don't recall telling him that, no.
3  Q. Were you in contact with the victim?
4  A. She had -- I was in contact with the
5  victim, yes.
6  Q. And what do you recall about that?
7  A. She would call my desk phone and leave
8  messages, or call the cell phone and leave a message.
9  Q. And did you call her and tell her that
10 Inspector Cook had been arrested?
11 A. I don't recall whether I called and told
12 her that or not.
13 Q. Did you ever tell her that?
14 A. I don't know.
15     It would make sense that she would have
16 been notified. That's something that would normally
17 have been done. I don't know who would have made
18 that notification.
19     MR. SCOTT: All right. Now, I'm going to
20 mark as Exhibit No. 2, a one-page memo, dated
21 January 11, 2005.
22     (One-page Memorandum, January 11, 2005,
23     RE: Daily Expectations and
24     Investigation Expectations marked
25     Plaintiff's Exhibit 2 for

```
                            )
STATE OF CALIFORNIA  )   ss.
                            )
```

CERTIFICATE OF REPORTER

I, A. MAGGI SAUNDERS, a Certified Shorthand Reporter in and for the State of California, duly appointed and licensed to administer oaths and so forth, do hereby certify:

That the witness named in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth;

That the deposition was reported by me, a Certified Shorthand Reporter and disinterested person, and thereafter transcribed into typewriting under my direction;

That if the deposition has not been signed by the time of trial, a reasonable opportunity having been given the witness to do so, signature has been waived in accordance with stipulation between counsel.

IN WITNESS WHEREOF, I have hereunto set my hand and subscribed my signature this 18th day of March, 2008.

*A. Maggi Saunders CSR*

A. MAGGI SAUNDERS, C.S.R. No. 2755,
Certified Shorthand Reporter,
In and For the State of California

A. Maggi Saunders & Associates
Certified Shorthand Reporters
57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755
(415) 383-6281