EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

---oOo---

CLIFFORD COOK,)
)
       Plaintiff,)
)
  vs.)
) No. C 07 02569 CRB
)
CITY AND COUNTY OF SAN )
FRANCISCO, ANTONIO FLORES, DON )
SLOAN, MARSHA ASHE, and DOES )
1-50, inclusive,)
)
       Defendants.)
)
)

DEPOSITION OF DEPUTY CHIEF KEVIN CASHMAN

March 21, 2008

REPORTED BY:  A. MAGGI SAUNDERS,

C.S.R. No. 2755



A. Maggi Saunders & Associates
Certified Shorthand Reporters
57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755
(415) 383-6281

```
 1         IN THE UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                      ---oOo---
 4   CLIFFORD COOK,                )
 5         Plaintiff,               )
 6   vs.                            )
                                    ) No. C 07 02569 CRB
 7                                  )
     CITY AND COUNTY OF SAN         )
 8   FRANCISCO, ANTONIO FLORES, DON )
     SLOAN, MARSHA ASHE, and DOES   )
 9   1-50, inclusive,               )
                                    )
10         Defendants.              )
11                                  )
12
13
14
15
16      DEPOSITION OF DEPUTY CHIEF KEVIN CASHMAN
17                 March 21, 2008
18
19
20
21
22
23
24   REPORTED BY: A. MAGGI SAUNDERS,
25        C.S.R. No. 2755
                                              Page 1
```

```
 1              I N D E X
 2
 3                                    Page
 4   Examination by MR. SCOTT           5
 5
 6              E X H I B I T S
 7
 8   FOR PLAINTIFF                     Page
 9   1    Inspector Flores' Chronological   10
                                              Page 2
```

```
 1       BE IT REMEMBERED that, pursuant to Notice
 2   of Taking Deposition, and continued by Stipulation,
 3   and on Friday, the 21st day of March, 2008,
 4   commencing at the hour of 12:15 o'clock p.m. thereof,
 5   at the SCOTT LAW FIRM, 1375 Sutter Street, Suite 222,
 6   San Francisco, California 94109, (415) 561-9600,
 7   before me, A. MAGGI SAUNDERS, a Certified Shorthand
 8   Reporter in and for the State of California, there
 9   personally appeared
10
11       DEPUTY CHIEF KEVIN CASHMAN,
12
13   called as a witness by the Plaintiff CLIFFORD COOK,
14   who, being by me first duly sworn, was thereupon
15   examined and interrogated as hereinafter set forth.
16
17                     ---oOo---
18
19       SCOTT LAW FIRM, 1375 Sutter Street, Suite
20   222, San Francisco, California 94109, (415) 561-9600,
21   represented by JOHN HOUSTON SCOTT, ESQ., appeared as
22   counsel on behalf of Plaintiff CLIFFORD COOK.
23
24       DENNIS J. HERRERA, CITY ATTORNEY, OFFICE OF
25   THE CITY ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO,
                                              Page 3
```

```
 1   1390 Market Street, Sixth Floor, San Francisco,
 2   California 94102, (415) 554-3800, represented by
 3   MARGARET W. BAUMGARTNER, DEPUTY CITY ATTORNEY,
 4   appeared as counsel on behalf of Defendants CITY AND
 5   COUNTY OF SAN FRANCISCO, ET AL..
 6
 7
 8   ALSO PRESENT WAS CLIFFORD COOK, THE PLAINTIFF.
                                              Page 4
```

```
 1                ---oOo---
 2           DEPUTY CHIEF KEVIN CASHMAN,
 3   called as a witness herein, being first duly sworn by
 4   the Certified Shorthand Reporter to tell the truth,
 5   the whole truth, and nothing but the truth, testified
 6   as follows:
 7   EXAMINATION BY MR. SCOTT:
 8       Q.   Deputy Chief Cashman, my name is John
 9   Scott, and I represent Clifford Cook in a lawsuit
10   that's pending right now.  Thank you for coming here
11   for your deposition today.
12            First of all, should I refer to you as
13   Deputy Chief, Mr., or what is the most appropriate?
14       A.   In law enforcement circles, it would just
15   be Chief, but you call me, you know, whatever you want
16   to call me.
17       Q.   Well, this is a formal proceeding --
18       A.   Okay.
19       Q.   -- so, I'll call you Chief.
20       A.   That would be fine.
21       Q.   Great.
22            Chief Cashman, have you ever had your
23   deposition taken before?
24       A.   Yes, I have.
25       Q.   And are you familiar with the procedures?
                                                      Page 5

 1       A.   Yes, I am.
 2       Q.   Just a couple comments:
 3            If at any time you want to take a break,
 4   just say so, we can take a break for any reason.
 5            If you don't understand one of my
 6   questions, please say so, I'll try to rephrase it.
 7            Try to wait for me to finish my question
 8   before you answer, because it's hard for the Court
 9   Reporter to take two people talking at once.
10            And, also, try to answer audibly, with
11   words, such as "yes" or "no," instead of "uh-huh," or
12   nods of the head.  Fair enough?
13       A.   Fair enough.
14       Q.   Chief, do you know Clifford Cook?
15       A.   Yes, I do.
16       Q.   And did -- Well, was he part of your chain
17   of command back in July of 2005?
18       A.   Yes, he was.
19       Q.   And do you recall how he was in your chain
20   of command at that time?
21       A.   I was -- at that time I was serving as the
22   Commanding Officer, or Captain of the Personal Crime
23   section of the Bureau of Investigations.
24            And in that role I supervised multiple
25   units, one unit, or managed multiple units.
                                                      Page 6

 1   One of the units was the Robbery Division.
 2            Inspector Cook worked in the Robbery
 3   Division, under Lieutenant John Loftus.  Lieutenant
 4   Loftus reported to me.
 5       Q.   Okay.  Had you had any contact with
 6   Inspector Cook professionally prior to that time?
 7       A.   Yes.
 8       Q.   And in what capacity?
 9       A.   Inspector Cook and I worked together, I
10   want to say, back in, you know, approximately 1992,
11   '93.  I was a Sergeant overseeing the Street Crimes
12   Unit.  It was called the Crime Supression Unit.  It was
13   a short-lived unit, it was around six months, did some
14   tremendous work, plainclothes, undercover-type thing,
15   narcotics enforcement, robbery abatement, stakeouts,
16   things like that.
17       Q.   All right.
18            Do you recall having it brought to your
19   attention sometime in July of 2005, that Inspector
20   Cook's wife had made a complaint of domestic violence,
21   or something in that -- close to that?
22       A.   Yes, I do.
23       Q.   Do you recall how you first became aware?
24       A.   I believe I was contacted initially via
25   phone, and then in-person by Lieutenant Loftus.  It was
                                                      Page 7

 1   from Lieutenant Loftus, as I recall.
 2       Q.   And at that point, were any steps taken to
 3   have any guns taken from Inspector Cook?
 4       A.   There was a -- procedurally a memo was
 5   constructed from Lieutenant Loftus memorializing the
 6   conversation I believe he had with Inspector Cook's
 7   wife.
 8            I think that went through the chain of
 9   command, from Lieutenant Loftus, to me, to Deputy
10   Chief Tabak.
11            Routinely, that would be taken --
12   administratively, the Chief's office would be notified
13   on that.  So, they would make the determination whether
14   or not a decision would be made to take the gun issued
15   for him.
16       Q.   Okay.  And, to your knowledge, did that
17   happen?
18       A.   I believe it did happen, yes.
19       Q.   All right.  And to your knowledge, did
20   Inspector Cook have any objection to that?
21       A.   No.  I do not recall any objection.
22       Q.   And do you recall when the next -- what
23   the next contact you had with anyone regarding these
24   allegations?
25       A.   The next contact, it may have been the
                                                      Page 8
```

