# EXHIBIT E

```
           IN THE UNITED STATES DISTRICT COURT

         FOR THE NORTHERN DISTRICT OF CALIFORNIA

                       ---oOo---

CLIFFORD COOK,                      )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )
                                    )   No. C-07-02569 CRB
                                    )
CITY AND COUNTY OF SAN              )
FRANCISCO, ANTONIO FLORES, DON      )
SLOAN, MARSHA ASHE, and DOES        )
1-50, inclusive,                    )
                                    )
          Defendants.               )
                                    )
_____)
```

DEPOSITION OF ELIZABETH AGUILAR-TARCHI

March 21, 2008

REPORTED BY:  A. MAGGI SAUNDERS,

C.S.R. No. 2755

**DISK ENCLOSED**



A. Maggi Saunders & Associates
Certified Shorthand Reporters
57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755

(415) 383-6281

```
 1         IN THE UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                   ---oOo---
 4  CLIFFORD COOK,              )
 5         Plaintiff,            )
 6  vs.                          )
                                 ) No. C-07-02569 CRB
 7                               )
    CITY AND COUNTY OF SAN       )
 8  FRANCISCO, ANTONIO FLORES, DON )
    SLOAN, MARSHA ASHE, and DOES  )
 9  1-50, inclusive,             )
10         Defendants.            )
11                               )
12
13
14
15
16       DEPOSITION OF ELIZABETH AGUILAR-TARCHI
17                March 21, 2008
18
19
20
21
22
23
24  REPORTED BY: A. MAGGI SAUNDERS,
25              C.S.R. No. 2755
                                                    Page 1
```

```
 1                 I N D E X
 2
 3                                           Page
 4  Examination by MR. SCOTT                   5
 5
 6                 E X H I B I T S
 7
 8  FOR PLAINTIFF                             Page
 9  1    July 28, 2005, Two-page memo from    24
10       E. Aguilar-Tarchi, RE: Discharge
11       27
12  2    Warrant Declination Memorandum, one  36
13       page
14
...
25
                                                    Page 2
```

```
 1         BE IT REMEMBERED that, pursuant to Notice
 2  of Taking Deposition, and on Friday, the 21st day of
 3  March, 2008, commencing at the hour of 10:00 o'clock
 4  a.m. thereof, at the SCOTT LAW FIRM, 1375 Sutter
 5  Street, Suite 222, San Francisco, California 94109,
 6  (415) 561-9600, before me, A. MAGGI SAUNDERS, a
 7  Certified Shorthand Reporter in and for the State of
 8  California, there personally appeared
 9
10         ELIZABETH AGUILAR-TARCHI,
11
12  called as a witness by the Plaintiff CLIFFORD COOK,
13  who, being by me first duly sworn, was thereupon
14  examined and interrogated as hereinafter set forth.
15
16                 ---oOo---
17
18         SCOTT LAW FIRM, 1375 Sutter Street, Suite
19  222, San Francisco, California 94109, (415) 561-9600,
20  represented by JOHN HOUSTON SCOTT, ESQ., appeared as
21  counsel on behalf of Plaintiff CLIFFORD COOK.
22
23         DENNIS J. HERRERA, CITY ATTORNEY, OFFICE OF
24  THE CITY ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO,
25  1390 Market Street, Sixth Floor, San Francisco,
                                                    Page 3
```

```
 1  California 94102, (415) 554-3800, represented by
 2  MARGARET W. BAUMGARTNER, DEPUTY CITY ATTORNEY,
 3  appeared as counsel on behalf of Defendants.
 4
 5  ALSO PRESENT WAS CLIFFORD COOK, THE PLAINTIFF.
                                                    Page 4
```

---oOo---

ELIZABETH AGUILAR-TARCHI,
called as a witness herein, being first duly sworn by
the Certified Shorthand Reporter to tell the truth,
the whole truth, and nothing but the truth, testified
as follows:

EXAMINATION BY MR. SCOTT:

