DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH SALVESON, State Bar #83788
Chief Labor Attorney
MARGARET W. BAUMGARTNER, State Bar #151762
ADELMISE R. WARNER, State Bar #215385
Deputy City Attorneys
Fox Plaza
1390 Market Street, Floor No. 5
San Francisco, California 94102-5408
Telephone:   (415) 554-3959
Facsimile:   (415) 554-4248

Attorneys For Defendants
CITY AND COUNTY OF SAN FRANCISCO ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>           Plaintiff,<br><br>      vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ANTONIO FLORES, DON SLOAN, MARSHA ASHE, and DOES 1-50, inclusive,<br><br>           Defendants. | Case No. C 07-02569 CRB<br><br>**SUPPLEMENT REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND OPPOSITION TO MOTION TO CONTINUE**<br><br>Date:  May 9, 2008<br>Time:  10:00 a.m.<br>Place:  Courtroom 8, 19th Fl.<br><br>Date action filed:  May 15, 2007<br>Trial date:  None set |

i
**Supp Reply MPA/MSJ, Case No. C 07 2569 CRB**               n:\labor\li2007\080165\00480049.doc

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii
INTRODUCTION ..............................................................................................................1
STATEMENT OF FACTS ..................................................................................................2
PROCEDURAL HISTORY.................................................................................................2
ARGUMENT......................................................................................................................3
    I.    COOK FAILED TO PRESENT ANY EVIDENCE SHOWING DISCRIMINATORY PURPOSE FOR HIS SELECTIVE ENFORCEMENT CLAIM...............................................................................................................3
    II.    EVEN APPLYING EMPLOYMENT DISCRIMINATION STANDARDS, COOK CANNOT PREVAIL......................................................................................4
    III.    COOK MAKES CONCLUSIONS UNSUPPORTED BY THE EVIDENCE ........5
        1.    The Investigation Contained Evidence of Prior Threats and Violence Perpetrated by Inspector Cook .........................................5
        2.    Obtaining a Warrant Prior to An Arrest is Not "Custom and Practice." ...........................................................................................6
        3.    Captain Cashman and Inspector Flores Did Not Deny That Captain Ashe Decided to Arrest Cook at the Morning Meeting......7
        4.    Flores Thought A Bail Enhancement Unnecessary Because Serious Nature of Charges Would Raise Bail Amount...................7
        5.    Flores Believed that Even Though it Might Interfere With His Investigation, Arresting Cook was A Good Idea ............................7
        6.    Cook Did Not Ask to Be Interviewed Prior to His Arrest ...............8
    IV.    NO FINAL POLICY MAKER RATIFIED ANY DISCRIMINATORY CONDUCT AND THEREFORE COOK'S *MONELL* CLAIM FAILS ..................9
    V.    COOK FAILED TO MAKE A SUFFICIENT SHOWING FOR FURTHER DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(f)..........9
CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

**State Cases**

*Cotran v. Rollins Hudig Hall Int'l, Inc.*
   (1998) 17 Cal.4th 93 ...........................................................................................................5

**Federal Cases**

*Bordenkircher v. Hayes*
   434 U.S. 357 (1977) ............................................................................................................3

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. The Clorox Company*
   353 F.3d 1125 (9th Cir. 2004) ............................................................................................9

*Gay v. Waiters' and Diary Lunchmen's Union*
   694 F.2d 531 (9th Cir. 1982) ..............................................................................................4

*Godwin v. Hunt Wesson, Inc.*
   150 F.3d 1217 (9th Cir. 1998) ............................................................................................5

*Monell v. Department of Social Services*
    436 U.S. 658 (1978).............................................................................................................9

*Oyler v. Boles*
   368 U.S. 448 (1962) ............................................................................................................3

*Raad v. Fairbanks North Star Borough School Dist.*
   323 F.3d 1185 (9th Cir. 2003) ............................................................................................4

*Schuler v. Chronicle Broadcasting Co.*
   793 F.2d 1010 (9th Cir. 1986) ............................................................................................4

*United States Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.*
   281 F.3d 929 (9th Cir. 2002) ..............................................................................................9

*Villiarimo v. Aloha Island Air, Inc.*
   281 F.3d 1054 (9th Cir. 2002) ............................................................................................5

*Wayte v. United States*
   470 U.S. 598 (1985) ............................................................................................................3

**Federal Statutes**

42 U.S.C.
   § 1983 ..................................................................................................................................3

Federal Rule of Civil Procedure
   § 12(b) .................................................................................................................................3

Federal Rules of Civil Procedure
   § 56(f) ........................................................................................................................3, 4, 10

ii

**INTRODUCTION**

Three experienced police officers testified that Inspector Clifford Cook's apparent escalating pattern of domestic abuse motivated and justified Cook's arrest for domestic violence. Lacking any actual evidence upon which to rely to refute this evidence, Cook cites vaguely to "inherent racism" as the basis of his Equal Protection claim. Because Cook cannot show racial motivation for his arrest, the Court should grant defendants' motion for partial summary judgment.

