1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11    CLIFFORD COOK,                          No. C 07-02569 CRB
12                Plaintiff,                   **MEMORANDUM AND ORDER**
13        v.
14    CITY AND COUNTY OF SAN
      FRANCISCO, et al.,
15
16                Defendants.
      _____/
17
18        This lawsuit arises out of the arrest of San Francisco police officer Clifford Cook for
19    domestic violence.  The gravamen of the complaint is that defendants treated Cook
20    differently from other domestic violence suspects because Cook is an African-American
21    married to a Caucasian woman.  Now pending before the Court is defendants' motion for
22    partial summary judgment of plaintiff's section 1983 claim.  After carefully considering the
23    summary judgment record, and having had the benefit of oral argument, defendants' motion
24    is GRANTED.

                              **FACTUAL BACKGROUND**
25
26    **A.    Allegations of the Complaint**
27        Plaintiff Cook, an African-American male, alleges that on the night of July 19, 2005,
28    he and his wife, Lisa Cook, a Caucasian female, had a verbal argument during which his
      wife, who was under the influence of alcohol, assaulted him.  In response, plaintiff "escorted
      his wife out of the house," and she left without further incident.  Plaintiff alleges that

**United States District Court**
For the Northern District of California

approximately a week later, his wife contacted the San Francisco Police Department ("SFPD") and reported that she had been a victim of domestic violence on July 19. Plaintiff believes that SFPD Inspector Antonio Flores and Lieutenant Don Sloan interviewed his wife, and that they did not obtain corroborating evidence about the domestic violence report.

Plaintiff further alleges that defendants arrested him without a warrant and without first interviewing him. According to plaintiff, these actions were contrary to the policies and practices of the SFPD regarding domestic violence investigations. In addition, he contends that defendants arrested him after learning the District Attorney had declined to prosecute.

**A.    Summary Judgment Evidence**

On July 26, 2005, Lisa Cook reported to the SFPD that her husband Clifford Cook, a San Francisco Police Officer, had committed an act of domestic violence against her on July 19, 2005. Inspector Flores was assigned to investigate. Inspector Flores learned that the day before, July 25, 2005, the SFPD had been summoned to Clifford Cook's house based on a report by Lisa that Cook was threatening to kill himself as a result of the breakup of their marriage.

After Inspector Flores contacted Lisa about conducting an interview, he performed a computer search. The search revealed that Lisa had indeed called the Contra Costa Sheriff's Department on July 25 to report that Cook was threatening to kill himself. It also revealed that Lisa had gone to the hospital on July 20, 2005 for treatment of injuries she claimed were caused by Cook.

Inspector Flores and Lt. Sloan interviewed Lisa that same day, July 26, at Lisa's daughter's home in Contra Costa County. Lisa told the officers there had been prior documented domestic violence incidents, including one in St. Helena and three in Walnut Creek, but that there had also been many 911 calls. Lisa gave the officers photos that showed Lisa with bruises on her arms that she reported were caused by Cook.

Lisa explained that on July 19 she and Cook had been drinking. They argued at their San Francisco home and Cook grabbed her and threw her. Lisa is five feet four inches and Cook is six feet six inches and 278 pounds. Lisa called her daughter who brought Lisa to her

United States District Court
For the Northern District of California

1  home.  The next day Lisa was in pain so she visited urgent care and reported that her husband

2  had caused her injuries.  A radiologist told her she had a possible hairline fracture to her

3  finger.

4     The next day Inspector Flores met with Captain Marsha Ashe, and various other

5  officers, to discuss the results of the investigation.  After that meeting, and at the direction of

6  his supervisors, Flores met with Assistant District Attorney Aguilar-Tarchi ("ADA") to

7  review the case and "work it up" for a warrant.  While Inspector Flores was meeting with the

8  ADA, Lt. Sloan walked into the room and announced that he and Captain Ashe were going to

9  arrest Cook without a warrant.

10     Cook was subsequently summoned to meet with Captain Ashe and Lt. Sloan in the

11  Investigations Room at the Hall of Justice where he was placed under arrest.  After they

12  arrested Cook, Captain Ashe and Lt. Sloan refused to obtain a statement from Cook who was

13  unaccompanied by a lawyer.

14     The SFPD suspended Cook as a result of his arrest.  A few days after the arrest, the

15  SFPD held a hearing on the suspension.  Cook did not testify at the hearing and remained

16  suspended until the District Attorney closed the case approximately 60 days later.  The SFPD

17  returned Cook to duty in unarmed status where he remains pending resolution of the

18  misconduct charges against him.

