John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1375 Sutter Street, Suite 222
San Francisco, CA 94109
Tel: (415) 561-9600
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Attorneys for Plaintiff,
CLIFFORD COOK

FILED
08 AUG 12 PM 3:08

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.<br><br>    Defendants. | Case No.: C 07 2569 CRB<br><br>**NOTICE OF APPEAL** |

Notice is hereby given that Plaintiff, CLIFFORD COOK, in the above named case hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order granting defendant's motion for summary judgment filed in this case on May 12, 2008 attached hereto as **Exhibit A** and the final judgment of the district court entered on July 21, 2008 attached hereto as **Exhibit B**.

DATED: August 11, 2008

**SCOTT LAW FIRM**

By: _____
JOHN HOUSTON SCOTT
Attorney for Plaintiff

- 1 -

NOTICE OF APPEAL

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD COOK,<br><br>   Plaintiff,<br><br> v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>   Defendants. | No. C 07-02569 CRB<br><br>**MEMORANDUM AND ORDER** |

  This lawsuit arises out of the arrest of San Francisco police officer Clifford Cook for domestic violence. The gravamen of the complaint is that defendants treated Cook differently from other domestic violence suspects because Cook is an African-American married to a Caucasian woman. Now pending before the Court is defendants' motion for partial summary judgment of plaintiff's section 1983 claim. After carefully considering the summary judgment record, and having had the benefit of oral argument, defendants' motion is GRANTED.

**FACTUAL BACKGROUND**

**A. Allegations of the Complaint**

  Plaintiff Cook, an African-American male, alleges that on the night of July 19, 2005, he and his wife, Lisa Cook, a Caucasian female, had a verbal argument during which his wife, who was under the influence of alcohol, assaulted him. In response, plaintiff "escorted his wife out of the house," and she left without further incident. Plaintiff alleges that

approximately a week later, his wife contacted the San Francisco Police Department ("SFPD") and reported that she had been a victim of domestic violence on July 19. Plaintiff believes that SFPD Inspector Antonio Flores and Lieutenant Don Sloan interviewed his wife, and that they did not obtain corroborating evidence about the domestic violence report.

Plaintiff further alleges that defendants arrested him without a warrant and without first interviewing him. According to plaintiff, these actions were contrary to the policies and practices of the SFPD regarding domestic violence investigations. In addition, he contends that defendants arrested him after learning the District Attorney had declined to prosecute.

### A.   Summary Judgment Evidence

On July 26, 2005, Lisa Cook reported to the SFPD that her husband Clifford Cook, a San Francisco Police Officer, had committed an act of domestic violence against her on July 19, 2005. Inspector Flores was assigned to investigate. Inspector Flores learned that the day before, July 25, 2005, the SFPD had been summoned to Clifford Cook's house based on a report by Lisa that Cook was threatening to kill himself as a result of the breakup of their marriage.

After Inspector Flores contacted Lisa about conducting an interview, he performed a computer search. The search revealed that Lisa had indeed called the Contra Costa Sheriff's Department on July 25 to report that Cook was threatening to kill himself. It also revealed that Lisa had gone to the hospital on July 20, 2005 for treatment of injuries she claimed were caused by Cook.

Inspector Flores and Lt. Sloan interviewed Lisa that same day, July 26, at Lisa's daughter's home in Contra Costa County. Lisa told the officers there had been prior documented domestic violence incidents, including one in St. Helena and three in Walnut Creek, but that there had also been many 911 calls. Lisa gave the officers photos that showed Lisa with bruises on her arms that she reported were caused by Cook.

Lisa explained that on July 19 she and Cook had been drinking. They argued at their San Francisco home and Cook grabbed her and threw her. Lisa is five feet four inches and Cook is six feet six inches and 278 pounds. Lisa called her daughter who brought Lisa to her

home. The next day Lisa was in pain so she visited urgent care and reported that her husband had caused her injuries. A radiologist told her she had a possible hairline fracture to her finger.