CLIFFORD COOK VS. CCSF, ET AL.  Multi-page Deposition of DEPUTY CHIEF KEVIN CASHMAN
USDC, Northern Dist. of CA, No. C07-02568 CRB    March 21, 2008
Case 3:07-cv-02569-CRB   Document 52-5   Filed 04/18/2008   Page 5 of 6

**Page 17**

1  But I don't recall him being there --
2  Q. Okay.
3  A. -- but he may have been.
4  Q. But this meeting took place in your
5  office?
6  A. Well, there is an anteroom, a conference
7  room adjacent to -- There is three offices, and there
8  is a conference room. I believe it was in that
9  conference room.
10  Q. All right. And do you recall it kind of
11  beginning with everyone present, and then it ended, and
12  everyone left, or do you recall people
13  coming-and-going?
14  A. It seems to me, that day, some people were
15  coming-and-going: Specifically Captain Ashe and
16  Lieutenant Sloan.
17  It would not be uncommon for Deputy
18  Chief Tabak and I to remain in the office area there,
19  because that's our primary work station.
20  Q. Okay. Do you recall Deputy Chief Tabak
21  deciding at that meeting to do an arrest?
22  A. No, I don't recall Deputy Chief Tabak
23  making any decision regarding an arrest.
24  Q. Do you recall a decision being made at
25  that meeting regarding an arrest?