Q. Good morning.
A. Good morning.
Q. Do you pronounce it Aguilar-Tarchi, or Tarchi?
A. It's "Tarchi".
Q. Tarchi, okay.
A. But you can just say Tarchi, that's fine.
Q. Okay. Do you usually go by "Aguilar-Tarchi"?
A. Formally written; and the judges, usually just "Tarchi" is fine.
Q. Okay. Well, it's easier for me to say.
   Ms. Tarchi, my name is John Scott, and I'm an attorney and I represent Clifford Cook, who is present, in a lawsuit that he's brought against the City and County of San Francisco, and others, regarding an arrest that was made on him on July 27th of 2005, I believe, 2005.

Page 5

   And we're here today to take your deposition, and thank you for being here.
   I guess, first of all, let me ask you, have you ever had your deposition taken before?
A. No.
Q. All right. Let me make just a few brief observations:
   Would it be fair to say that, as a licensed attorney and member of the DA's Office, you are familiar with the process of examining and cross-examining witnesses.
A. Yes.
Q. All right.
   Well, the oath that you took here is the same oath that would be taken in a court of law; and although this is a somewhat informal procedure, this is an official court proceeding.
   And I guess, the only thing to remind you of is that the rules of evidence that would apply in a court proceeding do not, for the most part, apply in a deposition, for example.
   I'm allowed to ask questions that would elicit hearsay information.
   And, so, for example, a question that asks for hearsay would be proper in a deposition, and it

Page 6

could be objected to at trial.
   Also, we don't have anybody ruling here on objections.
   And the attorney for the City --
   Oh, by the way, is Ms. Baumgartner representing you here today?
A. Yes.
Q. Okay. She may make objections from time to time, but we don't have anyone here to rule on the objections.
   And that means that, unless she instructs you not to answer, you should go ahead and answer the question, if you can. Do you understand that?
A. Yes.
Q. Great.
   Also, if you would like to take a break for any reason, please say so, and we can take a break.
   This is not an endurance contest, and I want you to be comfortable. And don't be afraid to just at any time say, "I'd like to take a break," and we can do that.
A. (Nodding head.)
Q. Let me start off by asking you, do you have any recollection of the day, Clifford Cook, when he was arrested, and having any information about that?

Page 7

A. Yes.
Q. Okay. So you do have some independent recollection?
A. Yes.
Q. Okay. And what do you recall independently about that day?
A. I remembered being in an office with two Inspectors of the Domestic Violence Response Unit.
Q. Okay.
A. And a then-Lieutenant Sloan, I believe, had walked in and said, "There has been an arrest. There is nothing to discuss."
   And that was it. I do remember that.
Q. All right. And were those Inspectors Flores and Ciardella?
A. Yes.
Q. Okay. And what did you understand to be the purpose of that meeting?
A. The purpose of the --
   Well, it wasn't a "meeting". They had come down --
Q. Okay.
A. -- and they were informally asking some questions about a situation. It was not anything formal.

Page 8

**Page 9**

1  Q. Did they have a case file with them?
2  A. No, not to my recollection. Not a
3  formal -- I never reviewed any formal paperwork.
4  Q. Okay. And how long did that meeting last
5  with them?
6  A. It was rather brief; probably less than
7  ten minutes.
8  Q. Okay. And had they made an appointment
9  ahead of time to come there?
10  A. No.
11  Q. Okay. So these inspectors --
12  And would this be unusual, for
13  Inspectors to come to your office?
14  A. No.
15  Q. Okay. So, this would be a routine kind of
16  situation?
17  A. Yes.
18  Q. And would Inspectors sometimes come to
19  your office to ask you to review a case for particular
20  purposes?
21  A. Yes.
22  Q. And what would those purposes be?
23  A. Well, it varied. I was the Supervising
24  Attorney of the Unit; so, sometimes it was formal;
25  sometimes it was informal;