The San Francisco Police Department arrested Cook based on probable cause that he committed acts of domestic violence against his wife. Cook sued the City and three members of the Department, claiming that they arrested him because of his race (African-American) and that of his wife (Caucasian). Even after conducting five depositions, including that of the officers involved in the arrest, however, no evidence supports Cook's claim. Rather, the evidence shows that Captain Marsha Ashe "had the legal and ethical responsibility to make an arrest in this case" and that "this case is predicated on physical evidence, escalating violence, as reported by the victim, and lethality factors, that suggested this could easily be a domestic violence homicide." (Ashe Depo. p. 126:7-22.) Inspector Antonio Flores, the lead investigator, believed that Inspector Cook should have been arrested because "it was getting a little worse" and the "totality of everything" justified an arrest. (Flores Depo. p. 32:25-34:22.)

In his complaint, Cook's only allegation supporting his claim of an equal protection violation was his unsupported belief that the Department decided to arrest him "after the District Attorney's Office decided not to prosecute." Depositions taken by Cook have proven that allegation to be false. All of the deponents testified that the DA did not make that determination, nor communicate any such determination, prior to Cook's arrest. (See, e.g., Flores Depo. p. 45:24-46:10; Aguilar Tarchi Depo. p 12:1-13:24.) Cook can therefore no longer rely on this allegation, but must present other facts to support his claims. He has failed to do so.

Because Cook has not presented any specific and substantial evidence demonstrating that Captain Ashe did not honestly believe that an arrest was appropriate in this case, the Court should grant summary adjudication to the City and the individual defendants.

1

## STATEMENT OF FACTS

The Police Department received a report from Lisa Cook, Cook's wife, that Cook had thrown her down some stairs a week before. (Ex. 2 to Ashe Dec. filed Jan. 18, 2008.)  Medical evidence corroborated her story. (*Id*.)  When interviewed, Lisa Cook reiterated a long history of physical abuse, including a rape by her husband. (Exs. 1 and 2 to Ashe Dec.)  She also indicated that he had issued threats in the past, stating that he could find her wherever she was, and that he could "plan the perfect murder." (*Id*.)

After interviewing Lisa Cook and obtaining additional evidence, the Police Department met to discuss the case and the next steps. (Ex. 1 to Ashe Dec.)  At that meeting, Captain Marsha Ashe, the Captain in charge of the domestic violence unit, decided to conduct a custodial arrest of Inspector Cook. (Ashe Depo. p. 177:17-23.)  She made this decision on a long list of "lethality factors." (Ashe Dec. ¶ 8.)  She discussed, but rejected, the possibility of waiting to determine whether or not the DA would issue a warrant. (Ashe Depo. pp. 119:1-24; 179:14-180:2.)  The Department also decided to seek a bail enhancement.  Captain Ashe and Inspector Flores both testified that they believed these actions could create additional barriers to additional and possibly lethal violence on Inspector Cook's part. (Ashe Dec. ¶ 8, Flores Depo. p. p. 32:25-34:22.)

## PROCEDURAL HISTORY

Cook sued the City and three individual defendants under Title VII, FEHA, and 42 U.S.C. § 1983.  The claims against the individual defendants relate only to Cook's § 1983 cause of action for an Equal Protection violation.  Defendants moved to dismiss that claim under Federal Rule of Civil Procedure 12(b), but the court indicated that it would prefer to hear the issue on summary judgment rather than allowing amendment of the complaint.  The Court limited discovery to defendants' declarants, but indicated that if Cook believed additional discovery was necessary to oppose the motion, to bring a Rule 56(f) motion.

Defendants moved for summary judgment, submitting one declaration, from Captain Marsha Ashe.  Cook deposed Captain Ashe.  Cook then moved under Rule 56(f) for additional discovery, requesting the depositions of Lieutenant Donald Sloan, Inspector Flores, Captain Kevin Cashman,

2

1  and Assistant District Attorney Elizabeth Aguilar-Tarchi. The Court granted Cook's Rule 56(f)
2  motion, and ordered post-discovery supplemental briefing on the summary judgment motion.
3  Cook took the allowed depositions. He then noticed two additional depositions. The City
4  objected on the ground that these two additional depositions were not within the scope of the
5  Court's order, and were not necessary to oppose defendant's motion.
6  Cook filed his supplement opposition, and again moved for a continuance under Rule 56(f).
7  Cook did not, however, submit any declaration justifying the additional depositions that he has
8  requested.