19                          **PROCEDURAL HISTORY**

20     Plaintiff's complaint makes the following claims: a Title VII claim against the City

21  and County of San Francisco (CCSF) for employment discrimination based on race (First

22  Cause of Action), a section 1983 claim against Inspector Flores, Lt. Sloan, Captain Ashe, and

23  the CCSF (Second Cause of Action), and a California Fair Employment and Housing Act

24  claim against CCSF (Third Cause of Action).  The Court previously dismissed with prejudice

25  plaintiff's section 1983 claim to the extent it is based on a due process theory; the Court

26  denied dismissal of the claim based on violation of equal protection rights.  The Title VII and

27  FEHA claims also remain pending.

28

1    Defendants moved for partial summary judgment on the section 1983 equal protection

2  claim on the ground that no reasonable trier of fact could find that defendants arrested Cook

3  because of his race and the race of his wife.  Plaintiff filed an opposition and a Rule 56(f)

4  motion to continue the motion to conduct additional discovery.  The Court granted plaintiff's

5  motion and continued the summary judgment hearing from February 22, 2008 to May 9,

6  2008.

7                            **SUMMARY JUDGMENT STANDARD**

8    A principal purpose of the summary judgment procedure is to isolate and dispose of

9  factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A

10  party moving for summary judgment that does not have the ultimate burden of persuasion at

11  trial (here, the defendants) has the initial burden of producing evidence negating an essential

12  element of the non-moving party's claims *or* showing that the non-moving party does not

13  have enough evidence of an essential element to carry its ultimate burden of persuasion at

14  trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  If

15  the moving party does not satisfy its initial burden, the non-moving party has no obligation to

16  produce anything and summary judgment must be denied.  If, on the other hand, the moving

17  party has satisfied its initial burden of production, then the non-moving party may not rest

18  upon mere allegations or denials of the adverse party's evidence, but instead must produce

19  admissible evidence that shows there is a genuine issue of material fact for trial.  Nissan Fire

20  & Marine Ins. Co., 210 F.3d at 1102.  A genuine issue of fact is one that could reasonably be

21  resolved in favor of either party.  A dispute is "material" only if it could affect the outcome

22  of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

23  (1986).

24                                  **DISCUSSION**

25    To prevail on a section 1983 claim for selective enforcement in violation of the Equal

26  Protection Clause Cook must show that defendants' conduct had both a discriminatory effect

27  and a discriminatory motivation.  Richards v. Los Angeles, 2007 WL 4513583 *2 (9th Cir.

28  Dec. 21, 2007) (citing Wayte v. United States, 470 U.S. 598, 608 (1985)).  To survive

*United States District Court*
*For the Northern District of California*

1  summary judgment Cook must present evidence sufficient to raise genuine triable issues of

2  fact both as to whether others are generally not arrested without a warrant for the same

3  conduct (discriminatory effect), and whether the decision to arrest Cook without a warrant

4  was racially motivated (discriminatory intent). Id. (citing Freeman v. City of Santa Ana, 68

5  F.3d 1180, 1187 (9th Cir. 1995).

6          Defendants argue that Cook does not have evidence sufficient to prove discriminatory

7  intent, that is, that defendants were motivated to arrest Cook without a warrant because he is

8  a black man married to a white woman, or even evidence sufficient to prove discriminatory

9  effect. In support of their motion they submit the declaration of Captain Ashe, the person

10  responsible for the arrest decision. Ashe declares that she decided to arrest Cook because

11  based on what she learned when she met with Inspector Flores, Lt. Sloan and others the

12  morning of July 27 she believed there was a significant risk that Cook could further harm

13  Lisa Cook. The factors that supported her belief included:

14          ■      the medical report of the hairline fracture and the photos of other

15                 injuries;

16          ■      the physical evidence corroborated her report of domestic violence;

17          ■      there was a history of calling police about domestic violence which

18                 Ashe believed was escalating;

19          ■      Lisa had stated that she had just filed for divorce, which can escalate

20                 tension;

21          ■      Lisa stated that Cook had threatened to kill her and that he could get

22                 away with it;

23          ■      Lisa reported stalking behavior (multiple phone calls);

24          ■      The July 19 incident involved alcohol abuse;

25          ■      The size difference between Lisa and Cook; and

26          ■      Lisa had reported that Cook had been cruel to their cat.

27

28

**United States District Court**
For the Northern District of California

1  Declaration of Marsha Ashe ¶ 7. This evidence satisfies defendants' initial summary

2  judgment burden. Accordingly, the burden shifts to plaintiff to produce evidence to

3  sufficient to create a genuine dispute as to defendants' motivation in arresting Cook.