The next day Inspector Flores met with Captain Marsha Ashe, and various other officers, to discuss the results of the investigation. After that meeting, and at the direction of his supervisors, Flores met with Assistant District Attorney Aguilar-Tarchi ("ADA") to review the case and "work it up" for a warrant. While Inspector Flores was meeting with the ADA, Lt. Sloan walked into the room and announced that he and Captain Ashe were going to arrest Cook without a warrant.

Cook was subsequently summoned to meet with Captain Ashe and Lt. Sloan in the Investigations Room at the Hall of Justice where he was placed under arrest. After they arrested Cook, Captain Ashe and Lt. Sloan refused to obtain a statement from Cook who was unaccompanied by a lawyer.

The SFPD suspended Cook as a result of his arrest. A few days after the arrest, the SFPD held a hearing on the suspension. Cook did not testify at the hearing and remained suspended until the District Attorney closed the case approximately 60 days later. The SFPD returned Cook to duty in unarmed status where he remains pending resolution of the misconduct charges against him.

**PROCEDURAL HISTORY**

Plaintiff's complaint makes the following claims: a Title VII claim against the City and County of San Francisco (CCSF) for employment discrimination based on race (First Cause of Action), a section 1983 claim against Inspector Flores, Lt. Sloan, Captain Ashe, and the CCSF (Second Cause of Action), and a California Fair Employment and Housing Act claim against CCSF (Third Cause of Action). The Court previously dismissed with prejudice plaintiff's section 1983 claim to the extent it is based on a due process theory; the Court denied dismissal of the claim based on violation of equal protection rights. The Title VII and FEHA claims also remain pending.

3

1    Defendants moved for partial summary judgment on the section 1983 equal protection
2 claim on the ground that no reasonable trier of fact could find that defendants arrested Cook
3 because of his race and the race of his wife. Plaintiff filed an opposition and a Rule 56(f)
4 motion to continue the motion to conduct additional discovery. The Court granted plaintiff's
5 motion and continued the summary judgment hearing from February 22, 2008 to May 9,
6 2008.

## SUMMARY JUDGMENT STANDARD

8    A principal purpose of the summary judgment procedure is to isolate and dispose of
9 factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A
10 party moving for summary judgment that does not have the ultimate burden of persuasion at
11 trial (here, the defendants) has the initial burden of producing evidence negating an essential
12 element of the non-moving party's claims *or* showing that the non-moving party does not
13 have enough evidence of an essential element to carry its ultimate burden of persuasion at
14 trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If
15 the moving party does not satisfy its initial burden, the non-moving party has no obligation to
16 produce anything and summary judgment must be denied. If, on the other hand, the moving
17 party has satisfied its initial burden of production, then the non-moving party may not rest
18 upon mere allegations or denials of the adverse party's evidence, but instead must produce
19 admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire
20 & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be
21 resolved in favor of either party. A dispute is "material" only if it could affect the outcome
22 of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49
23 (1986).

## DISCUSSION

25    To prevail on a section 1983 claim for selective enforcement in violation of the Equal
26 Protection Clause Cook must show that defendants' conduct had both a discriminatory effect
27 and a discriminatory motivation. Richards v. Los Angeles, 2007 WL 4513583 *2 (9th Cir.
28 Dec. 21, 2007) (citing Wayte v. United States, 470 U.S. 598, 608 (1985)). To survive

4

1  summary judgment Cook must present evidence sufficient to raise genuine triable issues of
2  fact both as to whether others are generally not arrested without a warrant for the same
3  conduct (discriminatory effect), and whether the decision to arrest Cook without a warrant
4  was racially motivated (discriminatory intent). Id. (citing Freeman v. City of Santa Ana, 68
5  F.3d 1180, 1187 (9th Cir. 1995).