**Page 18**

1  A. I don't -- I couldn't say at that meeting
2  that a decision was made. Sometime that day I was
3  advised that a decision had been made.
4  Q. Okay. If a decision would have been made
5  at that meeting to do an arrest, who would have had the
6  authority to make that arrest?
7  MS. BAUMGARTNER: Objection: Calls for
8  speculation.
9  MR. SCOTT: Boy, if he doesn't know, who
10  would know?
11  MS. BAUMGARTNER: Well, I mean, you are
12  talking about if's. And there could be other factors.
13  I'm stating my objection for the record.
14  MR. SCOTT: Q. Go ahead.
15  A. I'm sorry, could you repeat the question.
16  Q. Yes. If a decision had been made at that
17  meeting to arrest Inspector Cook, who would have
18  had the -- who is the highest-ranking person there with
19  the authority to either approve or okay that decision?
20  A. Well, the person with the most
21  information. But the -- It would --
22  I mean, you are asking, who has the
23  authority to arrest this individual, and --
24  Q. To make that decision, yes.
25  A. Well, a police officer can make an arrest

**Page 19**

1  with probable cause --
2  Q. Right.
3  A. -- at any time. So, anybody with probable
4  cause legally could make the arrest.
5  Q. Right. I understand that.
6  A. That's my answer.
7  Q. Okay. So, there was no reason to discuss
8  whether to arrest -- whether it was -- whether
9  Captain -- I'm sorry -- Inspector Cook should be
10  arrested or not at this meeting, correct?
11  A. Well, I just -- You know, I kind of
12  answered that a few times now:
13  Only that I know a decision was made
14  prior to the arrest. Whether it was at that meeting,
15  I couldn't definitely say it was at that meeting, or
16  during this ebb-and-flow of people going in and out
17  of Room 400 --
18  Q. Okay.
19  A. -- so it -- at some time a decision was
20  made to make the arrest.
21  Q. Let me ask it in another way.
22  A. Sure.
23  Q. At that meeting at 9:30 in the morning,
24  did you hear Captain Ashe say, "I'm going to arrest --
25  I've made a decision to arrest Inspector Cook?

**Page 20**

1  MS. BAUMGARTNER: Objection: It's been
2  asked and answered. Go ahead.
3  THE WITNESS: I don't recall specifically
4  that that was said at that meeting.
5  MR. SCOTT: Q. Okay. And Captain Cook
6  could have been arrested the day before, correct?
7  A. I --
8  MS. BAUMGARTNER: Objection: Calls for
9  speculation.
10  MR. SCOTT: Q. I'm sorry, Inspector Cook
11  could have been arrested the day before, correct?
12  A. Well, I -- If the Inspector, or whoever is
13  assigned to the investigation had probable cause, an
14  arrest could have been effected.
15  Q. Okay.
16  A. But I didn't have probable cause. I
17  didn't have any primary evidence. I didn't do any
18  investigation, so I'm -- I'd be speculating.
19  Q. Simply because you think you have probable
20  cause doesn't mean you have to arrest someone, correct?
21  A. That's correct.
22  Q. In fact, oftentimes, arrests are delayed,
23  even though there is probable cause?
24  A. That's correct.
25  Q. For a lot of reasons, right?

```
                    )
STATE OF CALIFORNIA )    ss.
                    )
```

## CERTIFICATE OF REPORTER

I, A. MAGGI SAUNDERS, a Certified Shorthand Reporter in and for the State of California, duly appointed and licensed to administer oaths and so forth, do hereby certify:

That the witness named in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth;

That the deposition was reported by me, a Certified Shorthand Reporter and disinterested person, and thereafter transcribed into typewriting under my direction;

That if the deposition has not been signed by the time of trial, a reasonable opportunity having been given the witness to do so, signature has been waived in accordance with stipulation between counsel.

IN WITNESS WHEREOF, I have hereunto set my hand and subscribed my signature this 2nd day of April, 2008.

*A. Maggi Saunders CSR*

A. MAGGI SAUNDERS, C.S.R. No. 2755,
Certified Shorthand Reporter,
In and For the State of California