**Page 10**

1  Sometimes I'd walk in a hallway, and
2  they'd say, "I'm going to talk to you about a
3  situation, I'll drop in in a minute."
4  "Okay, great."
5  So, there were various ways for which
6  people would come to me, or Inspectors.
7  Q. And on some occasions, would it be to have
8  you review a case file to determine whether a case
9  could be charged?
10  A. Yes.
11  Q. And on other occasions, would it be to --
12  for the purpose of working-up a case for a warrant?
13  A. Yes.
14  Q. Okay. And what would other purposes be?
15  A. Informal: "I'm looking at a situation.
16  We have a victim saying 'X,' any views on how I might
17  work-it-up."
18  That kind of thing.
19  Q. Okay. And when you were meeting that
20  morning with Inspectors Flores and Ciardella, what did
21  they tell you about the Clifford Cook case?
22  A. I cannot independently recall the
23  specifics.
24  I remembered them saying it was a
25  sensitive situation, "because a member of the San

**Page 11**

1  Francisco Police Department was a suspect."
2  And I said, "Well, I appreciate your
3  telling me that," because that would be something I
4  would have to inform my front office.
5  That is what I do clearly remember.
6  I think I remembered asking the name -- no
7  offense to Inspector Cook -- I did not even -- The name
8  sounded familiar, but I'm better with faces.
9  So, I just said, "Okay. Fine."
10  Put that aside. And then it was
11  informal, about the fact pattern. That, I do not
12  specifically independently recall.
13  I do remember it was a domestic violence
14  dispute, or alleged incident.
15  Q. And --
16  A. That it wouldn't have been coming to me.
17  Q. And did you ask them if Inspector Cook had
18  been interviewed?
19  A. Excuse me. I'm sorry?
20  Q. Did you ask them if Inspector Cook had
21  been interviewed?
22  A. I do not recall asking that. I don't
23  remember.
24  Q. Do you remember if that issue came up?
25  A. I don't recall that.

**Page 12**

1  Q. Okay. And did they -- Did they tell you
2  that they wanted you to review the case for any
3  particular purpose?
4  A. No; because, again, it wasn't a rebooking.
5  I don't think we ever got that far
6  because, as I said, the meeting was brief.
7  But, obviously, their purpose must have
8  been to tell me, "We have a situation. What might be
9  needed by your office? What might you look at,"
10  based on my experience.
11  Q. So, based on your experience, was it your
12  understanding they were there to either find out if you
13  thought there was enough to charge the case, or whether
14  it should be worked-up for a warrant?
15  A. No. It was neither a warrant workup --
16  that's a very different precise -- because they would
17  come down with a packet --
18  Q. Okay.
19  A. -- and I would have a formal memo that I
20  would prepare to say, "Oh, it's a warrant review."
21  It was not that; I definitely I know it
22  wasn't that.
23  And it was not a rebooking, i.e., there
24  was no one under arrest, that would trigger me
25  filling out a particular form, to make a decision

```
                        )
STATE OF CALIFORNIA  )    ss.
                        )
```

### CERTIFICATE OF REPORTER

I, A. MAGGI SAUNDERS, a Certified Shorthand Reporter in and for the State of California, duly appointed and licensed to administer oaths and so forth, do hereby certify:

That the witness named in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth;

That the deposition was reported by me, a Certified Shorthand Reporter and disinterested person, and thereafter transcribed into typewriting under my direction;

That if the deposition has not been signed by the time of trial, a reasonable opportunity having been given the witness to do so, signature has been waived in accordance with stipulation between counsel.

IN WITNESS WHEREOF, I have hereunto set my hand and subscribed my signature this 31st day of March, 2008.

*A. Maggi Saunders CSR*

A. MAGGI SAUNDERS, C.S.R. No. 2755,
Certified Shorthand Reporter,
In and For the State of California

A. Maggi Saunders & Associates
Certified Shorthand Reporters
57 Plymouth Avenue, Mill Valley, California 94941

License No. 2755
(415) 383-6281