## ARGUMENT

### I. COOK FAILED TO PRESENT ANY EVIDENCE SHOWING DISCRIMINATORY PURPOSE FOR HIS SELECTIVE ENFORCEMENT CLAIM

The standard for selective enforcement cases differs from the standard for proving an employment discrimination case because of the considerable discretion officers making arrest decisions must exercise. As the Court stated in *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) cases challenging discretionary enforcement decisions are "particularly ill-suited to judicial review." (*Id*.) "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." (*Id*.)

And, "'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1977) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Thus, only when "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" can a plaintiff prevail in a selective enforcement case.

Under these standards, Cook cannot prevail because he cannot show that Captain Ashe, the decision maker here, deliberated acted out of racial animus. He has provided no evidence that

Cook's race or that of his wife in any way motivated Captain Ashe's, or anyone else's actions. As further reiterated below, Captain Ashe fully explained her motivation. She decided to arrest Cook on the specific facts of the case, which to her indicated not only probable cause, but also Cook's potential for further violence. In response, all Cook cites to is "inherent racism." But he cites to no actual facts to support an inference of deliberate discrimination. He therefore has failed to carry his burden to avoid summary judgment on this claim.

## II. EVEN APPLYING EMPLOYMENT DISCRIMINATION STANDARDS, COOK CANNOT PREVAIL

Without indicating why he believes these cases to be inapplicable to his claim, Cook cites to employment cases. Even if the Court were to apply employment discrimination cases here, however, defendants have met their burden for summary judgment.

Here, Cook fails to present any evidence of racial motivation. Even if he did, defendants presented legitimate, non-discriminatory reasons for arresting Cook. They had probable cause. They believed that the pattern of behavior elicited during the investigation showed Cook's potentially escalating level of abuse towards his wife. As Captain Ashe stated, she believed that certain "lethality factors" suggested that arresting Cook was the best course of action.

Because defendants have articulated a legitimate reason for Cook's termination, Cook must "offer specific and significantly probative evidence that the employer's alleged purpose [was] a pretext for discrimination" to withstand the motion for summary judgment. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986); see also *Gay v. Waiters' and Diary Lunchmen's Union*, 694 F.2d 531, 546 (9th Cir. 1982) (plaintiff must provide evidence "from which one can infer, if such actions remain unexplained, that it is more likely than not" that the defendant's conduct was racially motivated). Cook can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (quotation omitted). He has done neither.

4

**Supp Reply MPA/MSJ, Case No. C 07 2569 CRB**                                n:\labor\li2007\080165\00480049.doc

Cook offers no direct evidence of improper motive – such as racist or otherwise discriminatory statements or actions – and therefore, to survive summary judgment he must come forward with circumstantial evidence that tends to show that defendants' proffered motives were not the actual motives because they are inconsistent or otherwise not believable.  Such evidence of "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the defendants intended to discriminate on an unlawful basis. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

For purposes of proving pretext, the pertinent question is not whether there is conflicting evidence on Cook's escalating level of violence, but whether there is a triable issue with respect to whether defendants "honestly believed its reason for its actions, even if its reason [was] foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002); see also *Cotran v. Rollins Hudig Hall Int'l, Inc.* 17 Cal.4th 93, 107 (1998).  That is to say, to survive summary judgment, Cook must proffer specific and substantial evidence demonstrating that defendants did not honestly believe that Cook was capable of escalating abuse.  All Cook says is that he was arrested because of "inherent racism."

Cook fails to provide any evidence that Captain Ashe's legitimate bases for arresting him are false, or that race motivated any of her decisions.  Therefore, he cannot prevail on his claim.

### III. COOK MAKES CONCLUSIONS UNSUPPORTED BY THE EVIDENCE

Cook makes many arguments in an attempt to bolster his claim.  Many of his arguments are based on a misstatement of defendants' testimony, or fails to include the deponent's explanations for their statements.  Although defendants do not believe that if true these allegations preclude summary judgment, defendants explain plaintiff's factual misstatements below.