4          Although Cook's complaint alleges that the interview of Lisa Cook by Inspector

5  Flores and Lt. Sloan did not corroborate her allegation of domestic abuse, on summary

6  judgment he does not contend that defendants lacked probable cause to arrest him, or that it

7  was unlawful to arrest him without a warrant; he concedes that defendants had sufficient

8  information to do both. Cook also no longer contends that defendants were aware that the

9  District Attorney's Office had declined to prosecute Cook at the time they arrested him; the

10 undisputed evidence establishes that neither Captain Ashe nor Lt. Sloan were aware of the

11 ADA's views of the case at the time of the arrest. To create a genuine dispute as to

12 motivation Cook instead relies on his allegation that it was the SFPD's practice not to arrest a

13 domestic violence suspect, or at least a police officer suspect, without a warrant, where the

14 allegation of domestic violence is made several days after the alleged incident. As support

15 for this allegation he relies exclusively on the deposition testimony of Inspector Flores.

16 Plaintiff's Supp. Opp. at pages 5-6 (citing Flores Deposition Transcript at 24:20 to 25:25;

17 28:15-30:21).

18         Inspector Flores' testimony does not give rise to a reasonable inference that Cook's

19 arrest contravened SFPD policy and practice. Inspector Flores testified that when an alleged

20 victim "comes in off the street" to report a prior incident of domestic violence, Inspector

21 Flores interviews the victims and advises them that "[w]ith or without their cooperation . . .

22 it's up to the DA's office to go forward with the case." Flores Depo. Tr. At 24:20-25:15.

23 Plaintiff contends this testimony is evidence of a policy and practice of only arresting after

24 the District Attorney determines that there is sufficient evidence to proceed with a

25 prosecution. The testimony, however, does not reasonably support such an inference.

26 Inspector Flores went on to explain why he gives such advice to the complainant:

27          Q.    Well, why do you do that?

28          A.    Well, there are some victims out there that feel that–that they still have
                  this relationship, and it has to do with love.

> And within this loving relationship that they have, they don't want to be the bad person.
>
> And sometimes they feel that, if they ever go back to the relationship, they can say, "You know, it wasn't me that was pressing charges against you. It was the State or the Police, or whoever."
> . . . .
>
> But, again, if they decide to go in another direction, which we know, that the victim will go back to the batterer, because–again, because of the relationship:
> . . . .
>
> So, at that point, that is why we kind of tell those victims that. And we know that, down the road, that this is a possibility.

Flores Depo. Tr. at 25:16-26:13. Inspector Flores thus testified that he tells victims that the District Attorney will make the decision to prosecute regardless of what the victim later decides to do so that the victim can always blame the District Attorney for the prosecution; he did not testify that it is the SFPD's practice to not arrest alleged domestic batterers without the District Attorney's prior approval where the victim "comes in off the street."

Inspector Flores also testified that in his seven years with the SFPD domestic violence unit he had personally investigated between five and ten SFPD officers on accusations of domestic violence, and that in only one case (other than Cook) could he recall that there had been an arrest. With respect to the arrest of the other SFPD officer, the case was taken to the District Attorney for a warrant review before the arrest was made. Flores Depo. Tr. at 28:15 to 30:21. Inspector Flores also testified, however, that Cook's case was different from the other cases involving police officers that he had investigated because "there were a lot of indicators, a lot of indicators of things escalating." Id. at 30:23-31:25. Flores specifically testified that it was appropriate to arrest Cook without a warrant in light of the information known to defendants at the time. Id. at 32:25 to 33:15. Thus, Inspector Flores' testimony does not support a reasonable inference that in circumstances similar to those in this case the SFPD had a practice of not arresting SFPD police officers on domestic violence charges without a prior warrant review by the District Attorney. The fact that Inspector Flores was "shocked" when Lt. Sloan interrupted Flores' meeting with the ADA to announce that they had decided to arrest plaintiff does not create a genuine dispute. Inspector Flores did not

testify that he was shocked because the known information did not justify an arrest without a warrant–to the contrary he testified that a warrantless arrest was appropriate in the circumstances of this case–he was shocked because he was in the middle of a warrant review meeting with the ADA. Again, while this evidence suggests that Cook's case was unusual, it does not support a reasonable inference of racial discrimination.

The other evidence cited by plaintiff, when considered individually or with the record as a whole, does not support a reasonable inference that the reasons proffered by defendants for their arrest of plaintiff are a pretext for racial discrimination.

First, plaintiff asserts that there is no evidence that supports Captain Ashe's (and Flore's) testimony that this was a case of escalating violence; thus, the arrest decision may have instead been based upon racial stereotypes. At the time of his arrest plaintiff had already turned in his weapon and his wife was living in another location and therefore, argues plaintiff, he posed little risk to Lisa. Plaintiff also asserts that there was no history of physical violence and that Lisa had never reported any threats. Plaintiff's Supp. Opp. at 4.