6  Defendants argue that Cook does not have evidence sufficient to prove discriminatory
7  intent, that is, that defendants were motivated to arrest Cook without a warrant because he is
8  a black man married to a white woman, or even evidence sufficient to prove discriminatory
9  effect. In support of their motion they submit the declaration of Captain Ashe, the person
10 responsible for the arrest decision. Ashe declares that she decided to arrest Cook because
11 based on what she learned when she met with Inspector Flores, Lt. Sloan and others the
12 morning of July 27 she believed there was a significant risk that Cook could further harm
13 Lisa Cook. The factors that supported her belief included:

- the medical report of the hairline fracture and the photos of other injuries;
- the physical evidence corroborated her report of domestic violence;
- there was a history of calling police about domestic violence which Ashe believed was escalating;
- Lisa had stated that she had just filed for divorce, which can escalate tension;
- Lisa stated that Cook had threatened to kill her and that he could get away with it;
- Lisa reported stalking behavior (multiple phone calls);
- The July 19 incident involved alcohol abuse;
- The size difference between Lisa and Cook; and
- Lisa had reported that Cook had been cruel to their cat.

5

Declaration of Marsha Ashe ¶ 7. This evidence satisfies defendants' initial summary judgment burden. Accordingly, the burden shifts to plaintiff to produce evidence to sufficient to create a genuine dispute as to defendants' motivation in arresting Cook.

Although Cook's complaint alleges that the interview of Lisa Cook by Inspector Flores and Lt. Sloan did not corroborate her allegation of domestic abuse, on summary judgment he does not contend that defendants lacked probable cause to arrest him, or that it was unlawful to arrest him without a warrant; he concedes that defendants had sufficient information to do both. Cook also no longer contends that defendants were aware that the District Attorney's Office had declined to prosecute Cook at the time they arrested him; the undisputed evidence establishes that neither Captain Ashe nor Lt. Sloan were aware of the ADA's views of the case at the time of the arrest. To create a genuine dispute as to motivation Cook instead relies on his allegation that it was the SFPD's practice not to arrest a domestic violence suspect, or at least a police officer suspect, without a warrant, where the allegation of domestic violence is made several days after the alleged incident. As support for this allegation he relies exclusively on the deposition testimony of Inspector Flores. Plaintiff's Supp. Opp. at pages 5-6 (citing Flores Deposition Transcript at 24:20 to 25:25; 28:15-30:21).

Inspector Flores' testimony does not give rise to a reasonable inference that Cook's arrest contravened SFPD policy and practice. Inspector Flores testified that when an alleged victim "comes in off the street" to report a prior incident of domestic violence, Inspector Flores interviews the victims and advises them that "[w]ith or without their cooperation . . . it's up to the DA's office to go forward with the case." Flores Depo. Tr. At 24:20-25:15. Plaintiff contends this testimony is evidence of a policy and practice of only arresting after the District Attorney determines that there is sufficient evidence to proceed with a prosecution. The testimony, however, does not reasonably support such an inference. Inspector Flores went on to explain why he gives such advice to the complainant:

Q. Well, why do you do that?

A. Well, there are some victims out there that feel that–that they still have this relationship, and it has to do with love.

6

> And within this loving relationship that they have, they don't want to be the bad person.
>
> And sometimes they feel that, if they ever go back to the relationship, they can say, "You know, it wasn't me that was pressing charges against you. It was the State or the Police, or whoever."
>
> . . . .
>
> But, again, if they decide to go in another direction, which we know, that the victim will go back to the batterer, because–again, because of the relationship:
>
> . . . .
>
> So, at that point, that is why we kind of tell those victims that. And we know that, down the road, that this is a possibility.

Flores Depo. Tr. at 25:16-26:13. Inspector Flores thus testified that he tells victims that the District Attorney will make the decision to prosecute regardless of what the victim later decides to do so that the victim can always blame the District Attorney for the prosecution; he did not testify that it is the SFPD's practice to not arrest alleged domestic batterers without the District Attorney's prior approval where the victim "comes in off the street."