#### 1. The Investigation Contained Evidence of Prior Threats and Violence Perpetrated by Inspector Cook

On Page 4 of his supplemental opposition, Cook asserts that "Lisa Cook never reported any threats. . . . There was no history of physical violence."  In fact, although Lisa Cook stated that Inspector Cook made no threats on July 19, 2005, the date of the incident that led to Cook's arrest, in the statement she gave the night before Cook's arrest she recounted a history of violence and

5

1  threats. She reported that Cook raped her, beat her, said he could find her where she was (which he
2  proved when he misused his police authority to run a computer search regarding her); and that he
3  could plan the "perfect murder." (Exs. 1 and 2 to Ashe Dec.)
4      Thus, Cook's statement is false. Lisa Cook did report threats and a history of physical
5  violence.

### 2. Obtaining a Warrant Prior to An Arrest is Not "Custom and Practice."

7      On page 7 of his Supplemental Opposition, Cook states that it is "custom and practice" to
8  obtain a warrant before making an arrest, citing to Inspector Flores' testimony. But Inspector Flores
9  never testified that it was the Department's custom and practice to obtain a warrant prior to arresting
10 a domestic violence suspect. Rather, he stated that the most common scenario is to arrest the
11 suspect at the scene (without a warrant), which occurs in about 75% of the cases. (Flores Depo. p.
12 14:10-16.) When a victim delays reporting domestic violence, such as here, "sometimes, if the
13 person is gone, it may be that there is a likelihood, after looking at the case in a whole, you can say,
14 'we need to find this person, and we need to go get them right now. . . . And so, you may just go out,
15 without presenting the case to the DA, and that person is arrested, based on the information that the
16 officers have." (Flores Depo. p. 17:9-18:10.) That is what occurred here. Lt. Sloan corroborated
17 Flores' testimony. When asked whether it was "normal policy and practice" to wait until the District
18 Attorney was ready to go to warrant before making an arrest, he said "not always." (Sloan Depo. p.
19 42:11-14.)
20     Moreover, when Flores was questioned as to why he sometimes tries to get a warrant, Flores
21 stated "in case the individual might have left town. They might have gone; they might have gone
22 someplace else. There are several factors of why." (Flores Depo. p. 18:25-19:4.) Here, Cook had
23 not gone anywhere, and the Police Department could find him and arrest him without a warrant.
24     Cook also cites to Inspector Flores' testimony that when a victim comes in off the street, that
25 Inspector Flores will tell the victim that "it is up to the DA's office to go forward with the case."
26 That is simply a statement of fact. Only the DA's office can prosecute. Moreover, Inspector Flores
27 went on to explain why he makes this statement to the victims. He stated: "there are some victims
28 out there that feel that - - that they still have this relationship, and it has to do with love. And within

6

**Supp Reply MPA/MSJ, Case No. C 07 2569 CRB**                                    n:\labor\li2007\080165\00480049.doc

this loving relationship that they have, they don't want to be the bad person. And sometimes they feel that, if they ever go back to the relationship, they can say 'you know, it wasn't be that was pressing charges against you. It was the State or the police of whoever.'" (Flores Depo. p. 24:14-26:13.) Flores never said that he tells victims that he will seek a warrant from the DA. Rather, he makes this statement as a means to get the victim to cooperate.

Flores *never* testified that it is the custom and practice to obtain a warrant in this situation. As Flores stated "I don't think [Cook's] case is different from other cases. I mean, if you took minus him being a police officer, there is several incidences where someone has been arrested later on, after the fact the incident has occurred." (Flores Depo. p. 98:12-17.)

### 3. Captain Cashman and Inspector Flores Did Not Deny That Captain Ashe Decided to Arrest Cook at the Morning Meeting

On page 6 of his Supplement Opposition, Cook states that Captain Kevin Cashman and Inspector Antonio Flores "denied that a decision to arrest Cook was made at [the July 27, 2005 morning] meeting." This is an incorrect reading of the testimony. Captain Cashman testified "only that I know a decision was made prior to the arrest. Whether it was at that meeting, I couldn't definitely say it was at that meeting . . . I can't recall specifically that that was said at that meeting." (Cashman Depo. p. 19:13-20.) Inspector Flores testified that he did not recall whether or not any decision was made at that meeting. (Flores Depo. p. 40:15-18.)

### 4. Flores Thought A Bail Enhancement Unnecessary Because Serious Nature of Charges Would Raise Bail Amount

Cook states that Flores did not believe that a bail enhancement was warranted in this case. Although Flores did make that statement Flores went on to state that the reason he did not believe a bail enhancement was warranted was because he believed that the charges would be so serious that the bail would be set high automatically. (Flores Depo. p. 44:13-20.)