Plaintiff's argument is unpersuasive. Ample evidence supports Captain Ashe's belief that the violence had been escalating. Plaintiff's assertion that there was no history of physical violence or reported threats is false: Lisa told Officers Flores and Sloan about a history of physical abuse and threats, including documented incidences, and showed the officers photos of injuries. And, just two days before the arrest, Lisa had called the police to report that Cook had threatened to kill himself. The officers' interview of Lisa, together with the other information they had learned, reasonably supported their belief that the violence was escalating; at the very least, their stated belief is not so unreasonable that a jury could find that it is a pretext for racial discrimination.

Second, plaintiff contends that defendants' failure to interview plaintiff before his arrest and their failure to do so at his request immediately following his arrest, together with their testimony that any statement would not have made a difference, are evidence of discriminatory intent. This evidence supports an inference that no matter what Cook might say defendants were convinced that Cook posed a risk that warranted his immediate arrest; it

**United States District Court**
For the Northern District of California

1  does not support a reasonable inference of race discrimination.  The inferential leap that

2  plaintiff asks the jury to make is simply too great.

3    The request for a bail enhancement is also insufficient to support an inference of racial

4  motivation.  Plaintiff implies that Inspector Flores believed that the bail enhancement was

5  inappropriate because Cook did not pose a risk.  To the contrary, Inspector Flores testified

6  that Cook did pose a risk because of the pattern of escalating violence.  Inspector Flores also

7  testified that he did not believe a bail enhancement was necessary because the bail would

8  already be high due to the seriousness of the charges.

9    Finally, plaintiff contends that Captain Ashe's declaration is "suspect" because the

10  police reports attached to her declaration were prepared after she arrested Cook and therefore

11  could not form the basis for the arrest decision.  Plaintiff's argument is a red herring.

12  Captain Ashe did not declare that she relied on the reports to arrest plaintiff; instead, she

13  relied on information provided by Inspector Flores and Lt. Sloan in a meeting the morning of

14  plaintiff's arrest.  Plaintiff has not identified any evidence in the record that suggests that at

15  the time Captain Ashe arrested plaintiff she was not aware of the information she declares

16  she relied upon in making the decision.

17    **PLAINTIFF'S REQUEST FOR A CONTINUANCE**

18    In his supplemental opposition plaintiff asks the Court to again continue the summary

19  judgment motion if the Court is inclined to grant defendants' motion.  Plaintiff contends that

20  although he noticed the depositions of SFPD Inspector Don Ciardella and Captain Leroy

21  Lindo, defendants refused to produce these witnesses.  Plaintiff did not move to compel their

22  testimony.

23    Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary

24  judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to

25  justify its opposition," the trial court may deny the motion for summary judgment or continue

26  the hearing to allow for such discovery.  Fed. R. Civ. P. 56(f).  In making a Rule 56(f)

27  motion, a party opposing summary judgment "must make clear what information is sought

28

United States District Court
For the Northern District of California

1    and how it would preclude summary judgment." <u>Garrett v. City and County of San</u>

2    <u>Francisco</u>, 818 F.2d 1515, 1518 (9th Cir. 1987).

3        Plaintiff's request must be denied.  Although he submitted the required affidavit in

4    support of his first Rule 56(f) request, a request the Court granted, he has not done so here.

5    For this reason alone his request fails.  Moreover, even if the Court overlooks the failure to

6    file a supporting affidavit, plaintiff's opposition memorandum does not explain what

7    information he seeks from these depositions and how they will produce evidence that

8    precludes summary judgment.  To baldly state (again, not in an affidavit) that Captain Lindo

9    is expected to testify that defendants racially discriminated against plaintiff is plainly

10   insufficient.  Nor does plaintiff explain why he did not move to compel these depositions if

11   they are critical to his defense of the motion.  Accordingly, plaintiff's request is denied.

12                              **CONCLUSION**

13       Plaintiff has not produced evidence sufficient to support a finding by a reasonable jury

14   that defendants arrested plaintiff because he is a black man married to a white woman.

15   Plaintiff may believe that racial prejudice motivated the arrest decision and perhaps it was a

16   motivation, subconscious or not.  In a civil lawsuit, however, a plaintiff bears the burden of

17   *proving* such discriminatory intent by a preponderance of the evidence; that such a

18   motivation is possible is not sufficient.  No reasonable jury could find that plaintiff has

19   produced evidence sufficient to meet his burden.

20       Accordingly, defendants' motion for summary judgment on the section 1983 equal

21   protection claim is GRANTED.   The parties are directed to appear for a further Case

22   Management Conference at 8:30 a.m. on June 13, 2008.

23       **IT IS SO ORDERED.**

24

25   Dated: May 13, 2008

          CHARLES  R. BREYER
          UNITED STATES DISTRICT JUDGE

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California