    Inspector Flores also testified that in his seven years with the SFPD domestic violence unit he had personally investigated between five and ten SFPD officers on accusations of domestic violence, and that in only one case (other than Cook) could he recall that there had been an arrest. With respect to the arrest of the other SFPD officer, the case was taken to the District Attorney for a warrant review before the arrest was made. Flores Depo. Tr. at 28:15 to 30:21. Inspector Flores also testified, however, that Cook's case was different from the other cases involving police officers that he had investigated because "there were a lot of indicators, a lot of indicators of things escalating." Id. at 30:23-31:25. Flores specifically testified that it was appropriate to arrest Cook without a warrant in light of the information known to defendants at the time. Id. at 32:25 to 33:15. Thus, Inspector Flores' testimony does not support a reasonable inference that in circumstances similar to those in this case the SFPD had a practice of not arresting SFPD police officers on domestic violence charges without a prior warrant review by the District Attorney. The fact that Inspector Flores was "shocked" when Lt. Sloan interrupted Flores' meeting with the ADA to announce that they had decided to arrest plaintiff does not create a genuine dispute. Inspector Flores did not

1  testify that he was shocked because the known information did not justify an arrest without a
2  warrant–to the contrary he testified that a warrantless arrest was appropriate in the
3  circumstances of this case–he was shocked because he was in the middle of a warrant review
4  meeting with the ADA. Again, while this evidence suggests that Cook's case was unusual, it
5  does not support a reasonable inference of racial discrimination.
6      The other evidence cited by plaintiff, when considered individually or with the record
7  as a whole, does not support a reasonable inference that the reasons proffered by defendants
8  for their arrest of plaintiff are a pretext for racial discrimination.
9      First, plaintiff asserts that there is no evidence that supports Captain Ashe's (and
10 Flore's) testimony that this was a case of escalating violence; thus, the arrest decision may
11 have instead been based upon racial stereotypes. At the time of his arrest plaintiff had
12 already turned in his weapon and his wife was living in another location and therefore,
13 argues plaintiff, he posed little risk to Lisa. Plaintiff also asserts that there was no history of
14 physical violence and that Lisa had never reported any threats. Plaintiff's Supp. Opp. at 4.
15     Plaintiff's argument is unpersuasive. Ample evidence supports Captain Ashe's belief
16 that the violence had been escalating. Plaintiff's assertion that there was no history of
17 physical violence or reported threats is false: Lisa told Officers Flores and Sloan about a
18 history of physical abuse and threats, including documented incidences, and showed the
19 officers photos of injuries. And, just two days before the arrest, Lisa had called the police to
20 report that Cook had threatened to kill himself. The officers' interview of Lisa, together with
21 the other information they had learned, reasonably supported their belief that the violence
22 was escalating; at the very least, their stated belief is not so unreasonable that a jury could
23 find that it is a pretext for racial discrimination.
24     Second, plaintiff contends that defendants' failure to interview plaintiff before his
25 arrest and their failure to do so at his request immediately following his arrest, together with
26 their testimony that any statement would not have made a difference, are evidence of
27 discriminatory intent. This evidence supports an inference that no matter what Cook might
28 say defendants were convinced that Cook posed a risk that warranted his immediate arrest; it

does not support a reasonable inference of race discrimination. The inferential leap that plaintiff asks the jury to make is simply too great.

The request for a bail enhancement is also insufficient to support an inference of racial motivation. Plaintiff implies that Inspector Flores believed that the bail enhancement was inappropriate because Cook did not pose a risk. To the contrary, Inspector Flores testified that Cook did pose a risk because of the pattern of escalating violence. Inspector Flores also testified that he did not believe a bail enhancement was necessary because the bail would already be high due to the seriousness of the charges.