### 5. Flores Believed that Even Though it Might Interfere With His Investigation, Arresting Cook was A Good Idea

Cook states on page 6 of his Supplemental opposition that Flores stated that arresting Cook was a "bad idea" because it "compromised" his investigation. These statements accurately reflect Flores' words, but not the totality of his testimony. Flores testimony was limited to the effect of the

7

arrest on his investigation, and did not address the greater public safety issues. (Flores Depo. "Q: So, as an Investigator, arresting him was a bad idea, wasn't it, from just the investigation point of view, of compromising your investigation? A: Yes.") When specifically asked whether the Department should have arrested Cook, Flores answered "yes." (Flores Dep. p. 32:25-33:12. "Q: Yeah. I'm trying to find out if you believe that Mr. Cook should have been arrested before the DA did a warrant review because of these escalating factors you've mentioned? A: Yes.")

Moreover, Cook implies that because Flores stated that Cook's arrest put him in a "predicament," that implies that Flores believed that the arrest was somehow wrong or inappropriate. But Flores' testimony makes clear that the "predicament" was merely an administrative one because he then had to complete lots of paperwork in a short period of time, not a legally questionable one. (See Flores pg. 44:15 ("We are now in a predicament, that now we have to gather all our documents; we have a police report to write; we have a bail enhancement to do; we have to get enough information documented on the Chronological Investigation Report. So it means we're going fast."))

Investigators always must balance the desire for additional evidence with protecting public safety by making an early arrest. Here, despite the effect on his investigation, Flores believed that the circumstances justified Cook's arrest.

### 6. Cook Did Not Ask to Be Interviewed Prior to His Arrest

Cook again argues that the Department's failure to interview him "before he was arrested" is evidence of "malice and oppression and circumstantial evidence of discrimination." But Cook's request to give a statement occurred when he was already under arrest. (Sloan Depo. p. 95:4-25.)

In its initial reply brief, defendants pointed out Cook's error. However, Cook has never addressed defendants' arguments on this matter. He continues to assert that he demanded to give a statement prior to his arrest, even though all of the evidence shows that when he made the request, he already was under arrest.

Additionally, Captain Ashe and Lieutenant Sloan testified as to their reasons for refusing to grant Cook's request for an interview. At that time, Cook did not have an attorney present. They believed that it was in Cook's best interest to wait until he had an opportunity to consult with an

attorney before making a statement.  (See Sloan Depo. p. 101:14-20.)  Cook lacks any evidence to suggest that this was not the true motivation.  Moreover, it is difficult to determine in this case how refusing to allow Cook to give a statement caused him any harm.

### IV.  NO FINAL POLICY MAKER RATIFIED ANY DISCRIMINATORY CONDUCT AND THEREFORE COOK'S *MONELL* CLAIM FAILS

Cook failed to address the City's *Monell* claim.  *Monell v. Department of Social Services,* 436 U.S. 658 (1978*)*  For the reasons set forth in the City's opening and reply papers, the court should grant the City's motion for summary judgment on Cook's *Monell* claim.

### V.  COOK FAILED TO MAKE A SUFFICIENT SHOWING FOR FURTHER DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(F)

In addition to providing argument in opposition to the City's motion, Cook also requests a continuance under Federal Rule of Civil Procedure 56(f) to obtain additional discovery.  The party seeking additional time to develop its opposition bears the burden of showing that such relief is warranted.  See *United States Investment Co. of Los Angeles, Inc. v. GTE Mobilnet, Inc.,* 281 F.3d 929, 939 (9th Cir. 2002).  Moreover, the moving party must proffer facts showing "that the information sought actually exists." *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. The Clorox Company*, 353 F.3d 1125, 1129 (9th Cir. 2004)

Here, Cook failed to submit any affidavit indicating why he believes that the testimony of the additional two witnesses he wishes to depose are essential to his opposition in this case.  It is not.  Inspector Donald Ciardella's only involvement was attending the meeting with the District Attorney, which Cook has had the opportunity to thoroughly explore in the depositions of Flores and Assistant District Attorney Elizabeth Aguilar-Tarchi.  Captain Leroy Lindo was not involved in this investigation or the decision to arrest Cook.  Thus, the court should deny the motion to continue, and grant partial summary judgment to defendants.

//
//
//
//
//

## CONCLUSION

For the foregoing reasons, the Court should grant the City's motion for partial summary judgment on Cook's Second Cause of Action.

Dated: April 25, 2008

DENNIS J. HERRERA

City Attorney
ELIZABETH SALVESON
Chief Labor Attorney
MARGARET W. BAUMGARTNER
Deputy City Attorneys

By: /s/ Margaret W. Baumgartner
MARGARET W. BAUMGARTNER
Attorneys for Defendants CITY AND
COUNTY OF SAN FRANCISCO et al.