Finally, plaintiff contends that Captain Ashe's declaration is "suspect" because the police reports attached to her declaration were prepared after she arrested Cook and therefore could not form the basis for the arrest decision. Plaintiff's argument is a red herring. Captain Ashe did not declare that she relied on the reports to arrest plaintiff; instead, she relied on information provided by Inspector Flores and Lt. Sloan in a meeting the morning of plaintiff's arrest. Plaintiff has not identified any evidence in the record that suggests that at the time Captain Ashe arrested plaintiff she was not aware of the information she declares she relied upon in making the decision.

## PLAINTIFF'S REQUEST FOR A CONTINUANCE

In his supplemental opposition plaintiff asks the Court to again continue the summary judgment motion if the Court is inclined to grant defendants' motion. Plaintiff contends that although he noticed the depositions of SFPD Inspector Don Ciardella and Captain Leroy Lindo, defendants refused to produce these witnesses. Plaintiff did not move to compel their testimony.

Federal Rule of Civil Procedure 56(f) provides that if a party opposing summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. Fed. R. Civ. P. 56(f). In making a Rule 56(f) motion, a party opposing summary judgment "must make clear what information is sought

9

and how it would preclude summary judgment." Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987).

Plaintiff's request must be denied. Although he submitted the required affidavit in support of his first Rule 56(f) request, a request the Court granted, he has not done so here. For this reason alone his request fails. Moreover, even if the Court overlooks the failure to file a supporting affidavit, plaintiff's opposition memorandum does not explain what information he seeks from these depositions and how they will produce evidence that precludes summary judgment. To baldly state (again, not in an affidavit) that Captain Lindo is expected to testify that defendants racially discriminated against plaintiff is plainly insufficient. Nor does plaintiff explain why he did not move to compel these depositions if they are critical to his defense of the motion. Accordingly, plaintiff's request is denied.

## CONCLUSION

Plaintiff has not produced evidence sufficient to support a finding by a reasonable jury that defendants arrested plaintiff because he is a black man married to a white woman. Plaintiff may believe that racial prejudice motivated the arrest decision and perhaps it was a motivation, subconscious or not. In a civil lawsuit, however, a plaintiff bears the burden of *proving* such discriminatory intent by a preponderance of the evidence; that such a motivation is possible is not sufficient. No reasonable jury could find that plaintiff has produced evidence sufficient to meet his burden.

Accordingly, defendants' motion for summary judgment on the section 1983 equal protection claim is GRANTED. The parties are directed to appear for a further Case Management Conference at 8:30 a.m. on June 13, 2008.

**IT IS SO ORDERED.**

Dated: May 13, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G:\CRBALL\2007\2569\orderresj1.wpd          11

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD COOK,

    Plaintiff,

v.

SAN FRANCISCO CITY AND COUNTY, et al.,

    Defendants.

No. C 07-02569 CRB

**JUDGMENT**

As the Court has dismissed plaintiff's Title VII and California Fair Employment and Housing Act claims without prejudice, and has dismissed with prejudice his section 1983 due process claim and granted defendants summary judgment on plaintiff's remaining section 1983 claims, judgment is entered on the section 1983 claims in favor of defendants and against plaintiff.

**IT IS SO ORDERED.**

Dated: July 21, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2007\2569\judgment.wpd

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 1375 Sutter Street, Suite 222, San Francisco, California, 94109. On August 12, 2008, I served the within document(s):

**NOTICE OF APPEAL**

☐ **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ **BY HAND:** by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY PERSONAL DELIVERY:** by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

***Attorneys for Defendants,***

Dennis J. Herrera
Elizabeth Salveson
Margaret Baumgartner
Adelmise Warner
Deputy City Attorney's Office
Fox Plaza
1390 Market Street, Floor No. 5
San Francisco, CA 94102
Fax: (415) 554-4248

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 12, 2008, at San Francisco, California.

_____
TIFFANY S. POSEY

PROOF OF SERVICE